**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **Eolas Technologies Incorporated,** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. 6:09-CV-00446-LED** |
| | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **Adobe Systems Inc., Amazon.com, Inc.,** | § | **JURY TRIAL** |
| **Apple Inc., Argosy Publishing, Inc.,** | § | |
| **Blockbuster Inc., CDW Corp.,** | § | |
| **Citigroup Inc., eBay Inc., Frito-Lay, Inc.,** | § | |
| **The Go Daddy Group, Inc., Google Inc.,** | § | |
| **J.C. Penney Company, Inc., JPMorgan** | § | |
| **Chase & Co., New Frontier Media, Inc.,** | § | |
| **Office Depot, Inc., Perot Systems Corp.,** | § | |
| **Playboy Enterprises International, Inc.,** | § | |
| **Rent-A-Center, Inc., Staples, Inc., Sun** | § | |
| **Microsystems Inc., Texas Instruments Inc.,** | § | |
| **Yahoo! Inc., and YouTube, LLC** | § | |
| | § | |
| **Defendants.** | § | |

## EOLAS' REPLY TO DEFENDANT EBAY INCORPORATED'S ANSWER AND COUNTERCLAIMS

Plaintiff Eolas Technologies Incorporated ("Eolas" or "Plaintiff") hereby replies to the counterclaims set forth in eBay Inc.'s ("eBay") Answer and Counterclaims as follows:

## AFFIRMATIVE DEFENSES

## I. FAILURE TO STATE A CLAIM

59. Eolas denies the allegations in paragraph 59 of eBay's Answer and Counterclaims.

## II. NON-INFRINGEMENT

60. Paragraph 60 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial. To the extent any response is warranted, Eolas responds as follows: denied.

61. Eolas denies the allegations in paragraph 61 of eBay's Answer and Counterclaims.

### III.  INVALIDITY

62. Paragraph 62 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial. To the extent any response is warranted, Eolas responds as follows: denied.

63. Eolas denies the allegations in paragraph 63 of eBay's Answer and Counterclaims.

### IV.  INEQUITABLE CONDUCT

64. Paragraph 64 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial. To the extent any response is warranted, Eolas responds as follows: denied.

65. Eolas admits that the '906 Patent was duly and legally issued by the United States Patent and Trademark Office after a full and fair examination. Eolas denies the remaining allegations in paragraph 65 of eBay's Answer and Counterclaims.

66. Eolas admits the allegations in paragraph 66 of eBay's Answer and Counterclaims.

67. Eolas admits the allegations in paragraph 67 of eBay's Answer and Counterclaims.

68.     Eolas admits the allegations in paragraph 68 of eBay's Answer and Counterclaims.

69.     The allegations in paragraph 69 of eBay's Answer and Counterclaims contain statements and/or conclusions of law which do not warrant an affirmance or denial. To the extent a response is required, Eolas answers as follows: denied.

70.     Eolas denies the allegations in paragraph 70 of eBay's Answer and Counterclaims.

71.     Eolas denies the allegations in paragraph 71 of eBay's Answer and Counterclaims.

72.     Eolas admits that Doyle worked at the University of California, San Francisco and that he and the other named inventors conceived of the inventions claimed in the '906 and '985 patents. Except as so admitted, Eolas denies the allegations in paragraph 72 of eBay's Answers and Counterclaims.

73.     Eolas admits the allegations in paragraph 73 of eBay's Answer and Counterclaims.

74.     Eolas admits the allegations in paragraph 74 of eBay's Answer and Counterclaims.

75.     Eolas admits the allegations in paragraph 75 of eBay's Answer and Counterclaims.

76.     Eolas admits that Doyle left his job at the University of California prior to founding Eolas. Except as so admitted, Eolas denies the allegations in paragraph 76 of eBay's Answer and Counterclaims.

77.     Eolas admits that Doyle has had and has a financial interest in Eolas.  Except as so admitted, Eolas denies the allegations in paragraph 77 of eBay's Answer and Counterclaims.

78.     Eolas admits that there exists a license agreement between Eolas and The Regents of the University of California.  Except as so admitted, Eolas the allegations in paragraph 78 of eBay's Answer and Counterclaims.

79.     Eolas admits that Doyle was involved in some aspects of the prosecution of the '906 patent, some aspects of the reexamination of the '906 patent, and some aspects of the prosecution of the '985 patent.  Eolas also admits that Doyle has had and has a financial interest in Eolas.  Except as so admitted, Eolas denies the allegations in paragraph 79 of eBay's Answer and Counterclaims.

80.     Eolas denies the allegations in paragraph 80 of eBay's Answer and Counterclaims.

81.     Eolas denies the allegations in paragraph 81 of eBay's Answer and Counterclaims.

82.     Eolas denies the allegations in paragraph 82 of eBay's Answer and Counterclaims.

83.     Eolas admits the allegations in paragraph 83 of eBay's Answer and Counterclaims.

84.     Eolas admits that the application for the '906 patent was filed on October 17, 1994.  The remaining allegations in paragraph 84 of eBay's Answer and Counterclaims contain statements and/or conclusions of law which do not warrant an affirmance or denial.  To the extent a response is required, Eolas answers as follows: denied.

85.     Eolas denies the allegations in paragraph 85 of eBay's Answer and Counterclaims.

86.     Eolas admits that the District Court issued a publicly available ruling (Docket Number 491) in the action (E.D.Ill. 1:99-cv-626) which states:

On May 20, 1994, Michael Doyle received an email from David Raggett which said:

The EMBED tag was dropped after the WWW workshop in Boston, late last July. It was felt by most browser writers that further study was needed on how best to implement object level embedding in Web browsers. This feature is still on most people's agenda though.

You might want to look at Viola which I seem to remember takes advantage of the tk tool kit to provide a level of embedding. You can find a point to viola off the CERN WWW project page.

Beyond this ruling, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86 of eBay's Answer and Counterclaims and, on that basis, denies them.

87.     Eolas admits that the District Court issued a publicly available ruling (Docket Number 491) in the action (E.D.Ill. 1:99-cv-626) which states:

On May 20, 1994, Michael Doyle received an email from David Raggett which said:

The EMBED tag was dropped after the WWW workshop in Boston, late last July. It was felt by most browser writers that further study was needed on how best to implement object level embedding in Web browsers. This feature is still on most people's agenda though.

You might want to look at Viola which I seem to remember takes advantage of the tk tool kit to provide a level of embedding. You can find a point to viola off the CERN WWW project page.

Beyond this ruling, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 87 of eBay's Answer and Counterclaims and, on that basis, denies them.

88.     Eolas admits that David Martin was one of Doyle's colleagues at the University of California in San Francisco and that the '906 patent lists "David C. Martin" as one of the inventors.  Eolas admits that there is a document which purports to contain the following contents as quoted: "Fri May 20 09:00:35 1994"; "David Martin", "Pei Wei";

> "In order to do better testings and support of ViolaWWW, I would like to solicit donations for guest accounts on the major Unix platforms. (excuse me for asking this on the list, but…)
>
> At this point, this means anything not close to SunOS 4.1.3 and Ultrix 4.2 which I have access to, and paticularly [sic] (but not limited to!) the AIX R6000, Dec Alpha, HP Snake, and SGI systems.
>
> Here's the deal:
>
> * You give me a guest account, say for atleast [sic] 3 months, on a machine that I can access via the net
>
> * I'll restrict my use of the account to viola related portability testings, like making sure that viola compiles and runs on the platform. I'll probably do this only just before releases.
>
> * You'll get updated ViolaWWW executable.
>
> * Acknowledgement in the Viola credits list, and appreciation of the users who're current [sic] having trouble compiling viola on the particular platforms.
>
> So, if your organization has some CPU crunchies to spare, good network connectivity, don't have a firewall, want to help viola development, etc, please drop me a note. Based mostly on network connectivity, I'll select one (maybe two) offer(s) for each different platform."

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 88 of eBay's Answer and Counterclaims and, on that basis, denies them.

89.     Eolas denies the allegations in paragraph 89 of eBay's Answer and Counterclaims.

90.     Eolas denies the allegations in paragraph 90 of eBay's Answer and Counterclaims.

91.     Eolas admits that there is a document which purports to contain the following contents as quoted: "Tue, 30 Aug 1994 23:15:10 -0700"; "FYI . . . press release"; "Researchers at the U. of California have created software for embedding interactive program objects within hypermedia documents. Previously, object linking and embedding (OLE) has been employed on single machines or local area networks using MS Windows-TM-. This UC software is the first instance where program objects have been embedded in documents over an open and distributed hypermedia environment such as the World Wide Web on the Internet." Except as so admitted, Eolas denies the allegations in paragraph 91 of eBay's Answer and Counterclaims.

92.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92 of eBay's Answer and Counterclaims and, on that basis, denies them.

93.     Eolas admits that there is a document which purports to contain the following statement: "Been meaning to propose something for VRML ever since the Geneva W3 conf. But anyway, any body interested in learning more about how violaWWW does this embedded objects thing can get a paper on it from ftp://ora.com/pub/www/viola/violaIntro.ps.gz" Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so

admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93 of eBay's Answer and Counterclaims and, on that basis, denies them.

94. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94 of eBay's Answer and Counterclaims and, on that basis, denies them.

95. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 95 of eBay's Answer and Counterclaims and, on that basis, denies them.

96. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96 of eBay's Answer and Counterclaims and, on that basis, denies them.

97. Eolas admits that a publicly available opinion cited as 399 F.3d 1325, 1330 (Fed. Cir. 2005) contains the following statement:

> Michael D. Doyle (Doyle), one of the inventors of the '906 patent, knew of Viola yet did not disclose any information regarding that reference to the United States Patent and Trademark Office (PTO). On August 31, 1994, Doyle issued a press release to an e-mail list indicating that researchers at the University of California had "created software for embedding interactive program objects within hypermedia documents." That same day, Wei contacted Doyle via e-mail in response to the press release. Wei alleged that his May 1993 demonstration of Viola (version DX34) to Sun Microsystems engineers exhibited a way to embed interactive objects and transport them over the web. Wei directed Doyle to his paper about Viola (the Viola paper), which was available on the Internet at least by August 13, 1994. Doyle downloaded and read the paper. In a later email exchange, Doyle attempted to get Wei to concede that he was not the first to invent. Additionally, Doyle told Wei the inventions were different.

The opinion speaks for itself , and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied

98.     Eolas admits that there is a document which purports to contain the following contents as quoted: "Wed, 31 Aug 1994 21:06:17 -0700"; "Doyle"; "Pei Wei"; "I don't think this is the first case of program objects embedded in docs and transported over the WWW. ViolaWWW has had this capabilities for months and months now"; "How many months and months?  We demonstrated our technology in 1993".  Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc.  Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98 of eBay's Answer and Counterclaims and, on that basis, denies them.

99.     Eolas admits that there is a document which purports to contain the following contents as quoted: "Date: Wed 31, Aug 94 23:16:41 - 0700"; "Doyle"; "Pei Wei";

> Not that I wish to content on the point of simply who's first :)  But, let's see… Wish I had kept better records and wrote papers about things as they happened!)

> Definitely by May 8, 1993 we had demonstrated that plotting demo (the very one shown in the viola paper) to visitors from a certain computer manufacturer…  This demo was memorable because someone and I at ORA had lost sleep the night before the meeting, in order to cook up that particular plotting demo :)  We had to show something cool.

> That demo wasn't very hard to do because by that time the basic capability was already in place for violaWWW to fetch viola objects over HTTP (or whatever) and plug them into documents. Of course, our wire-frame plotting demo isn't anywhere as comphrehensive as yours.  But, the point was that there was a way to embed programmable & interactive objects into HTML documents.

> You see, the basic object/interpreter engine has been in viola from day one of the old ViolaWWW from mid 1992.  So basically it just had to wait until the second (current) incarnation of ViolaWWW for the HTML widget (as it were) to get good enough such that it

was feasible to embed such interactive objects inside of a document.

If I dig more and harder into my archives I might find more earlier evidence of having shown this to outside parties (we do these demos to interested parties some times)… Unfortunately I don't remember when it was (definitely earlier than May 93) that we showed Time Bernners-Lee a very early demo of the second ViolaWWW with embedded interactive objects.

I don't know how your system works (maybe you could post or send me some detailed info or URLs), but I should mention that Viola's basic approach is to use an interpreter to run the "program objects" (as opposed to linked-in executables).

I have say, thou [sic], that lots of this stuff is still in the Research & Demo stage, and there's still lots of details to work out.

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99 of eBay's Answer and Counterclaims and, on that basis, denies them.

100.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100 of eBay's Answer and Counterclaims and, on that basis, denies them.

101.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101 of eBay's Answer and Counterclaims and, on that basis, denies them.

102.    Eolas admits that a publicly available opinion issued by the Federal Circuit Court of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement:

In sum, with respect to the district court's prior art rulings, this court finds: the district court erred in finding as a matter of law that DX34 was abandoned, suppressed

> or concealed within the meaning of section 102(g); Wei's
> May 7, 1993 demonstration to two Sun Microsystems
> employees without confidentiality agreements was a
> public use under section 102(b); and the district court
> erred in its JMOL that DX37 did not as a matter of law
> anticipate or render the '906 patent obvious. As a result,
> this court remands for additional proceedings on these issues.

The opinion speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

103. Eolas admits that there is a document which purports to contain the following contents as quoted: "Wed, 31 Aug 1994 23:13:47 -0700", "Doyle", "Pei Wei". Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas denies the allegations in paragraph 103 of eBay's Answer and Counterclaims.

104. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104 of eBay's Answer and Counterclaims.

105. Eolas admits that there is a document which purports to contain the following contents as quoted:

> >> EMBEDDED PROGRAM OBJECTS IN DISTRIBUTED HYPERMEDIA
> SYSTEMS
> >>
> >> Researchers at the U. of California have created software for embedding
> >> interactive program objects within hypermedia documents. Previously
> >> object linking and embedding (OLE) has been employed on single machines
> or
> >> local area networks using MS Windows -TM-. This UC software is the
> >> first instance where program objects have been embedded in documents
> >> over an open and distributed hypermedia environment such as the
> >> World Wide Web on the Internet
> >
> > This is very interesting… But, I don't think this is the first case
> > of program objects embedded in docs and transported over the WWW.
> > ViolaWWW has had this capabilities [sic] for months and months now.
> >

> As Pei's paper on Viola states, that package did not support what it calls "embeddable program objects" until 1994. As our WWW server shows (http://visembryo.ucsf.edu/), we demonstrated a fully functional volume visualization application embedded within a WWW document in 1993. Furthermore, Viola merely implements an internal scripting language that allows one to code "mini application" scripts that are transferred to the local client, and then interpreted and run locally on the client machine. As Pei correctly notes in this paper, this is similar to the use of EMACS' internal programming capabilities.

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas denies the allegations in paragraph 105 of eBay's Answer and Counterclaims.

106. Eolas admits that there is a document which purports to contain the following contents as quoted: "Wed, 31 Aug 1994 23:36:55 -0700"; "Doyle"; "Pei Wei"; "Out of curiosity, did you publicly demonstrate this or publish any results before 1994? I remember talking to people from ORA at the first SIG-WEB meeting in November of 1993 and they said that no such features were yet publicly demonstrable in Viola. I seem to remember that they hinted at the time that someone was trying to get something to work, but it wasn't ready to show yet." Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas denies the allegations in paragraph 106 of eBay's Answer and Counterclaims.

107. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107 of eBay's Answer and Counterclaims and, on that basis, denies them.

108.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 of eBay's Answer and Counterclaims, and on that basis, denies them.

109.     Eolas admits that there is a document which purports to contain the following contents as quoted:  "Thu. 1 Sep 94 00:08:19 - 0700", "Doyle", "Pei Wei";

> mddoyle@netcom.com (Michael D. Doyle):
> *As Pei's paper on Viola states, that package did not support what it calls*
> *"embeddable program objects" until 1994.  As our WWW server shows*
> *(http://visembryo.ucsf.edu/), we demonstrated a fully functional volume*
> *visualization application embedded within a WWW document in 1993.*

> Well, Viola's model was *demonstrated* in 1993, *released* freely in 1994.

> But we may be comparing apples and kiwis here, and nevermind on this time thing as far as I'm concerned.

> *Furthermore, Viola merely implements an internal scripting language that*
> *allows one to code "mini application" scripts that are transferred to the*
> *local client, and then interpreted an run locally on the client machine.  As*
> *Pei correctly notes in his paper, this is similar to the use of EMACS'*
> *internal programming capabilities.*

> Right, this is the basic approach in viola.  The mention of OLE had me suspect that your system does not sue a scripting language. That's fine.  It's just another way of doing it.

> *What we have accomplished is much different.   Just as the Microsoft Windows*
> *OLE function allow any OLE-compliant application to be embedded, in its*
> *native form, within, for example, a MS Word for Windows document, we can*

*> embed ANY interactive application IN ITS NATIVE FORM within a WWW document.*
*> These program objects not only effectively encapsulate both data and*
*> methods, they also "encapsulate" computational resources, since the the*
*> program objects are, themselves, client server applications that actually*
*> run remotely on one or more distributed computational server. The access*
*> of the remote machines is transparent to the user, allowing, for example,*
*> someone running a WWW client on a laptop to interactively manipulate and*
*> analyze huge datasets running on a distributed array of supercomputers*
*> distributed across the country.*

Actually, you could do it different ways.  You could have the viola object running entirely locally, or have the object act as a front-end to a remote back-end.

There's no reason why Viola's model can't also do a client-server application (thou, OK not now quite the way you do it).  The chat-drawing demo in the paper shows this.  That mini app starts up, then makes a connection to a message relay server.

And, as for the plotting demo, it actually is really just a front-end that fires up a back-end plotting program (and the point is that that back-end could very well be running on a remote super computer instead of the localhost).  For that demo, there is a simple protocol such that the front-end app could pass an X window ID to the back-end, and the back-end draws the graphics directly onto the window ViolaWWW has opened for it.   (Viola scripts are compiled to byte-codes for speed's sake, but no, it's not fast enough to do the computation necessary for the plotting!)

Anyway, it sounds like what you have is a really defined standard interface (akin to the OLE API), where as Viola's model doesn't have a one (yet :-) -- Viola uses scripting rather than a stardard API for the glues.

*> The applicability for VR systems is obvious.  One of the major hurdles to*
*> widespread acceptance of VR technology has been the burden of large local*

> *computational resources.  Our approach allows that computational burden to*
> *be distributed to suitable remote "visualization engines," thereby allowing*
> *users to employ low-end machines to access sophisticated graphical*
> *environments.  It further allows easy access to those applications through*
> *the World Wide Web.*

Yup.  No arguments here…  There seems to be a few different ways to do VRML.  I was more interested in offering yet another piece of what it might take to realise VRML.

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109 of eBay's Answer and Counterclaims and, on that basis, denies them.

110.    Eolas denies the allegations in paragraph 110 of eBay's Answer and Counterclaims.

111.    Eolas admits that Doyle was living in Northern California on or about August 31, 1994.  Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111 of eBay's Answer and Counterclaims and, on that basis, denies them.

112.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 112 of eBay's Answer and Counterclaims and, on that basis, denies them.

113.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113 of eBay's Answer and Counterclaims and, on that basis, denies them.

114.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114 of eBay's Answer and Counterclaims and, on that basis, denies them.

115.    Eolas admits the allegations in paragraph 115 of eBay's Answer and Counterclaims.

116.    Eolas admits that the '906 patent contains the following statement: "An example of a browser program is the National Center for Supercomputing Application's (NCSA) Mosaic software developed by the University of Illinois at Urbana/Champaign, Ill. Another example is "Cello" available on the Internet at http://www.law.cornell.edu/." The remainder of the publicly available application for the '906 patent speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

117.    Eolas admits that the application for the '906 patent included at least one information disclosure statement. The publicly available information disclosure statement(s) speaks for itself/themselves, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

118.    Eolas admits that there is a declaration signed by Doyle dated November 22, 1994 which contains the information included in quotes in paragraph 118 of eBay's Answer and Counterclaims. Except, as otherwise admitted, Eolas denies the allegations of paragraph 118 of eBay's Answer and Counterclaims.

119.    Eolas admits that the prosecution history for the '906 patent is publicly available. The publicly available prosecution history speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

120.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 120 of eBay's Answer and Counterclaims and, on that basis, denies them.

121.    Eolas admits that there is a document which contains the following contents as quoted:  "Mon, 21 Aug 1995", "Doyle",

>> 8/21/95 CHICAGO: Eolas Technologies Inc. announced today that it has
>> completed a licensing agreement with the University of California for the
>> exclusive rights to a pending patent covering the use of embedded program
>> objects, or 'applets,' within World Wide Web documents.

Except as so admitted, Eolas denies the allegations in paragraph 121 of eBay's Answer and Counterclaims.

122.    Eolas admits that there is a document which purports to contain the following contents as quoted:  "Mon, 21 Aug 1995"; "Doyle", "Pei Wei";

>I sincerely hope this patent isn't going to stick, for the good of
>the web as a whole. . .
>
>And for the record, I just want to point out that the
>  "technology which enabled Web documents to contain fully-interactive
>   "inline" program objects"
>was existing in ViolaWWW and was *released* to the public, and in full
>source code form, even back in 1993. . . Actual conceptualization and
>existence occured [sic] before '93

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas denies the allegations in paragraph 122 of eBay's Answer and Counterclaims

123.    Eolas admits that there is a document which purports to contain the following contents as quoted:  "Mon, 21 Aug 1995 13:14:59 -0700", "Doyle"; "Pei Wei"; "We've had this discussion before (last September, remember?).  You admitted then that you did NOT release or

publish anything like this before the Eolas demonstrations."  Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc.  Except as so admitted, Eolas denies the allegations in paragraph 123 of eBay's Answer and Counterclaims.

124.   Eolas admits that there is a document which purports to contain the following contents as quoted:  "Mon, 21 Aug 1995 16:09:46 -0700"; "Doyle"; "Pei Wei";

> Please carefully re-read my letter to you... I said Viola was
> demonstrated in smaller settings, but before your demo. The
> applets stuff was demo'ed to whomever wanted to see it and had
> visited our office at O'Reilly & Associates (where I worked at the
> time).

> This is what I wrote on the VRML list:
> > Not that I wish to content [sic] on the point of simply who's first :)
> > But, let's see… (Wish I had kept better records and wrote papers
> >about things as they happened!)
> >
> > Definitely by May 8, 1993 we had demonstrated that plotting demo
> > (the very one shown in the viola paper) to visitors from a certain
> > computer manufacturer… This demo was memorable because someone and I
> > at ORA had lost sleep the night before the meeting, in order to cook up
> > that particular plotting demo :) We had to show something cool.

> That date (May 93), at least, predates your demo if I'm not
> mistaken. Then around August 93, it was shown to a bunch of
> attendees at the first Web Conference in Cambridge. So, it was shown, just not
> with lots of publicity and noise.

> I'm sure I could find more evidence if I spent/waste the time of digging thru
> archives.

> If you're talking about any display code transferred over network, look at a
> number of predating systems, including say net-transmitted postscript (NeWS).

> For transmitted interactive applications, even the early Viola (started around 88,
> relased [sic] 1991) had a viola-app net transfer tool (the idea is to have something
> like a Hypercard like environment on the scale of the net).

> If you're talking about interactive apps *specifically* on the web,

> ie applets in-lined into HTML documents etc., and with bidirectional
> communications, then look at ViolaWWW as it existed around late '92 early '93.

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Eolas denies the allegations in paragraph 124 of eBay's Answer and Counterclaims.

125.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125 of eBay's Answer and Counterclaims and, on that basis, denies them.

126.    Eolas admits that a publicly available opinion issued by the Federal Circuit Court of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement:

> In sum, with respect to the district court's prior art
> rulings, this court finds: the district court erred in finding
> as a matter of law that DX34 was abandoned, suppressed
> or concealed within the meaning of section 102(g); Wei's
> May 7, 1993 demonstration to two Sun Microsystems
> employees without confidentiality agreements was a
> public use under section 102(b); and the district court
> erred in its JMOL that DX37 did not as a matter of law
> anticipate or render the '906 patent obvious. As a result,
> this court remands for additional proceedings on these issues.

The opinion speaks for itself , and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

127.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127 of eBay's Answer and Counterclaims and, on that basis, denies them.

128.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 128 of eBay's Answer and Counterclaims and, on that basis, denies them.

129.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129 of eBay's Answer and Counterclaims and, on that basis, denies them.

130.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 130 of eBay's Answer and Counterclaims and, on that basis, denies them.

131.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131 of eBay's Answer and Counterclaims and, on that basis, denies them.

132.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 132 of eBay's Answer and Counterclaims and, on that basis, denies them.

133.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 133 of eBay's Answer and Counterclaims and, on that basis, denies them.

134.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 134 of eBay's Answer and Counterclaims and, on that basis, denies them.

135.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 135 of eBay's Answer and Counterclaims and, on that basis, denies them.

136.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 136 of eBay's Answer and Counterclaims and, on that basis, denies them.

137.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137 of eBay's Answer and Counterclaims and, on that basis, denies them.

138.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 138 of eBay's Answer and Counterclaims and, on that basis, denies them.

139.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 139 of eBay's Answer and Counterclaims and, on that basis, denies them.

140.     The prosecution history for the '906 patent is publicly available.  The publicly available prosecution history speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

141.     Eolas denies the allegations in paragraph 141 of eBay's Answer and Counterclaims.

142.     The prosecution history for the '906 patent is publicly available.  The publicly available prosecution history speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

143.     Eolas admits Eolas admits that the District Court issued a publicly available ruling (Docket Number 491) in the action (E.D.Ill. 1:99-cv-626) which states:

> Doyle created a file to hold all the information he found in 1998
> about the Viola browser, and he labeled his file "Viola stuff." The

> "Viola Stuff" file included descriptions of two "beta" releases of the Viola browser, a version 3.0 release in February 1994, and a version 3.1 release in March 1994. There were public announcements in both cases of Internet addresses where "source and binary" code for the Viola browser could be found. He also found extensive links for various purported "demos" of the Viola browser's capabilities.

The ruling speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

144.   Eolas admits that there is a document which purports to contain the following contents as quoted: "Wed, 31 Aug 1994 21:06:17 -0700"; "Doyle"; "Pei Wei"; "This is very interesting . . . But, I don't think this is the first case of program objects embedded in docs and transported over the WWW. ViolaWWW has had this capabilities [sic] for months and months now." Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 144 of eBay's Answer and Counterclaims and, on that basis, denies them.

145.   Eolas admits that there is a document which purports to contain the following contents as quoted: "Wed, 31 Aug 1994 23:36:55 -0700"; "Doyle"; "Pei Wei"; "Out of curiosity, did you publicly demonstrate this or publish any results before 1994? I remember talking to people from ORA at the first SIG-WEB meeting in November of 1993 and they said that no such features were yet publicly demonstrable in Viola. I seem to remember that they hinted at the time that someone was trying to get something to work, but it wasn't ready to show yet." Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 145 of eBay's Answer and Counterclaims and, on that basis, denies them.

146. Eolas admits that there is a document which purports to contain the following contents as quoted: "The description of the page as having links reading "Announcement" "Agenda" and "Photos of attendees" and having a heading "WWWWizardsWorkshop" is accurate." Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 146 of eBay's Answer and Counterclaims and, on that basis, denies them.

147. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 147 of eBay's Answer and Counterclaims and, on that basis, denies them.

148. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 148 of eBay's Answer and Counterclaims and, on that basis, denies them.

149. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 149 of eBay's Answer and Counterclaims and, on that basis, denies them.

150. Eolas admits that the application for the '906 patent was filed on October 17, 1994. Eolas admits that there is a document which purports to contain the following contents as quoted: "Date: Mon, 21, Aug 1995 16:09:46 -0700"; "Doyle"; "Pei Wei";

> That date (May 93), at least, predates your demo if I'm not
> mistaken. Then around August 93, it was shown to a bunch of

attendees at the first Web Conference in Cambridge. So, it was shown, just not with lots of publicity and noise.

I'm sure I could find more evidence if I spent/waste the time of digging thru archives.

If you're talking about any display code transferred over network, look at a number of predating systems, including say net-transmitted postscript (NeWS).

For transmitted interactive applications, even the early Viola (started around 88, relased [sic] 1991) had a viola-app net transfer tool (the idea is to have something like a Hypercard like environment on the scale of the net).

If you're talking about interactive apps *specifically* on the web, ie applets in-lined into HTML documents etc., and with bidirectional communications, then look at ViolaWWW as it existed around late '92 early '93.

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 150 of eBay's Answer and Counterclaims and, on that basis, denies them.

151.    Eolas admits that the application for the '906 patent was filed on October 17, 1994. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 151 of eBay's Answer and Counterclaims and, on that basis, denies them.

152.    Eolas admits that there is a document which purports to contain the following contents as quoted: "July 27, 1992";

Please send WWW specific bugs to www-bugs@info.cern.ch, general comments to www-talk@info.cern.ch, and anything to wei@xcf.Berkeley.EDU.

Pei Y. Wei

wei@xcf.Berkeley.EDU

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 152 of eBay's Answer and Counterclaims and, on that basis, denies them.

153. Eolas admits that there is a document which purports to contain the following contents as quoted: "Date: Fri, 28 Jan 94 08:02:44 -0800";

> Right now, the ViolaWWW that is under development can embed viola objects/applications inside of HTML documents. This is useful in that, for example, if you needed a hyper-active tree widget in your HTML document, and that HTML+ doesn't happen to define it, you could build it as a mini viola application. Same thing with customized input-forms that could conceivably do complicated client-side checking. Or, complex tables. Or, a chess board.

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 153 of eBay's Answer and Counterclaims and, on that basis, denies them.

154. Eolas admits that there is a document which purports to contain the following contents as quoted:

> The new ViolaWWW is now available for ftp'ing.  It's beta and feedback is very welcomed.  The README file follows…

> ViolaWWW, Version 3.0 Beta                    Feb 23 1994

25

> ViolaWWW is an extensible World Wide Web hypermedia browser for XWindows.
>
> ….
>
> Notable features in the new ViolaWWW
> ───────────────────────────────────
>
> ….
>
> *Embeddable in-document and in-toolbar programmable viola objects. A document can embed mini voila applications (ie: a chess board), or can cause mini apps to be placed in the toolbar.
>
> ….
>
> Availability
> ──────────
>
> Source and binary can be found in <u>ftp://ora.com/pub/www/viola</u>. Sparc binary is supplied.
>
> ….
>
> Pei Y. Wei (wei@ora.com)
> O'Reilly & Associates, Inc.

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 154 of eBay's Answer and Counterclaims and, on that basis, denies them.

155. Eolas admits that there is a document which purports to contain the following contents as quoted:

> ViolaWWW, Version 3.1 Beta                    Mar 23 1994
> ═══════════════════════

ViolaWWW is an extensible World Wide Web hypermedia browser for XWindows.

….

Notable features in the new ViolaWWW
_____

….

*Embeddable in-document and in-toolbar programmable viola objects. A document can embed mini voila applications (ie: a chess board), or can cause mini apps to be placed in the toolbar.

….

Availability
_____

Source and binary can be found in ftp://ora.com/pub/www/viola. Sparc binary is supplied.

….

Pei Y. Wei (wei@ora.com)
O'Reilly & Associates, Inc.

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 155 of eBay's Answer and Counterclaims and, on that basis, denies them.

156. Eolas admits that there is a document which purports to contain the following contents as quoted: "plotDemo.html." Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 156 of eBay's Answer and Counterclaims and, on that basis, denies them.

157.    Eolas admits that there is a document which purports to contain the following contents as quoted: "plot.v." Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 157 of eBay's Answer and Counterclaims and, on that basis, denies them.

158.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 158 of eBay's Answer and Counterclaims and, on that basis, denies them.

159.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 159 of eBay's Answer and Counterclaims and, on that basis, denies them.

160.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 160 of eBay's Answer and Counterclaims and, on that basis, denies them.

161.    Eolas admits that there is a document which purports to contain the following contents as quoted: "Thu. 1 Sep 94 00:08:19 - 0700", "Doyle", "Pei Wei";

mddoyle@netcom.com (Michael D. Doyle):
> *As Pei's paper on Viola states, that package did not support what it calls*
> *"embeddable program objects" until 1994. As our WWW server shows*
> *(http://visembryo.ucsf.edu/), we demonstrated a fully functional volume*

> *visualization application embedded within a WWW document in*
> *1993.*

Well, Viola's model was *demonstrated* in 1993, *released* freely in 1994.

But we may be comparing apples and kiwis here, and nevermind on this time thing as far as I'm concerned.

> *Furthermore, Viola merely implements an internal scripting language that*
> *allows one to code "mini application" scripts that are transferred to the*
> *local client, and then interpreted an run locally on the client machine. As*
> *Pei correctly notes in his paper, this is similar to the use of EMACS'*
> *internal programming capabilities.*

Right, this is the basic approach in viola. The mention of OLE had me suspect that your system does not sue a scripting language. That's fine. It's just another way of doing it.

> *What we have accomplished is much different. Just as the Microsoft Windows*
> *OLE function allow any OLE-compliant application to be embedded, in its*
> *native form, within, for example, a MS Word for Windows document, we can*
> *embed ANY interactive application IN ITS NATIVE FORM within a WWW document.*
> *These program objects not only effectively encapsulate both data and*
> *methods, they also "encapsulate" computational resources, since the the*
> *program objects are, themselves, client server applications that actually*
> *run remotely on one or more distributed computational server. The access*
> *of the remote machines is transparent to the user, allowing, for example,*
> *someone running a WWW client on a laptop to interactively manipulate and*
> *analyze huge datasets running on a distributed array of supercomputers*
> *distributed across the country.*

Actually, you could do it different ways. You could have the viola object running entirely locally, or have the object act as a front-end to a remote back-end.

There's no reason why Viola's model can't also do a client-server application (thou, OK not now quite the way you do it). The chat-

drawing demo in the paper shows this. That mini app starts up, then makes a connection to a message relay server.

And, as for the plotting demo, it actually is really just a front-end that fires up a back-end plotting program (and the point is that that back-end could very well be running on a remote super computer instead of the localhost). For that demo, there is a simple protocol such that the front-end app could pass an X window ID to the back-end, and the back-end draws the graphics directly onto the window ViolaWWW has opened for it. (Viola scripts are compiled to byte-codes for speed's sake, but no, it's not fast enough to do the computation necessary for the plotting!)

Anyway, it sounds like what you have is a really defined standard interface (akin to the OLE API), where as Viola's model doesn't have a one (yet :-) -- Viola uses scripting rather than a stardard API for the glues.

> *The applicability for VR systems is obvious. One of the major hurdles to*
> *widespread acceptance of VR technology has been the burden of large local*
> *computational resources. Our approach allows that computational burden to*
> *be distributed to suitable remote "visualization engines," thereby allowing*
> *users to employ low-end machines to access sophisticated graphical*
> *environments. It further allows easy access to those applications through*
> *the World Wide Web.*

Yup. No arguments here… There seems to be a few different ways to do VRML. I was more interested in offering yet another piece of what it might take to realise VRML.

Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 161 of eBay's Answer and Counterclaims and, on that basis, denies them.

162. Eolas admits that there is a document which purports to contain the following contents as quoted: "Date: Wed 31, Aug 94 23:16:41 - 0700"; "Doyle"; "Pei Wei";

Not that I wish to content on the point of simply who's first :)  But, let's see… Wish I had kept better records and wrote papers about things as they happened!)

Definitely by May 8, 1993 we had demonstrated that plotting demo (the very one shown in the viola paper) to visitors from a certain computer manufacturer…   This demo was memorable because someone and I at ORA had lost sleep the night before the meeting, in order to cook up that particular plotting demo :)  We had to show something cool.

That demo wasn't very hard to do because by that time the basic capability was already in place for violaWWW to fetch viola objects over HTTP (or whatever) and plug them into documents. Of course, our wire-frame plotting demo isn't anywhere as comphrehensive as yours.  But, the point was that there was a way to embed programmable & interactive objects into HTML documents.

You see, the basic object/interpreter engine has been in viola from day one of the old ViolaWWW from mid 1992.  So basically it just had to wait until the second (current) incarnation of ViolaWWW for the HTML widget (as it were) to get good enough such that it was feasible to embed such interactive objects inside a document.

If I dig more and harder into my archives I might find more earlier evidence of having shown this to outside parties (we do these demos to interested parties some times)…   Unfortunately I don't remember when it was (definitely earlier than May 93) that we showed Time Bernners-Lee a very early demo of the second ViolaWWW with embedded interactive objects.

I don't know how your system works (maybe you could post or send me some detailed info or URLs), but I should mention that Viola's basic approach is to use an interpreter to run the "program objects" (as opposed to linked-in executables).

I have say, thou [sic], that lots of this stuff is still in the Research & Demo stage, and there's still lots of details to work out.

Eolas admits that there is a document which purports to contain the following contents as quoted:

"Mon, 21 Aug 1995 16:09:46 -0700"; "Doyle"; "Pei Wei";

Please carefully re-read my letter to you... I said Viola was demonstrated in smaller settings, but before your demo. The applets stuff was demo'ed to whomever wanted to see it and had visited our office at O'Reilly & Associates (where I worked at the time).

This is what I wrote on the VRML list:
> Not that I wish to content [sic] on the point of simply who's first :)
> But, let's see… (Wish I had kept better records and wrote papers

31

>about things as they happened!)
>
> Definitely by May 8, 1993 we had demonstrated that plotting demo
> (the very one shown in the viola paper) to visitors from a certain
> computer manufacturer… This demo was memorable because someone and I
> at ORA had lost sleep the night before the meeting, in order to cook up
> that particular plotting demo :) We had to show something cool.
That date (May 93), at least, predates your demo if I'm not
mistaken. Then around August 93, it was shown to a bunch of
attendees at the first Web Conference in Cambridge. So, it was shown, just not
with lots of publicity and noise.
I'm sure I could find more evidence if I spent/waste the time of digging thru
archives.
If you're talking about any display code transferred over network, look at a
number of predating systems, including say net-transmitted postscript (NeWS).
For transmitted interactive applications, even the early Viola (started around 88,
relased [sic] 1991) had a viola-app net transfer tool (the idea is to have something
like a Hypercard like environment on the scale of the net).
If you're talking about interactive apps *specifically* on the web,
ie applets in-lined into HTML documents etc., and with bidirectional
communications, then look at ViolaWWW as it existed around late '92 early '93.

Eolas lacks information regarding the accuracy of the quote(s), the purported dates on the

documents, the identity of the sender(s)/recipient(s), the authenticity of the documents, and etc.

Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 162 of eBay's Answer and Counterclaims and, on that basis,

denies them.

163.   Eolas admits that a publicly available opinion issued by the Federal Circuit Court

of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement:

In sum, with respect to the district court's prior art
rulings, this court finds: the district court erred in finding
as a matter of law that DX34 was abandoned, suppressed
or concealed within the meaning of section 102(g); Wei's
May 7, 1993 demonstration to two Sun Microsystems
employees without confidentiality agreements was a
public use under section 102(b); and the district court
erred in its JMOL that DX37 did not as a matter of law
anticipate or render the '906 patent obvious. As a result,

this court remands for additional proceedings on these issues.

The opinion speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

164. Eolas denies the allegations in paragraph 164 of eBay's Answer and Counterclaims.

165. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 165 of eBay's Answer and Counterclaims and, on that basis, denies them.

166. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 166 of eBay's Answer and Counterclaims and, on that basis, denies them.

167. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 167 of eBay's Answer and Counterclaims and, on that basis, denies them.

168. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 168 of eBay's Answer and Counterclaims and, on that basis, denies them.

169. Eolas admits there are documents which purports to contain the following contents as quoted "very one" and "to visitors from a certain computer manufacturer." Eolas lacks information regarding the accuracy of the quote(s), the purported dates on the documents, the identity of the sender(s)/recipient(s), the authenticity of the documents, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 169 of Amazon.com's Answer and Counterclaims and, on that basis, denies them.

170. Eolas admits that a publicly available opinion issued by the Federal Circuit Court of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement:

> In sum, with respect to the district court's prior art
> rulings, this court finds: the district court erred in finding
> as a matter of law that DX34 was abandoned, suppressed
> or concealed within the meaning of section 102(g); Wei's
> May 7, 1993 demonstration to two Sun Microsystems
> employees without confidentiality agreements was a
> public use under section 102(b); and the district court
> erred in its JMOL that DX37 did not as a matter of law
> anticipate or render the '906 patent obvious. As a result,
> this court remands for additional proceedings on these issues.

The opinion speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

171. The prosecution history for the '906 patent is publicly available. The publicly available prosecution history speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

172. Eolas denies the allegations in paragraph 172 of eBay's Answer and Counterclaims.

173. Paragraph 173 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial. To the extent any response is warranted, Eolas denies the allegations in paragraph 173 of eBay's Answer and Counterclaims.

174. Eolas admits that the publicly available The Manual of Patent Examining Procedure (5th edition, 16th Revision) contains the following statement:

> The term "information" as used in *>37 CFR< 1.56 means all of the kinds of information required to be disclosed and includes *any* information which is "material to **>patentability<." Materiality is defined in *>37 CFR< 1.56(*>b<) and discussed herein at >MPEP< § 2001.05. In addition to prior art such as patents and publications, *>37 CFR< 1.56 includes, for example, information on possible prior public uses, sales, offers to sell, derived knowledge, prior invention by another, inventorship conflicts, and the like.

The Manual of Patent Examining Procedure speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

175. Eolas admits that the publicly available The Manual of Patent Examining Procedure (8th edition, 7 revision) contains the following statement as quoted:

> The term "information" as used in 37 CFR 1.56 means all of the kinds of information required to be disclosed and includes any information which is "material to patentability." Materiality is defined in 37 CFR 1.56(b) and discussed herein at MPEP § 2001.05. In addition to prior art such as patents and publications, 37 CFR 1.56 includes, for example, information on >enablement,< possible prior public uses, sales, offers to sell, derived knowledge, prior invention by another, inventorship conflicts, and the like. >"Materiality is not limited to prior art but embraces any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226, 1234, 66 USPQ2d 1481, 1486 (Fed. Cir. 2003) (emphasis in original) (finding article which was not prior art to be material to enablement issue).

The Manual of Patent Examining Procedure speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

176. Eolas denies the allegations in paragraph 176 of eBay's Answer and Counterclaims.

177. Eolas admits that a publicly available opinion issued by the Federal Circuit Court of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement:

> In addition, this court vacates the district court's JMOL that DX37 did not anticipate the '906 patent. To

> anticipate, a single reference must teach each and every
> limitation of the claimed invention. *See EMI Group N.*
> *Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d
> 1342, 1350 (Fed. Cir. 2001).  When viewed in "a
> light most favorable" to Microsoft, the testimony by
> Microsoft's expert, Dr. Kelly, presents a question of fact
> as to whether DX37 anticipates the '906 patent. *See*
> *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996)

The opinion speaks for itself , and thus no further response is required.  To the extent a further

response is required, Eolas answers as follows: denied.

178.    Eolas admits that a publicly available opinion issued by the Federal Circuit Court

of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement:

> In sum, with respect to the district court's prior art
> rulings, this court finds: the district court erred in finding
> as a matter of law that DX34 was abandoned, suppressed
> or concealed within the meaning of section 102(g); Wei's
> May 7, 1993 demonstration to two Sun Microsystems
> employees without confidentiality agreements was a
> public use under section 102(b); and the district court
> erred in its JMOL that DX37 did not as a matter of law
> anticipate or render the '906 patent obvious. As a result,
> this court remands for additional proceedings on these issues.

The opinion speaks for itself , and thus no further response is required.  To the extent a further

response is required, Eolas answers as follows: denied.

179.    Eolas admits that a publicly available opinion issued by the Federal Circuit Court

of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement:

> The district court also erred in its granting JMOL on
> obviousness. Dr. Kelly's testimony provided sufficient
> evidence to survive JMOL. In his testimony, Dr. Kelly
> discussed: (1) the scope of DX34 and DX37; (2) the
> potential differences between DX34 and DX3 7 and the
> claimed invention; and (3) the state of the art and the
> level of skill in the art in 1993. Dr. Kelly's testimony
> could also be read to provide a suggestion to use a
> browser in a distributed hypermedia environment as in
> the claimed invention. Although Microsoft's direct

examination of Dr. Kelly focused on anticipation, the information solicited from Dr. Kelly might also support an argument of obviousness in the alternative. In light of this court's determination that DX34 was not abandoned or concealed, Microsoft should also have the opportunity to present DX34 as part of its obviousness defense. *See Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987) (indicating that a key preliminary legal inquiry in obviousness analysis is: "what is the prior art?"). Weighing the facts in favor of the non-moving party, as required by Rule 50, a reasonable jury should have the opportunity to determine whether the claimed invention would have been obvious at the time of invention based on the record.

The opinion speaks for itself , and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

180. Eolas admits that a publicly available opinion issued by the Federal Circuit Court of Appeals cited as 399 F.3d 1325, 1336 (Fed. Cir. 2005) contains the following statement:

This court also vacates the district court's decision on inequitable conduct. Again the district court based its inequitable conduct finding on the misunderstanding that Viola could not possibly constitute prior art. Relying on that erroneous determination, the district court concluded that Viola could not be material to patentability. As discussed above, the district court erred in determining that DX34 was abandoned, suppressed or concealed within the meaning of section 102(g). Further, the district court did not explain a reason for declining to consider DX37, also created prior to Doyle's invention, as immaterial to patentability of the '906 patent. In respect to potential prior art software under section 102(b), this court has explained that the software product constitutes prior art, not necessarily the later published abstract associated with that software product. *In re Epstein*, 32 F.3d 1559, 1567-68 (Fed. Cir. 1994). Similarly, in the case at bar, the Viola browser itself, not the later developed Viola paper or "Viola stuff" file, constitutes prior art. On remand, the district court will have an opportunity to include this potential prior art in its inequitable conduct inquiry. At the same time, the district court may reconsider its findings on Doyle's intent to deceive the PTO.

The opinion speaks for itself , and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

181.    Eolas denies the allegations in paragraph 181 of eBay's Answer and Counterclaims.

182.    Eolas admits that during the reexamination of the '906 patent, the Patent Office issued an office action on or about July 30, 2007.  Eolas admits that the office action contains but is not limited to the following statement as:

> Thus, while the Viola DX37 source code files were not effective in expressly teaching each of the limitations of independent claims 1 and 6, as noted above in the previous reexamination proceedings, the examiner notes that a new reference regarding Viola, noted as "A Brief Overview of the VIOLA Engine, and its applications", written by Pei Wei, pages TT 05441 - TT 05600, which include the "Viola in a Nutshell: the Viola World Wide Web Toolkit, being included on the Information Disclosure Statement dated 8/24/06, can be interpreted as teaching each of the limitations. A full discussion of the reference follows below.

Except as so admitted, Eolas denies the allegations in paragraph 182 of eBay's Answer and Counterclaims.

183.    Eolas denies the allegations that "Pei Wei had told Doyle on August 31, 1994, about the Viola paper dated August 16, 1994 and Doyle had downloaded and read that paper on the same day."  The prosecution history for the '906 patent is publicly available.  The publicly available prosecution history speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

184.    The allegations in paragraph 184 of eBay's Answer and Counterclaims contain statements and/or conclusions of law which do not warrant an affirmance or denial.  To the extent a response is required, Eolas answers as follows: denied.

185.    Eolas admits that the application for the '906 patent was filed on October 17, 1994.  Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 185 of eBay's Answer and Counterclaims and, on that basis, denies them.

186.    Eolas denies the allegations in paragraph 186 of eBay's Answer and Counterclaims.

187.    Eolas denies the allegations in paragraph 187 of eBay's Answer and Counterclaims.

188.    Eolas admits that a publicly available opinion issued by the Federal Circuit Court of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement:

> In sum, with respect to the district court's prior art
> rulings, this court finds: the district court erred in finding
> as a matter of law that DX34 was abandoned, suppressed
> or concealed within the meaning of section 102(g); Wei's
> May 7, 1993 demonstration to two Sun Microsystems
> employees without confidentiality agreements was a
> public use under section 102(b); and the district court
> erred in its JMOL that DX37 did not as a matter of law
> anticipate or render the '906 patent obvious. As a result,
> this court remands for additional proceedings on these issues.

Eolas also admits that the prosecution history for the '906 patent is publicly available.  The opinion and prosecution history speak for themselves and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

189.    Eolas admits that the Manual of Patent Examining Procedure section 2258 (8th edition, 7 revision) is entitled "Scope of *Ex Parte* Reexamination" and that section 2258 contains the following statement:

> Rejections will not be based on matters other than patents or
> printed publications, such as public use or sale, inventorship, 35
> U.S.C. 101, *>conduct issues<, etc. In this regard, see In re

> Lanham, 1 USPQ2d 1877 (Comm'r Pat. 1986), and Stewart
> Systems v. Comm'r of Patents and Trademarks, 1 USPQ2d 1879
> (E.D. Va. 1986). A rejection on prior public use or sale,
> insufficiency of disclosure, etc., cannot be made even if it relies on
> a prior art patent or printed publication. Prior art patents or printed
> publications must be applied under an appropriate portion of 35
> U.S.C. 102 and/or 103 when making a rejection.

Except as so admitted, Eolas denies the allegations in paragraph 189 of eBay's Answer and Counterclaims.

190.    Eolas admits that the application for the '906 patent was filed on October 17, 1994.  The prosecution history for the '906 patent is publicly available.  The publicly available prosecution history speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.  To the extent that the remaining allegations in paragraph 190 of eBay's Answer and Counterclaims contain statements and/or conclusions of law, no affirmance or denial is required.

191.    Eolas denies the allegations in paragraph 191 of eBay's Answer and Counterclaims.

192.    Eolas denies the allegations in paragraph 192 of eBay's Answer and Counterclaims.

193.    Eolas denies the allegations in paragraph 193 of eBay's Answer and Counterclaims.

194.    Eolas denies the allegations in paragraph 194 of eBay's Answer and Counterclaims.

195.    Eolas admits that Doyle has had and has a financial interest in Eolas.  Except as so admitted, Eolas denies the allegations in paragraph 195 of eBay's Answer and Counterclaims.

196. Eolas denies the allegations in paragraph 196 of eBay's Answer and Counterclaims.

197. Eolas admits that Doyle was involved in some aspects of the prosecution of application number 08/324,443, which became the '906 patent. Except as so admitted, Eolas denies the allegations in paragraph 197 of eBay's Answer and Counterclaims.

198. Eolas admits that Doyle signed a declaration on or about November 22, 1994. The publicly available declaration speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied..

199. Eolas admits that Doyle signed a declaration on or about January 2, 1997. The publicly available declaration speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

200. Eolas admits that Doyle participated in an examiner interview on or about February 24, 1997. The publicly available interview summaries speak for themselves, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

201. Eolas admits that Doyle signed a declaration on or about May 27, 1997 and that the declaration was submitted to the Patent Office. Eolas admits that the declaration contains approximately 28 pages. The publicly available declaration speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

202. Eolas admits that Doyle signed a declaration on or about October 29, 1997 and that the declaration was submitted to the Patent Office. The publicly available declaration

speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

203. Eolas admits that Doyle participated in an examiner interview on or about November 6, 1997. The publicly available interview summaries speak for themselves, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

204. Eolas admits that Doyle participated in certain aspects of the prosecution of the '906 patent. Eolas admits that the '906 patent lists the following as quoted: "Attorney, Agent, or Firm—Townsend and Townsend and Crew LLP". Except as so admitted, Eolas denies the allegations in paragraph 204 of eBay's Answer and Counterclaims.

205. Eolas admits the Doyle reviewed and approved at least some papers submitted to the Patent Office during the prosecution of the '906 patent. Except as so admitted, Eolas denies the allegations in paragraph 205 of eBay's Answer and Counterclaims.

206. Eolas admits that the application for the '906 patent included at least one information disclosure statement. The prosecution history for the '906 patent is publicly available. The publicly available prosecution history speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

207. Eolas denies the allegations in paragraph 207 of eBay's Answer and Counterclaims.

208. Eolas denies the allegations in paragraph 208 of eBay's Answer and Counterclaims.

209.    Eolas admits that the Patent Office issued an office action on or about May 6, 1996.  The publicly available office action speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

210.    Eolas admits that on or about August 6, 1996, a response to an office action was submitted to the Patent Office.  The publicly available response speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

211.    Eolas admits that on or about August 6, 1996, a response to an office action was submitted to the Patent Office.  Eolas admits that Doyle reviewed and approved at least part of the response.  Except as so admitted, Eolas denies the allegations in paragraph 211 of eBay's Answer and Counterclaims.

212.    Eolas admits the allegations in paragraph 212 of eBay's Answer and Counterclaims.

213.    Eolas denies the allegations in paragraph 213 of eBay's Answer and Counterclaims.

214.    Eolas admits that the Patent Office issued an office action and that the office action contains but is not limited to the following content as quoted: "Date Mailed: 03/26/97".  The publicly available Office Action speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

215.    Eolas admits that a response to an office action was submitted to the Patent Office on or about June 2, 1997.  Except as so admitted, Eolas denies the allegations in paragraph 215 of eBay's Answer and Counterclaims.

216.    Eolas admits that a response to an office action was submitted to the Patent Office on or about June 2, 1997.  Eolas admits that Doyle reviewed and approved at least part of the response.  Except as so admitted, Eolas denies the allegations in paragraph 216 of eBay's Answer and Counterclaims.

217.    Eolas admits that a response to an office action was submitted to the Patent Office on or about June 2, 1997 and that the response contains but is not limited to the following statement: "Thus, there is no suggestion in Khoyi of modifying Mosaic so that an external application, by analogy to Khoyi the source document manager, is invoked to display and interactively process the object within the document window while the document is displayed by Mosaic in the same window."  Except as so admitted, Eolas denies the allegations in paragraph 217 of eBay's Answer and Counterclaims.

218.    Eolas denies the allegations in paragraph 218 of eBay's Answer and Counterclaims.

219.    Eolas admits that the Patent Office issued an office action on or about August 25, 1997.  The publicly available office action speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

220.    Eolas admits that a response to an office action was submitted to the Patent Office on or about December 23, 1997.  Except as so admitted, Eolas denies the allegations in paragraph 220 of eBay's Answer and Counterclaims.

221.    Eolas admits that a response to an office action was submitted to the Patent Office on or about December 23, 1997 and that Doyle reviewed and approved at least part of the response.  Except as so admitted, Eolas denies the allegations in paragraph 221 of eBay's Answer and Counterclaims.

222.	Eolas admits that a response to an office action was submitted to the Patent Office on or about December 23, 1997 and that the response contains but is not limited to the following statement:

> The first part of the argument demonstrates that the cited art does not disclose or suggest several of the elements and limitations recited in claim 1. The second part of the argument demonstrates that the purpose, functions, and technology utilized in Mosaic and Koppolu are so different that, even if the missing features were disclosed in isolation, it would not have been obvious or even feasible for a person of skill in the art to combine the teachings of the reference to realize the claimed invention.
>
> Turning to the first part of the argument, there is no disclosure or suggestion in Mosaic or Koppolu of automatically invoking an external application when an embed text format is parsed. Each of those references require user input, specifically clicking with a mouse pointer, to activate external applications to allow display and interaction with an external object.

Except as so admitted, Eolas denies the allegations in paragraph 222 of eBay's Answer and Counterclaims.

223.	Eolas denies the allegations in paragraph 223 of eBay's Answer and Counterclaims.

224.	Eolas denies the allegations in paragraph 224 of eBay's Answer and Counterclaims.

225.	Eolas denies the allegations in paragraph 225 of eBay's Answer and Counterclaims.

226.	Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 226 of eBay's Answer and Counterclaims and, on that basis, denies them

227.    Eolas admits that Doyle signed a declaration on or about May 27, 1997 and that the declaration was submitted to the Patent Office.  The publicly available declaration speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

228.    Eolas admits that Doyle signed a declaration on or about May 27, 1997 and that the declaration was submitted to the Patent Office.  The publicly available declaration speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

229.    Eolas denies the allegations in paragraph 229 of eBay's Answer and Counterclaims.

230.    Eolas admits the allegations in paragraph 230 of eBay's Answer and Counterclaims.

231.    Eolas admits that a litigation involved the validity of the '906 patent and that Doyle was involved in some aspects of the litigation.  Except as so admitted, Eolas denies the allegations in paragraph 231 of eBay's Answer and Counterclaims.

232.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 232 of eBay's Answer and Counterclaims and, on that basis, denies them.

233.    Eolas admits that a publicly available opinion issued by the Federal Circuit Court of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement as block quoted:

> In sum, with respect to the district court's prior art
> rulings, this court finds: the district court erred in finding
> as a matter of law that DX34 was abandoned, suppressed
> or concealed within the meaning of section 102(g); Wei's

> May 7, 1993 demonstration to two Sun Microsystems
> employees without confidentiality agreements was a
> public use under section 102(b); and the district court
> erred in its JMOL that DX37 did not as a matter of law
> anticipate or render the '906 patent obvious. As a result,
> this court remands for additional proceedings on these
> issues.

The opinion speaks for itself , and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied

234. Eolas denies the allegation that "the plotting demo involving the ViolaWWW browser anticipated the asserted claims of the '906 patent." Eolas lacks knowledge or information sufficient to form a belief as to the truth regarding the remaining allegations in paragraph 234 of eBay's Answer and Counterclaims and, on that basis, denies them.

235. Eolas admits that there is a document which purports to contain the information included in quotes in paragraph 235 of eBay's Answer and Counterclaims. Eolas lacks information regarding the accuracy of the quote(s), the purported date on the document, the identity of the sender(s)/recipient(s), the authenticity of the document, and etc. Except as so admitted, Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 235 of eBay's Answer and Counterclaims and, on that basis, denies them.

236. Eolas admits that Dr. Kelly testified at trial. Eolas does not admit to the veracity of his testimony. The publicly available trial testimony speaks for itself, and thus no further response is required. To the extent a response is required, Eolas answers as follows: denied.

237. Eolas admits that Pei Wei testified at trial. Eolas does not admit to the veracity of his testimony. The publicly available trial testimony speaks for itself, and thus no further response is required. To the extent a response is required, Eolas answers as follows: denied.

238.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 238 of eBay's Answer and Counterclaims and, on that basis, denies them.

239.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 239 of eBay's Answer and Counterclaims and, on that basis, denies them.

240.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 240 of eBay's Answer and Counterclaims and, on that basis, denies them.

241.     Paragraph 241 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial.  To the extent any response is warranted, Eolas responds as follows: denied.

242.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 242 of eBay's Answer and Counterclaims and, on that basis, denies them.

243.     Eolas admits that the application for the '906 patent was filed on October 17, 1994.  The allegations in paragraph 243 of eBay's Answer and Counterclaims contain statements and/or conclusions of law which do not warrant an affirmance or denial.  To the extent a response is required, Eolas answers as follows: denied.

244.     Eolas admits that Dr. Kelly testified at trial.  Eolas does not admit to the veracity of his testimony.  The publicly available trial testimony speaks for itself, and thus no further response is required.  To the extent a response is required, Eolas answers as follows: denied.

245. Eolas admits that a publicly available opinion issued by the Federal Circuit Court of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement:

> The district court also erred in its granting JMOL on obviousness. Dr. Kelly's testimony provided sufficient evidence to survive JMOL. In his testimony, Dr. Kelly discussed: (1) the scope of DX34 and DX37; (2) the potential differences between DX34 and DX37 and the claimed invention; and (3) the state of the art and the level of skill in the art in 1993. Dr. Kelly's testimony could also be read to provide a suggestion to use a browser in a distributed hypermedia environment as in the claimed invention. Although Microsoft's direct examination of Dr. Kelly focused on anticipation, the information solicited from Dr. Kelly might also support an argument of obviousness in the alternative. In light of this court's determination that DX34 was not abandoned or concealed, Microsoft should also have the opportunity to present DX34 as part of its obviousness defense. *See Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987) (indicating that a key preliminary legal inquiry in obviousness analysis is: "what is the prior art?"). Weighing the facts in favor of the non-moving party, as required by Rule 50, a reasonable jury should have the opportunity to determine whether the claimed invention would have been obvious at the time of invention based on the record.

The opinion speaks for itself , and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

246. Eolas denies the allegations in paragraph 246 of eBay's Answer and Counterclaims.

247. Eolas admits that Dr. Kelly testified at trial. Eolas does not admit to the veracity of his testimony. The publicly available trial testimony speaks for itself, and thus no further response is required. To the extent a response is required, Eolas answers as follows: denied.

248. Eolas admits that Doyle attended portions of the trial. Eolas denies the remaining allegations in paragraph 248 of eBay's Answer and Counterclaims.

249.    Eolas denies the allegations in paragraph 249 of eBay's Answer and Counterclaims.

250.    Eolas denies the allegations in paragraph 250 of eBay's Answer and Counterclaims.

251.    Eolas admits the allegations in paragraph 251 of eBay's Answer and Counterclaims.

252.    Eolas denies the allegations in paragraph 252 of eBay's Answer and Counterclaims.

253.    Eolas admits that Doyle has had and has a financial interest in Eolas.  Except as so admitted, Eolas denies the allegations in paragraph 253 of eBay's Answer and Counterclaims.

254.    Eolas denies the allegations in paragraph 254 of eBay's Answer and Counterclaims.

255.    Eolas admits that Doyle was involved in some aspects of the re-examination. Eolas denies the remaining allegations in paragraph 255 of eBay's Answer and Counterclaims.

256.    Eolas admits that Doyle participated in an examiner interview on or about April 27, 2004 and that the interview involved a presentation containing approximately 22 slides.  The publicly available interview and the presentation speak for themselves, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

257.    Eolas admits that Doyle signed a declaration on or about May 6, 2004 and that the declaration was submitted to the Patent Office.  The publicly available declaration speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

258.     Eolas admits that Doyle participated in an examiner interview on or about August 18, 2005.  Eolas admits that the Interview Summary contains but is not limited to the following statement: "The issues were discussed in connection with a set of slides which are attached hereto."  Eolas admits that the presentation included some slides.  The publicly available interview summaries and the publicly available presentation speak for themselves, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

259.     Eolas denies the allegations in paragraph 259 of eBay's Answer and Counterclaims.

260.     Eolas admits that an information disclosure statement was submitted to the Patent Office on or about December 30, 2003.  The publicly available information disclosure statement speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

261.     Eolas admits that an information disclosure statement was submitted to the Patent Office on or about December 30, 2003.  The publicly available information disclosure statement speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

262.     Eolas admits that an information disclosure statement was submitted to the Patent Office on or about December 30, 2003.  The publicly available information disclosure statement speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

263.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 263 of eBay's Answer and Counterclaims and, on that basis, denies them.

264.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 264 of eBay's Answer and Counterclaims and, on that basis, denies them.

265.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 265 of eBay's Answer and Counterclaims and, on that basis, denies them.

266.    Paragraph 266 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial.  To the extent any response is warranted, Eolas responds as follows: denied.

267.    Eolas denies the allegations in paragraph 267 of eBay's Answer and Counterclaims.

268.    The prosecution history for the reexamination of the '906 patent is publicly available.  The prosecution history speaks for itself, and thus no further response is required.  To the extent a response is required, Eolas answers as follows: denied.

269.    Eolas admits that a publicly available opinion issued by the Federal Circuit Court of Appeals cited as 399 F.3d 1325, 1335 (Fed. Cir. 2005) contains the following statement:

> The district court also erred in its granting JMOL on obviousness. Dr. Kelly's testimony provided sufficient evidence to survive JMOL. In his testimony, Dr. Kelly discussed: (1) the scope of DX34 and DX37; (2) the potential differences between DX34 and DX3 7 and the claimed invention; and (3) the state of the art and the level of skill in the art in 1993. Dr. Kelly's testimony could also be read to provide a suggestion to use a

> browser in a distributed hypermedia environment as in the claimed invention. Although Microsoft's direct examination of Dr. Kelly focused on anticipation, the information solicited from Dr. Kelly might also support an argument of obviousness in the alternative. In light of this court's determination that DX34 was not abandoned or concealed, Microsoft should also have the opportunity to present DX34 as part of its obviousness defense. *See Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987) (indicating that a key preliminary legal inquiry in obviousness analysis is: "what is the prior art?"). Weighing the facts in favor of the non-moving party, as required by Rule 50, a reasonable jury should have the opportunity to determine whether the claimed invention would have been obvious at the time of invention based on the record.

The opinion speaks for itself , and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

270. The prosecution history for the '906 patent is publicly available. The prosecution history speaks for itself, and thus no further response is required. To the extent a response is required, Eolas answers as follows: denied.

271. Eolas admits that an examiner issued a statement for reasons of patentability on or about September 27, 2005 and that the statement for reasons of patentability confirmed the patentability of claims 1-10 of the '906 patent. Except as so admitted, Eolas denies the allegations in paragraph 271 of eBay's Answer and Counterclaims.

272. Eolas admits that an examiner issued a statement for reasons of patentability on or about September 27, 2005. The publicly available statement for reasons of patentability speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

273.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 273 of eBay's Answer and Counterclaims and, on that basis, denies them.

274.     Eolas admits that the examiner issued a statement for reasons of patentability. Eolas admits that the statement includes but is not limited to the following statement: "The Examiner used the "dtSearch" program to index and text search all DX7 files that contained textual content. See http://www.dtsearch.com/".   Except as so admitted, Eolas denies the allegations in paragraph 274 of eBay's Answer and Counterclaims.

275.     Paragraph 275 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial.  To the extent any response is warranted, Eolas responds as follows: denied.

276.     Eolas denies the allegation that "Doyle knew precisely what to look for, but he never told the examiner."  Eolas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 276 of eBay's Answer and Counterclaims and, on that basis, denies them.

277.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 277 of eBay's Answer and Counterclaims and, on that basis, denies them.

278.     Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 278 of eBay's Answer and Counterclaims and, on that basis, denies them.

279.     Eolas admits that an examiner issued a statement for reasons of patentability.  The publicly available statement of reasons of patentability speaks for itself, and thus no further

response is required. To the extent a further response is required, Eolas answers as follows: denied.

280. Eolas denies that the examiner "thus erroneously confirmed the patentability of the asserted claims of the '906 patent." Eolas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 280 of eBay's Answer and Counterclaims that and, on that basis, denies them.

281. Eolas admits that the examiner issued a statement for reasons of patentability and that the statement for reasons of patentability contains but is not limited to the following statement:

> The Viola system uses "C-like" Viola scripts that must be INTERPRETED by the browser and then TRANSLATED or CONVERTED into binary native executable machine code that can be understood by the CPU. Alternately, the Viola script is precompiled into intermediate byte-code form and the byte-code is interpreted (i.e., translated) into binary native executable machine code at runtime. This extra step of translation results in an unavoidable performance penalty, as interpreted applications run much slower than compiled native binary executable applications.
>
> Accordingly, the "C-like" Viola scripts (or corresponding bytecode representations) are not "executable applications" From the perspective of the CPU, which is the only perspective that really matters at runtime. A conventional CPU is only capable of processing binary machine language instructions from its own native instruction set.

Except as so admitted, Eolas denies the allegations in paragraph 281 of eBay's Answer and Counterclaims.

282. Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 282 of eBay's Answer and Counterclaims and, on that basis, denies them.

283. Eolas denies the allegations in paragraph 283 of eBay's Answer and Counterclaims.

284. Eolas denies the allegations in paragraph 284 of eBay's Answer and Counterclaims.

285. Eolas denies the allegations in paragraph 285 of eBay's Answer and Counterclaims.

286. Eolas denies the allegations in paragraph 286 of eBay's Answer and Counterclaims.

287. Eolas admits the allegations in paragraph 287 of eBay's Answer and Counterclaims.

288. Eolas admits the allegations in paragraph 288 of eBay's Answer and Counterclaims.

289. Eolas admits that Doyle has had and has a financial interest in Eolas. Except as so admitted, Eolas denies the allegations in paragraph 289 of eBay's Answer and Counterclaims.

290. Eolas denies the allegations in paragraph 290 of eBay's Answer and Counterclaims.

291. Eolas admits that Doyle was involved in some aspects of the 2005 re-examination of the '906 patent. Eolas denies the remaining allegations in paragraph 291 of eBay's Answer and Counterclaims.

292. Eolas admits that Doyle participated in an examiner interview on or about September 6, 2007. The publicly available interview summaries speak for themselves, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

293. Eolas admits that a declaration was submitted to the Patent Office on or about October 1, 2007 and that Doyle signed the declaration. The publicly available declaration speaks for itself, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

294. Eolas admits that an examiner interview occurred on or about May 9, 2008. The publicly available interview summaries speak for themselves, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

295. Eolas admits that an examiner interview took place on or about June 3, 2008. The publicly available interview summaries speak for themselves, and thus no further response is required. To the extent a further response is required, Eolas answers as follows: denied.

296. Eolas denies the allegations in paragraph 296 of eBay's Answer and Counterclaims.

297. Eolas denies the allegations in paragraph 297 of eBay's Answer and Counterclaims.

298. Eolas admits that an information disclosure statement was submitted to the Patent Office on or about August 21, 2006. Eolas admits that the publicly available information disclosure statement includes but is not limited to the following reference as quoted: "Pei Wei, "A Brief Overview of the VIOLA Engine, and its applications"". Eolas lacks information regarding the accuracy of the document, the purported date on the document, the identity of the author, the authenticity of the document, and etc. Except as so admitted, Eolas denies the allegations in paragraph 298 of eBay's Answer and Counterclaims.

299. Eolas denies the allegations in paragraph 299 of eBay's Answer and Counterclaims.

300.     Eolas denies the allegations in paragraph 300 of eBay's Answer and Counterclaims.

301.     Eolas admits that the Patent Office issued an office action on or about July 30, 2007.  The publicly available office action speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

302.     Eolas admits that the Patent Office issued an office action on July 30, 2007.  The publicly available office action speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

303.     Eolas denies the allegations in paragraph 303 of eBay's Answer and Counterclaims.

304.     Eolas admits that the Patent Office issued an office action on April 18, 2008 which includes the following statements:

> 4. The Patent Owner submitted arguments on 10/1/07 and submitted a Declaration under 37 CFR 1.131, which establishes the invention prior to August 16, 1994, being the date utilized as the publication date of the Viola reference noted above.
>
> 5. With this, the Declaration filed on 10/1/07 under 37 CFR 1.131 is sufficient to overcome the Viola reference utilized in the rejection noted in the Office action dated 7/30/07. The examiner notes that the Viola reference lists on the first page, titled "The Viola Home Page" (being TT 05441), that "Vintage Viola screendumps" are included from "applications of the old viola (1991)". However, the examiner cannot find any other documents in the record that disclose the specific teachings of the Viola browser, as described in the previous Office action dated 7/40/07, that establish a date prior to August 16, 1994. Therefore, the rejection of claims 1-10, as indicated in the previous Office action under 35 U.S.C. 102(e), as being anticipated by Viola, has been withdrawn.

Except as so admitted, Eolas denies the allegations in paragraph 304 of eBay's Answer and Counterclaims.

305.    Eolas admits that the Patent Office issued an office action on April 18, 2008.  The publicly available office action speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

306.    Eolas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 306 of eBay's Answer and Counterclaims and, on that basis, denies them.

307.    Eolas denies the allegations in paragraph 307 of eBay's Answer and Counterclaims.

308.    Eolas denies the allegations in paragraph 308 of eBay's Answer and Counterclaims.

309.    Eolas denies the allegations in paragraph 309 of eBay's Answer and Counterclaims.

310.    Eolas admits that a declaration was submitted to the Patent Office on or about June 2, 1997.  Eolas admits that the declaration was executed on or about May 27, 1997.  The publicly available declaration speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

311.    Eolas admits that a declaration was signed by Doyle.  Eolas admits that the declaration includes but is not limited to the following statement as quoted:  "Further, in my opinion secondary considerations, including, in part, commercial success of products incorporating features of the claimed invention and industry recognition of the innovative nature of these products, demonstrate that the claimed invention is not obvious over the cited references."  Except as so admitted, Eolas denies the allegations in paragraph 311 of eBay's Answer and Counterclaims.

312.     Eolas admits that a declaration was signed by Doyle. Eolas admits that the declaration includes but is not limited to the following:

> The three exemplary products which incorporate the features of the claimed invention include Netscape Navigator 2.0 (or newer versions), Java, from Sun Microsystems, and ActiveX, from Microsoft. One need only open the pages of any major business publication to see that these three products have been tremendously successful in the marketplace. Appendix A of this declaration presents a collection of excerpts from prestigious Industry publications which support the contention that the success of these products is directly attributable to the claimed features of the invention.

> Approximately 12 to 18 months after the applicants initially demonstrated the first Web plug-in and applet technology to the founders of Netscape and engineers employed by Sun Microsystems in November and December of 1993, as described in reference #4 from Appendix A (Dr. Dobb's Journal, 2/96), both Netscape and Sun released software products that incorporated features of the claimed invention, **including an embed text format that is parsed by a Web browser to automatically invoke an external executable application to execute on the client workstation in order to display an external object and enable interactive processing of that object within a display window created at the embed text format's location within the hypermedia document being displayed in the browser-controlled window.** Sun released the Java applet programming environment and the HotJava applet-capable Web browser in May of 1995, and Netscape release [sic] version 2.0 of their Navigator Web browser, which incorporated both Java technology and a plug-in API, in October of 1995.

Except as so admitted, Eolas denies the allegations in paragraph 312 of eBay's Answer and Counterclaims.

313.     Eolas denies the allegations in paragraph 313 of eBay's Answer and Counterclaims.

314.     Eolas denies the allegations in paragraph 314 of eBay's Answer and Counterclaims.

315. Eolas denies the allegations in paragraph 315 of eBay's Answer and Counterclaims.

316. Eolas denies the allegations in paragraph 316 of eBay's Answer and Counterclaims.

317. Eolas denies the allegations in paragraph 317 of eBay's Answer and Counterclaims.

318. Eolas denies the allegations in paragraph 318 of eBay's Answer and Counterclaims.

319. Eolas denies the allegations in paragraph 319 of eBay's Answer and Counterclaims.

320. Eolas denies the allegations in paragraph 320 of eBay's Answer and Counterclaims.

321. Eolas denies the allegations in paragraph 321 of eBay's Answer and Counterclaims.

322. Eolas denies the allegations in paragraph 322 of eBay's Answer and Counterclaims.

323. Eolas admits the allegations in paragraph 323 of eBay's Answer and Counterclaims.

324. Eolas admits that the Patent Office issued an office action on or about July 20, 2004 and that the Patent Office issued a reexamination certificate of the '906 patent on June 6, 2006. The office action and the reexamination certificate speak for themselves. Except as so admitted, Eolas denies the allegations in paragraph 324 of eBay's Answer and Counterclaims.

325.    Eolas admits that a response was submitted to the Patent Office on or about March 11, 2005.  The publicly available response speaks for itself, and thus no further response is required.  To the extent a further response is required, Eolas answers as follows: denied.

## V.  LACHES

326.    Paragraph 326 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial.  To the extent any response is warranted, Eolas responds as follows: denied.

327.    Eolas denies the allegations in paragraph 327 of eBay's Answer and Counterclaims.

## VI.  STATUTE OF LIMITATIONS

328.    Eolas denies the allegations in paragraph 328 of eBay's Answer and Counterclaims.

## VII.  LICENSE

329.    Paragraph 329 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial.  To the extent any response is warranted, Eolas responds as follows: denied.

330.    Eolas denies the allegations in paragraph 330 of eBay's Answer and Counterclaims.

## VIII.  INTERVENING RIGHTS

331.    Paragraph 331of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial.  To the extent any response is warranted, Eolas responds as follows: denied.

332.     Eolas denies the allegations in paragraph 332 of eBay's Answer and Counterclaims.

## IX.  STANDING

333.     Paragraph 333 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial.  To the extent any response is warranted, Eolas responds as follows: denied.

334.     Eolas denies the allegations in paragraph 334 of eBay's Answer and Counterclaims.

## COUNTERCLAIMS

### The Parties

335.     On information and belief, based solely on paragraph 335 of eBay's Answer and Counterclaims as pleaded by eBay, eBay is a corporation organized under the laws of the State of Delaware and having a principal place of business at 2145 Hamilton Avenue, San Jose, California 95125.

336.     Eolas admits the allegations in Paragraph 336 of eBay's Answer and Counterclaims

### Jurisdiction

337.     Eolas admits that eBay's counterclaims arise under the Patent Laws of the United Sates, Title 35, United States Code.  Eolas admits that the jurisdiction of this Court is proper over these counterclaims.  Except as so admitted, Eolas denies the allegations in paragraph 337 of eBay's Answer and Counterclaims.

338.     Eolas admits that this Court has personal jurisdiction over it.  Except as so admitted, Eolas denies the allegations in paragraph 338 of eBay's Answers and Counterclaims.

339.     Eolas admits that venue is proper in this District, and in the Tyler Division. Except as so admitted, Eolas denies the allegations in paragraph 338 of eBay's Answer and Counterclaims.

## Count I

## Declaratory Judgment

340.     Paragraph 340 of eBay's Answer and Counterclaims does not contain a statement which warrants an affirmance or denial.  To the extent any response is warranted, Eolas responds as follows: denied.

341.     Eolas admits that eBay's counterclaims arise under the Patent Laws of the United Sates, Title 35, United States Code.  Eolas admits that the jurisdiction of this Court is proper over these counterclaims.  Except as so admitted, Eolas denies the allegations in paragraph 341 of eBay's Answer and Counterclaims.

342.     Eolas admits that Eolas filed its Complaint against eBay and other defendants on October 6, 2009 and that the Complaint as filed on October 6, 2009 contains the allegations recited.  Except as so admitted, Eolas denies the allegations in paragraph 342 of eBay's Answer and Counterclaims.

343.     Eolas admits that there is an actual and justiciable controversy between Eolas and eBay regarding the infringement of the '906 patent and the '985 patent.  Except as so admitted, Eolas denies the allegations in paragraph 343 of eBay's Answer and Counterclaims.

344.     Eolas denies the allegations in paragraph 344 of eBay's Answer and Counterclaims.

345.     Eolas denies the allegations in paragraph 345 of eBay's Answer and Counterclaims.

346. Eolas denies the allegations in paragraph 346 of eBay's Answer and Counterclaims, and incorporates its responses to paragraphs 64-325 of eBay's Answer and Counterclaims here, by reference.

347. Eolas denies the allegations in paragraph 347 of eBay's Answer and Counterclaims.

348. Eolas denies the allegations in paragraph 348 of eBay's Answer and Counterclaims.

## EBAY'S REQUESTED RELIEF

Eolas denies that eBay is entitled to the relief requested in paragraphs A-F of its Answer and Counterclaims or any other relief on its Counterclaims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eolas Technologies Incorporated, prays for the following relief against Defendant eBay, Inc.:

A. that all relief requested by Eolas in its Complaint be granted;

B. that all relief requested by eBay in its Answer and Counterclaims to Plaintiff's Complaint be denied and that eBay take nothing by way of its Counterclaims;

C. that eBay be ordered to pay the costs of this action (including all disbursements) and attorney fees as provided by 35 U.S.C. § 285 and all other applicable statutes, rules, and common law; and

D. such other and further relief as the Court deems just and equitable.

## AFFIRMATIVE DEFENSES

As affirmative defenses, Eolas alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

eBay has failed to state a claim upon which relief can be granted, with respect to each cause of action set forth in its Answer and Counterclaims.

## SECOND AFFIRMATIVE DEFENSE

eBay has failed to state facts and/or a legal basis sufficient to permit recovery of its attorneys' fees and/or expenses for defending this suit.

## OTHER AFFIRMATIVE DEFENSES

Eolas hereby gives notice that it intends to rely upon any other defense that may become available in this case and hereby reserves the right to amend this Answer to assert any such defense.

## DEMAND FOR JURY TRIAL

Eolas demands a trial by jury of any and all issues triable of right before a jury.

DATED:  January 11, 2010.             Respectfully submitted,

**MCKOOL SMITH, P.C.**
/s/  Mike McKool
Mike McKool
Lead Attorney
Texas State Bar No. 13732100
mmckool@mckoolsmith.com
Douglas Cawley
Texas State Bar No. 04035500
dcawley@mckoolsmith.com
Luke McLeroy
Texas State Bar No. 24041455
lmcleroy@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Sam F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
**McKool Smith, P.C.**
104 E. Houston St., Ste. 300
P.O. Box O
Marshall, Texas 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9095

Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Steven J. Pollinger
Texas State Bar No. 24011919
spollinger@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744
**ATTORNEYS FOR PLAINTIFF
EOLAS TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic services on this the 11th day of January, 2010.  Local Rule CV-5(a)(3)(A).

/s/ Josh Budwin
Josh Budwin