# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **Eolas Technologies Incorporated,** | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:09-CV-00446-LED |
| | § | |
| vs. | § | |
| | § | |
| **Adobe Systems Inc., Amazon.com, Inc.,** | § | **JURY TRIAL** |
| **Apple Inc., Argosy Publishing, Inc.,** | § | |
| **Blockbuster Inc., CDW Corp.,** | § | |
| **Citigroup Inc., eBay Inc., Frito-Lay, Inc.,** | § | |
| **The Go Daddy Group, Inc., Google Inc.,** | § | |
| **J.C. Penney Company, Inc., JPMorgan** | § | |
| **Chase & Co., New Frontier Media, Inc.,** | § | |
| **Office Depot, Inc., Perot Systems Corp.,** | § | |
| **Playboy Enterprises International, Inc.,** | § | |
| **Rent-A-Center, Inc., Staples, Inc., Sun** | § | |
| **Microsystems Inc., Texas Instruments Inc.,** | § | |
| **Yahoo! Inc., and YouTube, LLC** | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF EOLAS' MOTION TO RECONSIDER
CONSTRUCTION OF "EXECUTABLE APPLICATION" IN
MEMORANDUM OPINION AND ORDER (DKT. NO. 914) OR, IN THE
<u>ALTERNATIVE, TO CERTIFY THE QUESTION FOR INTERLOCUTORY APPEAL</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................3

    A. The Court's Construction of "Executable Application" Is in Direct Conflict With the Federal Circuit's Construction of the Same Term. ..................................................................................................3

    B. *Stare Decisis* Compels The Court to Follow the Federal Circuit's Construction of "Executable Application." ............................................5

    C. The Court's Construction of "Executable Application" Is Otherwise in Error..................................................................................................8

        1. The Court's "compiled program" and "native machine code" limitations are neither drawn from the specification nor the subject of any prosecution-history disclaimer.......................................................................................8

        2. The '906 patent claims make clear that "executable application" is necessarily broader than "controllable application"—a term that, the Court notes, covers interpretable codes. ..............................................................9

        3. The dictionary definition cited by the Court confirms that "executable application" covers interpretable codes. ..................................................................10

    D. In the alternative, the Court Should Certify the Question of Stare Decisis for Interlocutory Appeal Under 28 U.S.C. § 1292(b)..................................................................................................................11

III. CONCLUSION...................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ahrenholz v. Board of Trustees of Univ. of Illinois*,
219 F.3d 674 (7th Cir. 2000) ...............................................................................................11

*Amgen, Inc. v. F. Hoffmann-LaRoche Ltd.*,
494 F. Supp. 2d 54 (D. Mass. 2007) ......................................................................................6

*Brady Constr. Innovations, Inc. v. Perfect Wall, Inc.*,
290 Fed. Appx. 358 (Fed. Cir. 2008) (unpublished)..............................................................8

*Cybor Corp. v. Fas Techs.*,
138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) ......................................................................6, 7, 8

*DuPree v. Kaye*,
2008 U.S. Dist. LEXIS 7993 (N.D. Tex. Feb. 4, 2008)........................................................12

*Eolas Techs. Inc. v. Microsoft Corp.*,
399 F.3d 1325 (Fed. Cir. 2005).................................................................................... passim

*Eolas Techs. Inc. v. Microsoft Corp.*,
No. 99-CV-0626, 2000 U.S. Dist. LEXIS 18886 (N.D. Ill. Dec. 29, 2000) ................3, 4, 7, 9

*Key Pharm. v. Hercon Labs. Corp.*,
161 F.3d 709 (Fed. Cir. 1998)................................................................................................6

*Markman v. Westview Instr.*,
517 U.S. 370 (1996)............................................................................................................6, 8

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) ............................................................................................11

*McNamara v. Bre-X Minerals Ltd.*,
68 F. Supp. 2d 759-61 (E.D. Tex. 1999)................................................................................3

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*,
260 F.3d 1365 (Fed. Cir. 2001)..............................................................................................5

*Newell Cos. v. Kenney Mfg. Co.*,
864 F.2d 757 (Fed. Cir. 1988)................................................................................................5

*Pass & Seymour, Inc. v. Hubbell Inc.*,
No. 5:07-CV-945, 2011 U.S. Dist. LEXIS 1135 (N.D.N.Y Jan. 5, 2011)..............................6

*Phonometrics, Inc. v. Economy Inns of Am.*,
    349 F.3d 1356 (Fed. Cir. 2003) ........................................................................................ 5, 7

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003) ........................................................................................ 5, 7

*Rambus Inc. v. Hynix Semiconductor, Inc.*,
    569 F. Supp. 2d 946 (N.D. Cal. 2008) ............................................................................. 6, 7

*Shire LLC v. Sandoz, Inc.*,
    345 Fed. Appx. 535, 2009 U.S. App. LEXIS 3333 (Fed. Cir. 2009) ................................... 12

*Software Rights Archive, LLC v. Google Inc.*,
    No. 2:07-CV-511, 2009 U.S. Dist. LEXIS 53356 (E.D. Tex. 2009) ............................. 11, 12

*Zenith Radio Corp. v. United States*,
    783 F.2d 184 (Fed. Cir. 1986) .............................................................................................. 6

**STATUTES**

28 U.S.C. § 1292(b) ............................................................................................... 2, 10, 11, 13

28 U.S.C. § 1292(c)(1) ..................................................................................................... 12

I.    INTRODUCTION

Plaintiff Eolas Technologies Inc. ("Eolas") files this motion respectfully requesting that the Court reconsider its construction of the term "executable application" in the Memorandum Opinion and Order signed on August 22, 2011, Dkt. No. 914 (the "Order"), or, in the alternative, to certify the question for interlocutory appeal.

The Federal Circuit construed this term to mean "**any computer program code**, that is not the operating system or a utility, that is launched to enable an end user to directly interact with data." In its Order, this Court construes the same term to mean "**a compiled program that is in native machine code** in a format that can be loaded into memory and run." These two constructions are in direct conflict: they are mutually exclusive and cannot both be right. Consider interpretable codes as a highly relevant example. The Federal Circuit's construction plainly includes such codes; this Court's construction plainly excludes them. And this conflict is explicit. The earlier district court opinion—affirmed by the Federal Circuit—found that the file history broadly defined "executable application" to include interpretable codes, and that this broad definition confirmed Eolas' reading of the term. This Court finds, in contrast, that the term and its file history exclude interpretable codes. To remedy this direct conflict with controlling authority, the Court should reconsider its construction of the term "executable application."

Furthermore, principles of *stare decisis*—and the recognized need for national uniformity and finality in matters of claim construction—require the straightforward adoption in this Court of the construction already affirmed by the Federal Circuit. In its Order, the Court rejected the application of *stare decisis* on the ground that Microsoft's arguments in the prior case focused on a proposed "standalone program" limitation, rather than a "compiled program" limitation. The law is clear, however, that *stare decisis* does not attach to the arguments made in a prior case; instead it attaches to the legal issue decided there. And the legal issue decided by the Federal

1

Circuit was "the proper definition of the term ['executable application']." Furthermore, Microsoft was not the only party offering arguments in the prior case. While Microsoft argued that the term was limited to standalone program code, Eolas argued that the term was not at all limited in this way—that it broadly covered any kind of program code (including interpretable code). And of course Eolas' argument ultimately carried the day. In short, the Federal Circuit did not merely reject Microsoft's position; it also explicitly affirmed, following the district court, Eolas' position that the term broadly covered "any computer program code" meeting the other limitations. *Stare decisis* binds this Court to follow that controlling legal decision.

As further support for its motion to reconsider, Eolas briefly offers a few merits-based points for the Court's consideration: 1) the "compiled program" and "machine code" limitations are neither drawn from the specification nor the subject of any disclaimer; 2) "executable application" is necessarily broader than "controllable application"—a term that, the Court notes, covers interpretable codes; and 3) the dictionary definition cited by the Court confirms that "executable application" covers interpretable codes.

Alternatively, certification for interlocutory appeal is appropriate in this case, where the Court's claim construction Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the Order may materially advance the ultimate termination of the litigation. Here, whether this Court is bound by *stare decisis* to apply the construction adopted by the Illinois district court and affirmed by the Federal Circuit is such a controlling question of law that should be decided on interlocutory appeal under 28 U.S.C. § 1292(b).

For all of these reasons, Eolas respectfully requests that the Court reconsider its construction of "executable application," and adopt the construction affirmed by the Federal

Circuit as the proper definition of that term or, in the alternative, certify the Memorandum Opinion and Order construing the claim terms for interlocutory appeal of the *stare decisis* issue.

## II. ARGUMENT

### A. The Court's Construction of "Executable Application" Is in Direct Conflict With the Federal Circuit's Construction of the Same Term.

Although reconsideration is permitted only in "narrow situations," this Court has recognized that one such situation is "to correct manifest errors of law." *McNamara v. Bre-X Minerals Ltd.*, 68 F. Supp. 2d 759-61 (E.D. Tex. 1999). Respectfully, the Court's claim construction Order contains such a legal error. The Court should reconsider its construction of the term "executable application" because its holding that the term is limited to "**a compiled program that is in native machine code**" directly conflicts as a matter of law with the Federal Circuit's earlier holding that the term broadly covers "**any computer program code**" otherwise meeting the claimed limitations.

The meaning of the term "executable application" was hotly contested in the earlier litigation with Microsoft. Microsoft argued that the term excluded certain kinds of program code, while Eolas argued that the term included any kind of code that enabled interactive processing. *Eolas Techs. Inc. v. Microsoft Corp.*, No. 99-CV-0626, 2000 U.S. Dist. LEXIS 18886, at \*14 (N.D. Ill. Dec. 29, 2000). The district court found that, "[e]arly in the [file] history, the executable application is thus defined as any executable, **interpretable** or launchable program instructions or codes." *Id.* at \*29 (emphasis added). This "broad definition," the court concluded, "confirms Eolas's view of the executable application." *Id.* After scouring the record for any potential disavowal of this broad definition, the court held that the term "executable application" meant "**any computer program code**, that is not the operating system or a utility, that is launched to enable an end-user to directly interact with data." *Id.* at \*41 (emphasis added).

3

Microsoft appealed this holding to the Federal Circuit, which set for itself the task of construing "executable application." *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1336 (Fed. Cir. 2005). After carefully reviewing the specification, the file history, and the district court's opinion, the Federal Circuit held that "the district court correctly gleaned the proper definition of the term from the intrinsic evidence including the patent claims and the prosecution history." *Id.* at 1338. Now to be sure, much of the Federal Circuit's discussion was directed to refuting Microsoft's particular argument regarding "standalone programs." *Id.* at 1336-37. But in the end the Federal Circuit did not merely reject Microsoft's argument; it also explicitly affirmed Eolas' argument that the term "executable application" broadly covered "**any computer program code**" meeting the other limitations. *Id.* at 1336 (emphasis added); *see also Eolas*, 2000 U.S. Dist. LEXIS 18886, at *14, 29, 41. This was, in fact, the Federal Circuit's principal holding on the issue. *Eolas*, 399 F.3d at 1336, 1338.

But now this Court has held otherwise. According to the Court's construction of the same term found in the same claims, an "executable application" cannot consist of "**any computer program code**," but instead must be limited to "**a compiled program that is in native machine code**." Order at 11 (emphasis added). The Court's construction is thus in direct conflict with the Federal Circuit's construction of this term: the two are mutually exclusive and cannot both be right. Notably, this conflict explicitly extends to the status of interpretable codes. The district court in Illinois found that the file history broadly defined "executable application" to **include** "interpretable . . . codes," and the Federal Circuit affirmed that court's handling of "the intrinsic evidence including the patent claims and prosecution history." *See Eolas*, 2000 U.S. Dist. LEXIS 18886, at *29; *Eolas*, 399 F.3d at 1338. This Court, in contrast, has concluded that the claim term, along with its file history, **excludes** interpretable codes. Order at 7, 11.

4

This direct conflict raises a pressing question: what will happen when this case is on appeal, and the Federal Circuit is asked to construe the term "executable application" as used in the '906 patent? The panel will be faced with two principal alternatives: approve the construction of this Court, pursuant to which an "executable application" is limited to "**a compiled program that is in native machine code**," or approve the construction of the earlier Federal Circuit panel, pursuant to which an "executable application" can be "**any computer program code**." The choice should be clear, as "under principles of *stare decisis*," future Federal Circuit panels "will follow the claim construction set forth by" an earlier panel. *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1244 (Fed. Cir. 2003). The Federal Circuit has in fact "adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*." *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988). And that rule applies to the construction of claim terms. *See Phonometrics, Inc. v. Economy Inns of Am.*, 349 F.3d 1356, 1363-64 (Fed. Cir. 2003). In short, the panel asked to construe "executable application" in this case will be bound—under principles of *stare decisis*—to "follow the claim construction set forth by" the earlier panel. *See Westin Hotel*, 350 F.3d at 1244.

Eolas thus respectfully asks the Court to reconsider its conflicting conclusion that an "executable application" is limited to "a compiled program that is in native machine code," and adopt instead the holding of the earlier Federal Circuit panel, pursuant to which an "executable application" can be "any computer program code" meeting the other limitations. *See* Order at 11; *Eolas*, 399 F.3d at 1336; *Westin Hotel*, 350 F.3d at 1244.

    **B.**    ***Stare Decisis* Compels The Court to Follow the Federal Circuit's Construction of "Executable Application."**

*Stare decisis* looms large here. This simple but powerful doctrine "binds courts to follow their own earlier decisions or the decisions of a superior tribunal." *Nat'l Org. of Veterans'*

*Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1373 (Fed. Cir. 2001). In its seminal *Markman* decision, the Supreme Court held that claim construction should be subject to the doctrine—indeed, the Court cited the uniformity and finality promised by *stare decisis* as a compelling reason to treat claim construction as a legal question. *Markman v. Westview Instr.*, 517 U.S. 370, 390-91 (1996). Following *Markman*, the Federal Circuit "recognize[s] the national *stare decisis* effect that [its] decisions on claim construction have." *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998); *see also Cybor Corp. v. Fas Techs.*, 138 F.3d 1448, 1455 (Fed. Cir. 1998) (*en banc*) ("the Supreme Court endorsed this court's role in providing national uniformity to the construction of a patent claim"). The district courts also recognize the role of *stare decisis* in this context, confirming that "[w]here the Federal Circuit has already construed the claims [in dispute], then that higher Court's construction is binding, and [the district courts] cannot modify its holding." *Amgen, Inc. v. F. Hoffmann-LaRoche Ltd.*, 494 F. Supp. 2d 54, 60-61 (D. Mass. 2007); *see also Pass & Seymour, Inc. v. Hubbell Inc.*, No. 5:07-CV-945, 2011 U.S. Dist. LEXIS 1135, at *4 (N.D.N.Y Jan. 5, 2011) ("[D]istrict courts are bound to apply the Federal Circuit's claim constructions, even as against non-parties to the initial litigation."); *Rambus Inc. v. Hynix Semiconductor, Inc.*, 569 F. Supp. 2d 946, 963-64 (N.D. Cal. 2008) ("A district court must apply the Federal Circuit's claim construction even where a non-party to the initial litigation would like to present new arguments.").

As this extensive authority demonstrates, the doctrine of *stare decisis* does not depend on the particular arguments offered by the parties; instead it flows from the legal nature of the issue decided.[1] *See Rambus*, 569 F. Supp. 2d at 963-64; *see also*, *e.g.*, *Zenith Radio Corp. v. United*

---

[1] Consider, for example, the interpretation of a statute. If an initial panel held that a particular statutory provision covered "any computer program code," then *stare decisis* would preclude any subsequent holding—absent a ruling *en banc*—that this provision covered something other than

*States*, 783 F.2d 184, 187 & n.4 (Fed. Cir. 1986) (noting that the legal issues decided "are not necessarily limited to those briefed by the parties"). In the context of claim construction, the legal issue decided—the issue on which *Markman* requires national uniformity and finality—is "the construction of a patent claim." *Cybor*, 138 F.3d at 1455. The panel in *Eolas* decided that "the proper definition of the term ['executable application']" was "any computer program code, that is not the operating system or a utility, that is launched to enable an end user to directly interact with data." *Eolas*, 399 F.3d at 1336, 1338. Once that legal issue was decided, *stare decisis* took effect, and it now compels this Court—like any "future panels" of the Federal Circuit—to "follow the claim construction set forth." *Westin Hotel*, 350 F.3d at 1244. Even a sincere "belief that the construction of the limitation . . . is incorrect" provides no basis to relitigate the issue. *Economy Inns*, 349 F.3d at 1363-64.

In short, as demonstrated above, the Court should reconsider its construction of "executable application" because it directly conflicts with prior legal determinations that the term includes "interpretable . . . codes" and broadly covers "any computer program code." *See Eolas*, 2000 U.S. Dist. LEXIS 18886, at *29; *Eolas*, 399 F.3d at 1338. But the Court should also reconsider its construction for the simple reason that the Federal Circuit has already construed the term "executable application," and under principles of *stare decisis* and the Supreme Court's guidance in *Markman*, this Court's duty—no less than that of the panel ultimately reviewing this issue on appeal—is to follow the construction that the Federal Circuit has determined to be "the proper definition of the term." *See Eolas*, 399 F.3d at 1338; *Westin Hotel*, 350 F.3d at 1244. Any

---

"any computer program code." And this would be true even if a subsequent court believed that the initial panel would have reached a different conclusion had it been presented with a different argument. The analysis is no different with respect to claim construction. *See Cybor*, 138 F.3d at 1455; *Economy Inns*, 349 F.3d at 1363-64; *Rambus*, 569 F. Supp. 2d at 963-64.

other result robs the Federal Circuit's construction of the finality and uniformity that the Supreme Court intended it to have under *Markman*, 517 U.S. at 390-91.[2]

### C. The Court's Construction of "Executable Application" Is Otherwise in Error.

Eolas offers *stare decisis* and a direct conflict with the Federal Circuit's holding as the principal reasons to reconsider the construction of "executable application." But given the fact that much of the Court's discussion relating to this term was not drawn from the parties' arguments, Eolas also briefly offers a few merits-based points for the Court's consideration.

#### 1. The Court's "compiled program" and "native machine code" limitations are neither drawn from the specification nor the subject of any prosecution-history disclaimer.

As an initial matter, it is worth noting that the "compiled program" and "native machine code" limitations have no connection to either the claims or the specification. The Court's Order cites the '906 patent specification at columns 8:66-9:7 and 13:11-15 in relation to its discussion of a "CPU [that] fetches a machine code instruction . . . [that] must be in a binary form," but a review of those portions of the specification reveal no references to machine codes or binary forms. Column 8:66-9:7 discusses "a preferred embodiment"—but nowhere mentions any "machine code instruction . . . in a binary form." Even if it did, however, such a reference would be subject to the Federal Circuit's holding that, "absent a clear disclaimer . . . , the embodiments in the specification do not limit broader claim language." *Eolas*, 399 F.3d at 1336. And of course, as both this Court and the Federal Circuit agree, there was no disclaimer of any claim

---

[2] *Cf. Brady Constr. Innovations, Inc. v. Perfect Wall, Inc.*, 290 Fed. Appx. 358, 363 (Fed. Cir. 2008) (unpublished) ("Under the principles of *stare decisis* and the Supreme Court's guidance in *Markman*, this court follows the claim construction of prior panels absent exceptional circumstances."); *Cybor*, 138 F.3d at 1479 (Newman, J. and Mayer, C.J., providing additional views) ("The promise of uniformity and finality, flowing from decisions of national effect, is a failed promise if we are not bound by *stare decisis* in our own claim interpretation.").

scope with respect to the '906 patent. *See id.* at 1336-38; Order at 10. Column 13:11-15 in fact teaches away from the Court's construction, explaining that the invention covers "**any manner of application program**." In short, the "compiled program" and "native machine code" limitations appear nowhere in the claims or specification—and established principles of claim construction hold that it is error to import such extraneous limitations into the claims.

### 2. The '906 patent claims make clear that "executable application" is necessarily broader than "controllable application"—a term that, the Court notes, covers interpretable codes.

The Court's Order notes that, during prosecution of the '906 patent, the examiner understood the term "controllable application" to cover interpretable codes. Order at 8. The Court then suggests, however, that the patentee's "redirect[ed] focus" from the term "controllable application" to the term "executable application" permits the inference that "executable application" does not cover interpretable codes. *Id.* at 8-9. But that cannot be right. Independent claim 1 of the '906 patent recites an "executable application," and dependent claim 2 describes "[t]he method of claim 1, **wherein said executable application is a controllable application**." As a matter of legal and logical necessity, therefore, a "controllable application" **is a kind of** "executable application." That is, "executable application" is **necessarily broader than** "controllable application"—and because "controllable application" covers interpretable codes, so too must "executable application." And any other conclusion, as noted above, runs into direct conflict with the Illinois district court's holding on this point.[3] *See Eolas*, 2000 U.S. Dist.

---

[3] The Court's discussion of references to "*executable scripts*" in the file history further confirms that both the examiner and the patentee understood "scripts"—that is, interpretable codes—as being "executable." Order at 9. Moreover, the patentee's response to the Mercury/Hansen art characterizes the scripts at issue as "executing code embedded in the document." Dkt. No. 570 at 87-93 (File history, paper 5, p. 17).

9

LEXIS 18886, at *29-30 (rejecting Microsoft's argument that "executable application" was narrower than "controllable application").

### 3. The dictionary definition cited by the Court confirms that "executable application" covers interpretable codes.

As the Court acknowledges, the dictionary definition cited in its Order contemplates that the term "executable program" covers interpretable codes. Order at 9-10. The Court suggests, however, that the reference to interpretable codes is a "secondary" meaning that should be discounted in favor of the "primary" meaning relating to compiled programs in machine codes. *Id.* at 10. The definition cited, however, does not suggest that the term sometimes includes interpretable codes, and sometimes does not. To the contrary, it simply states that, "for interpreted languages," the term "can simply refer to source code in the proper format." *Id.* at 9. And for languages that are not interpreted—a more common scenario, hence, "usually"—the term "refers to a compiled program that has been translated into machine code." *Id.* In other words, the definition simply makes clear that, with respect to traditional program languages, the term "executable program" refers to a compiled program, but with respect to "interpreted languages," the term refers to "source code in the proper format." *Id.*

In any event, even if the definition's coverage of interpretable codes reflected only a "secondary" meaning, *id.* at 10, that should have been sufficient to preclude any construction contradicting that meaning. As Federal Circuit explained in the previous case, "because the term 'executable application' does not have a customary meaning in the computer science field," the Illinois district court appropriately declined to use dictionary definitions "to impose a sharp limitation on its scope." *Eolas*, 399 F.3d at 1336-37.

### D. In the alternative, the Court Should Certify the Question of *Stare Decisis* for Interlocutory Appeal Under 28 U.S.C. § 1292(b).

The Court's claim construction order presents a controlling question of law warranting immediate appeal: whether the Court is bound by *stare decisis* to apply the Federal Circuit's adoption in *Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1336 (Fed. Cir. 2005), of the construction of "executable application" to mean "any computer program code, that is not the operating system or a utility, that is launched to enable an end user to directly interact with data."

Certification for interlocutory appeal is appropriate when an "order involves a controlling question of law as to which there is substantial ground for difference of opinion and [] an immediate appeal from the order may materially advance the ultimate determination of the litigation." 28 U.S.C. § 1292(b). Certification is proper in circumstances involving a pure issue of law, *i.e.*, a question the appellate court can efficiently rule on without making an intensive inquiry into the record. *See Software Rights Archive, LLC v. Google Inc.*, No. 2:07-CV-511, 2009 U.S. Dist. LEXIS 53356, at *6 (E.D. Tex. 2009) (citing 9 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE 110.22[2] (2d ed. 1993)); *Ahrenholz v. Board of Trustees of Univ. of Illinois*, 219 F.3d 674, 676-77 (7th Cir. 2000) ("because it was an abstract issue of law, it was suitable for determination by an appellate court without a trial record"); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("To summarize, § 1292(b) appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts."). This is such a case. The Federal Circuit can decide the issue "quickly and clearly without having to study the record." *Ahrenholz*, 219 F.3d at 677. The Federal Circuit need not even consider the facts and analysis leading to the differing claim constructions. The

only issue is whether *stare decisis* requires the application of the claim construction of the Federal Circuit in *Eolas v. Microsoft*.

There is also a substantial ground for difference of opinion here. Courts have found substantial ground for difference of opinion where a trial court rules in a manner which appears contrary to the rulings of all courts of appeal which have reached the issue. *DuPree v. Kaye*, 2008 U.S. Dist. LEXIS 7993, at *7 (N.D. Tex. Feb. 4, 2008) (citing 24 Am. Jur. 2d Appellate Review § 123 (2007)); *see also Software Rights*, 2009 U.S. Dist. LEXIS 53356, at *11-12 (citing *DuPree*, 2008 U.S. Dist. LEXIS 7993). The Court's claim construction of "executable application" conflicts directly with the construction of the term by the Federal Circuit in *Eolas v. Microsoft*. Since the Federal Circuit is the only court of appeals that could consider the issue of patent claim construction, the Court's order here meets the "substantial ground for difference of opinion" criteria. Under similar circumstances, where a district court refused to give preclusive effect to a first district court's prior claim construction, the Federal Circuit granted a petition for permission to appeal under 28 U.S.C. § 1292(c)(1) (which gives the Federal Circuit exclusive jurisdiction of an appeal of a matter involving a patent). *See Shire LLC v. Sandoz, Inc.*, 345 Fed. Appx. 535, 2009 U.S. App. LEXIS 3333 at *1-2 (Fed. Cir. 2009) (case was settled after grant of the petition but before a ruling issued on appeal).

If this Court is bound by *stare decisis* to apply the meaning affirmed by the Federal Circuit, reversal of any final judgment in this case seems assured. As described in Section A above, the panel asked to review this Court's construction of "executable application" will be bound under principles of *stare decisis* to follow the claim construction of the *Eolas v. Microsoft* appeal. Thus, the present litigation will be materially advanced by an immediate appeal to address this controlling question of law. If the Federal Circuit disagrees with this Court's Order,

this Court's limited judicial resources will not be wasted on a trial (or possibly on multiple separate trials of the remaining defendants) based on an incorrect claim construction.

### III. CONCLUSION

For all of these reasons, Eolas respectfully requests that the Court reconsider its construction of "executable application," and adopt the construction affirmed by the Federal Circuit as the proper definition of that term. In the alternative, Eolas respectfully requests that the Court enter an order certifying its Memorandum Opinion and Order on claim construction for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: September 6, 2011.

**MCKOOL SMITH, P.C.**

/s/ Mike McKool
Mike McKool
Lead Attorney
Texas State Bar No. 13732100
mmckool@mckoolsmith.com
Douglas Cawley
Texas State Bar No. 04035500
dcawley@mckoolsmith.com
Holly Engelmann
Texas State Bar No. 24040865
hengelmann@mckoolsmith.com
J.R. Johnson
Texas State Bar No. 24070000
jjohnson@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044
Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Gretchen K. Curran
Texas State Bar No. 24055979
gcurran@mckoolsmith.com
Matthew B. Rappaport
Texas State Bar No. 24070472
mrappaport@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744
**ATTORNEYS FOR PLAINTIFF**
**EOLAS TECHNOLOGIES INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on September 6, 2011.  Per the Court's request, a true and correct copy of the above and foregoing document has also been delivered to Mr. Michael T. McLemore, the Technical Advisor in this case, via Federal Express.

　　　　　　　　　　　　　　　　　　 */s/ Josh Budwin*
　　　　　　　　　　　　　　　　　　　Josh Budwin

## CERTIFICATE OF CONFERENCE

On August 29, 2011, counsel for Eolas conferred with counsel for Defendants by telephone concerning the filing of the foregoing Motion.  Further discussion between the Parties occurred via email.  Defendants oppose the relief sought in the Motion.

　　　　　　　　　　　　　　　　　　 */s/ John B. Campbell*
　　　　　　　　　　　　　　　　　　　John B. Campbell