IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED,** | § § § § | |
| Plaintiff, | § § | **CASE NO. 6:09-CV-446** |
| vs. | § § | |
| **ADOBE SYSTEMS, INC., et al.,** | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Go Daddy's Motion for Summary Judgment of Noninfringement Based on Its License Defense (Docket No. 790); Defendants' Motion for Summary Judgment of Noninfringement Based on Microsoft/Apple License Defense (Docket No. 876); Defendant Adobe's Motion for Partial Summary Judgment of Noninfringement Based on Its License Defense (Docket No. 870); and Plaintiffs' Daubert Motion to Exclude Expert Testimony Construing the Microsoft and Apple Agreements (Docket No. 1149). After consideration of the parties' briefing and oral arguments, Go Daddy's and Defendants' motions for summary judgment are **GRANTED IN PART** and **DENIED IN PART**; Adobe's motion for summary judgment is **DENIED**; and Plaintiffs' motion to exclude is **GRANTED**.

## BACKGROUND

In August 2007, Microsoft Corporation ("Microsoft") and Eolas Technologies Incorporated ("Eolas") entered into a license agreement ("Microsoft License") to resolve a patent infringement dispute concerning U.S. Patent No. 5,838,906 ("the '906 patent"). The Microsoft License includes a covenant not to sue that protects Microsoft's "customers, developers, manufacturers, distributors, resellers, wholesalers, retailers, [and] end-users" against allegations

of infringement regarding the '906 patent and its progeny. All remaining defendants[1] ("Defendants") in the instant suit assert that protections afforded by the Microsoft License extend to their alleged infringement of the patents-in-suit, thus warranting a summary judgment ruling of noninfringement.

Apple Inc. ("Apple") was originally a party to the instant litigation; however, Eolas has since settled its claims against Apple. This settlement resulted in a license agreement between Eolas and Apple ("Apple License") with terms similar to those in the Microsoft License. Several defendants rely on the Apple License as part of their defense. The oral arguments and briefing focused on the Microsoft License, with the understanding that its interpretation and scope would also apply to the Apple License. Accordingly, the Court's analysis will focus on the Microsoft License.

Oracle Corporation ("Oracle") was also a defendant in the instant litigation and has since settled. This settlement resulted in a license agreement between Oracle and Eolas ("Oracle License"), which is relied on by Adobe Systems Inc. ("Adobe") as part of its defense. The terms of the Oracle License are considerably different from those in the Microsoft License and are addressed separately.

## APPLICABLE LAW

The Court renders summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

---

[1] The remaining defendants include: Adobe Systems, Inc.; Amazon.com, Inc.; CDW Corp.; Citigroup Inc.; Google Inc.; J.C. Penney Corporation, Inc.; Staples, Inc.; The Go Daddy Group, Inc; Yahoo! Inc.; and YouTube LLC.

Contract interpretation is a question of state law. *Tex. Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000). It is undisputed that Illinois law governs the Microsoft License. "In construing a contract, the primary objective is to give effect to the intention of the parties." *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). "A contract is not rendered ambiguous merely because the parties disagree on its meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153 (2004). "[W]hether a contract is ambiguous is a question of law." *Id.* at 154.

It is undisputed that Texas law governs the Oracle License. Under Texas law, "determining whether a contract is unambiguous and interpreting an unambiguous contract are questions of law." *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 490 (5th Cir. 2007) (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). In construing a contract the Court's goal is to give effect to the parties' intentions, and an unambiguous contract will be enforced as written. *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 480 (5th Cir. 2008); *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). "To achieve this objective, 'courts should examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless.'" *Amigo Broadcasting*, 521 F.3d at 480 (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)); *Seagull Energy E&P*, 207 S.W.3d at 345.

## ANALYSIS

### The Microsoft License

#### "In Connection With"

The parties' primary dispute regarding the Microsoft License centers around the scope of the covenant not to sue, particularly as it applies to method claims. The covenant not to sue reads:

3

> Notwithstanding any limitations expressed otherwise in this Agreement, Licensor covenants not to sue any of Licensee's or its Affiliates' customers, developers, manufacturers, distributors, resellers, wholesalers, retailers, or end-users of Licensee Products under the Licensed Patents for their making, using, selling, offering for sale, licensing, leasing, importing or otherwise disposing or distributing Licensee Products or practicing any method *in connection with* their making, using, selling, offering for sale, licensing, leasing, importing or otherwise disposing or distributing Licensee Products.

Microsoft License § 2.4 (emphasis added). The crux of the parties' disagreement regarding the scope of the covenant not to sue pertains to the language "in connection with."

Eolas reads the covenant to only protect against infringement where a Microsoft product serves as a necessary part of the infringement. Eolas posits that, in the context of method claims, the covenant protects an infringer when a Microsoft product is used to perform at least one step of the claimed method.

Defendants, on the other hand, argue that the covenant should be read broadly to encompass any alleged infringement that somehow involves or is related to the use of Microsoft products. Thus, under Defendants' interpretation, the covenant protects an infringer when an infringing method is related to the use of a Microsoft product. However, the relationship with the Microsoft product does not require that the product be used to satisfy a step of the claimed method.

A simple example helps illuminate the parties' proposed interpretations of the "in connection with" language. Eolas accuses several defendants of infringing "server-side" method claims, which involve the use of a network server that must communicate with a client workstation. *See* U.S. Patent No. 7,599,985 Claims 20 & 40. For some defendants ("Akamai Defendants"), Eolas identifies an Akamai server as the network server. Akamai servers provide caching and mirroring services for websites and do not use Microsoft products to perform their

functions.[2] However, the Akamai Defendants host their websites on servers running IIS, a Microsoft product for hosting websites. The IIS servers provide the content that the Akamai servers cache and mirror. Figure 1 illustrates the relationship between the IIS server, Akamai server, and client workstation.



**Figure 1**

Eolas contends that the communication between the Akamai server and client workstation constitutes infringement that is not protected by the covenant not to sue because a Microsoft product is not used to perform a step of the accused method. The Akamai Defendants argue that this is a protected scenario because the Akamai servers obtain their content from the IIS server; thus, the accused method is operating "in connection with" a Microsoft product.

The covenant not to sue specifically relates to infringement of Eolas's patents. The language of the covenant indicates that it is triggered when Microsoft products are used for infringing activities. The covenant contains two clauses that provide meaningful limitations regarding when the use of Microsoft products in infringing activities triggers the covenant. The first clause relates to infringement of apparatus claims: "Licensor covenants not to sue . . . customers . . . under the Licensed Patents for their making, using, selling, offering for sale, licensing, leasing, importing or otherwise disposing or distributing Licensee Products . . . ."

---

[2] This assertion regarding an Akamai server's use of Microsoft products is true to the extent that this issue has not been raised or contested.

Microsoft License § 2.4. The second clause relates to infringement of method-based claims: "Licensor covenants not to sue . . . customers . . . under the Licensed Patents for . . . practicing any method in connection with their making, using, selling, offering for sale, licensing, leasing, importing or otherwise disposing or distributing Licensee Products." *Id.*

This reading of the agreement gives meaning to both clauses within the context of the agreement. Defendants' proposed reading of "in connection with" introduces an ambiguity into the agreement because it is unclear what level of connection to the infringing activity is required before the covenant not to sue is triggered. Accordingly, Defendants' reading of the "in connection with" language is too broad and invites ambiguity into an otherwise clear license agreement. After considering the entire agreement and its context, the Court finds that the "in connection with" language requires that a Microsoft product be implicated in performing at least one step of a claimed method before the covenant is triggered.

*Testing Websites and Third-party Users*

Defendants argue that the covenant not to sue precludes Eolas's direct infringement allegations concerning employees who test Defendants' websites. Eolas responds that it is merely accusing employees of direct infringement for using non-Microsoft browsers to view Defendants' websites. Eolas further asserts that Defendants can test their website under the license so long as they use a Microsoft browser for that purpose.

Eolas's position fails to recognize that website testing is an important component of the process for hosting a website. As discussed above, the covenant not to sue protects Microsoft customers from allegations of infringement that directly implicate the use of a Microsoft product. Eolas has admitted that it would violate the covenant not to sue if Eolas alleged infringement against websites that were hosted via IIS. Here, several defendants have websites hosted via the Microsoft product IIS. An important step in hosting a successful website is ensuring that the site

works properly across all popular web browsers, including both Microsoft and non-Microsoft browsers. Eolas's expert recognized the importance of testing software and websites: "Testing is a critical part of the software development process. . . . This is also true of web pages coded using HTML. The need for testing before publishing a web page is essentially the same as the need for testing before releasing a traditional computer program such as a spreadsheet . . . . Docket No. 790 Attach. 8, at 60. Thus, hosting a website necessarily encompasses testing that the website is viewable with common web browsers. Accordingly, website testers are licensed Microsoft customers so long as the website is hosted via a Microsoft product such as IIS.

Defendants also argue that hosting a website encompasses the ability for users to browse that website. In essence, Defendants argue that these users, by browsing a website hosted via IIS, are Microsoft customers. Alternatively, Defendants argue that a license to host a website via IIS necessarily implies a license for users to view that website with infringing technology. These arguments broaden the license and covenant not to sue beyond their intended bounds. Unlike testing, which was an integral part of the website hosting process, having users browse your site, while often desirable, is not an integral part of *hosting* that website.

In conclusion, the license and covenant not to sue in the Microsoft License precludes Eolas from alleging infringement against employees who are testing Defendants' websites hosted by Microsoft web server software. In essence, if Eolas is unable to allege claims directly against a defendant for their website hosting, they cannot allege claims against employees for testing that website. However, this protection does not extend to third-party users that are viewing such websites. Accordingly, Defendant Go Daddy's Motion for Summary Judgment of Noninfringement Based on Its License Defense (Docket No. 790) and Defendants' Motion for

Summary Judgment of Noninfringement Based on Microsoft/Apple License Defense (Docket No. 876) are **GRANTED IN PART** and **DENIED IN PART**.

*Plaintiff's Motion to Exclude*

Eolas has filed a motion to exclude expert testimony construing the Microsoft and Apple Licenses. This opinion has set forth guidance on how these licenses shall be interpreted. Expert testimony that contradicts the Court's interpretation of the Microsoft and Apple Licenses will not be permitted. Accordingly, Plaintiffs' Daubert Motion to Exclude Expert Testimony Construing the Microsoft and Apple Agreements (Docket No. 1149) is **GRANTED**.

*The Oracle License*

The Oracle License provides Oracle a right and license "under all claims of the Eolas Patents . . . [to] make, have made, import and use past, current and future Oracle Products." Oracle License § 5(a). Additionally, Oracle has a "right to sublicense distributors, resellers, OEMs other intermediaries and customers of Oracle Products solely to the extent necessary for the use, support and distribution of such Oracle Products (*it being understood that sublicensing rights shall not apply to Program Materials*) . . . ." *Id.* (emphasis added). Oracle products include "any past, current or future hardware, software or services sold, licensed or otherwise distributed by or for a Licensee, but excluding any products or portions thereof that are Program Materials." *Id.* § 1(h). Program Materials include software "that either constitute[s] hypermedia content or can be used to create, receive, display, or interact with hypermedia content from a distributed network environment" or "that can be used to generate, embed, serve or otherwise distribute hypermedia content." *Id.* § 1(b), (m), (n). Finally, the preamble of the Oracle License states:

> [Oracle] and Eolas have agreed to enter into this Agreement to provide a conditional license and covenant not to sue Licensee to insulate Licensee from suit by Eolas for infringement under the Eolas Patents . . . *while preserving the right and ability of Eolas to pursue claims for infringement of downstream*

8

> *acquires of Oracle products and services without such claims being limited, exhausted or otherwise affected by this Agreement . . . .*

*Id.* at 2 (emphasis added).

Adobe asserts the Oracle License as a defense to infringement because "Sun hardware has been used to respond to *every single client request* for the Products-at-issue during the damages period." Docket No. 870, at 1. Eolas responds that its infringement allegations against Adobe are based on Adobe's use of software that serves hypermedia content and for inducing others to infringe by displaying hypermedia content. *See* Docket No. 993, at 1. The Oracle License explicitly reserves a right for Eolas to accuse downstream users of Oracle products and services. Additionally, the sublicensing rights provided to Oracle for its customers do not extend to Program Materials, which include software for serving and displaying hypermedia content. Because Eolas's allegations of infringement against Adobe relate to the use of software for serving and displaying hypermedia content, the protection afforded by the Oracle License does not extend to Adobe's use of Oracle hardware for serving hypermedia content. Accordingly, Adobe's motion for summary judgment is **DENIED**.

## CONCLUSION

For the reasons stated herein, the Court **ORDERS** that Defendant Go Daddy's Motion for Summary Judgment of Noninfringement Based on Its License Defense (Docket No. 790) and Defendants' Motion for Summary Judgment of Noninfringement Based on Microsoft/Apple License Defense (Docket No. 876) are **GRANTED IN PART** and **DENEID IN PART**. The Court further **ORDERS** that Defendant Adobe's Motion for Partial Summary Judgment of Noninfringement Based on Its License Defense (Docket No. 870) is **DENIED**, and Plaintiffs' Daubert Motion to Exclude Expert Testimony Construing the Microsoft and Apple Agreements (Docket No. 1149) is **GRANTED**.

**So ORDERED and SIGNED this 25th day of January, 2012.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**