# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| Eolas Technologies Incorporated and The Regents of the University of California | § § § § | |
| Plaintiffs, | § § | Civil Action No. 6:09-CV-00446-LED |
| vs. | § § | |
| Adobe Systems Inc., Amazon.com, Inc., Apple Inc., CDW Corp., Citigroup Inc., The Go Daddy Group, Inc., Google Inc., J.C. Penney Company, Inc., Staples, Inc., Yahoo! Inc., and YouTube, LLC | § § § § § § | JURY TRIAL |
| Defendants. | § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' CLAIM CONSTRUCTION BRIEF REGARDING THE TERM "BROWSER APPLICATION"

Defendants' proposed construction of the term "browser application" ignores the Federal Circuit's understanding of the term "browser" as used in U.S. Patent No. 5,838,906 (the '906 patent)[1], contravenes the plain language of the '906 patent, nullifies the term by broadening it to encompass all computer applications, improperly relies on extrinsic evidence that predates the invention by many years, and ignores extrinsic evidence that is contemporaneous with the patent.[2] In light of the Federal Circuit's interpretation of the term, as well as the language and context of the patent, the Court should adopt Plaintiffs' proposed construction of "browser application": a client program that presents an interface and processes requests on behalf of a user to display, and traverse hyperlinks within, hypertext and/or hypermedia documents that are located on the World Wide Web.

### A. The Federal Circuit Understands That The Term "Browser Application" As Used By The '906 Patent Means "Web Browser"

In its reading of the '906 patent, the Federal Circuit recognized that: "the claimed invention allows a user to use a *web browser* in a fully interactive environment. For example, the invention enables a user to view news clips or play games across the Internet. The '906 claims require a *web browser* with certain properties." *Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1328 (Fed. Cir. 2005) (emphasis added). The court explained that "[i]n operation, the claimed *browser* locates a *web page*, or distributed hypermedia document, with a uniform resource locator (URL). Then the browser parses the text of the *web page*. . . ." *Id.* at 1328-29 (emphasis added). The Federal Circuit's opinion reflects the way in which one of ordinary skill

---

[1] Collectively the '906 patent and U.S. Patent No. 7,599,985 (the '985 patent) are referred to as the "patents-in-suit." Because the specifications of the two patents-in-suit are nearly identical and both use the term "browser application," this response focuses on the '906 patent.

[2] In a final attempt to bolster their asserted prior art, Defendants ask the Court to construe a previously undisputed term more than 14 months after the parties' Joint Claim Construction Statement, 11 months after the claim construction briefing, 5 months after the Court's claim construction ruling, and less than a week before trial. *See* Dkts. 479, 537, 569, 581, 914. Defendants have already unsuccessfully attempted to reopen claim construction under the guise of their *Daubert* motion based on a previously-rejected claim construction argument. Dkt. 1151.

in the art would understand the term "browser application" as used by the '906 patent.

### B. The Patent Specification Demonstrates Conclusively That A "Browser Application" Refers To A "Web Browser"

The term "browser application" must be construed in the context of the patents-in-suit. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) ("A fundamental rule of claim construction is that terms in a patent document are construed with the meaning with which they are presented in the patent document."). The language of the '906 patent specification, "the primary basis for construing the claims," reveals that the patent specification references the "browser application" exclusively—and only—in the context of the World Wide Web. *Id*. at 1315.[3] No other type of "browser application" is even mentioned in the specification.

To start, the "Background of the Invention" section of the specification extensively discusses the Internet and the World Wide Web. *See* '906 Patent, col.1. This establishes at the outset that the Internet and the World Wide Web are the platform for the operation of the invention claimed by the '906 patent. The specification again places the invention firmly within the context of the Internet and the World Wide Web in its discussion of Figure 1, stating that the "mechanism for specifying and locating a linked object such as hypermedia documents is an HTML 'element' that induces an object address in the format of a Uniform Resource Locator (URL)." *Id*. at 2:44-47. Next, the only two examples of a "browser application" provided in the '906 patent are Mosaic and Cello—both early web browsers. *Id*. at 2:9-13, 10:17-18.[4] Figure 2

---

[3] The intrinsic record demonstrates that Defendants' proposed construction would render language in the specification superfluous. *See Phillips*, 415 F.3d at 1316 ("claims must be construed so as to be consistent with the specification, of which they are a part"). For example, the specification states that "[m]any viewers exist that handle various file formats such as '.TIF,' '.GIF,' formats. When a browser program invokes a viewer program, the viewer is launched as a separate process." '906 Patent at 3:13-16. Under Defendants' construction of the term "browser application," these external "viewer" programs are also "browser applications"—these "viewers" are programs used to view electronic documents. The specification, however, makes clear that "browser" and "viewer" are, in fact, different types of applications. *Id*.

[4] *See* http://www.ncsa.illinois.edu/Projects/mosaic.html ("NCSA's Mosaic™ wasn't the first Web browser. But it was the first to make a major splash"); http://www.law.cornell.edu/lii.html ("Created the first law site on the Net and the first Windows-based *Web browser* (Cello)").

likewise makes plain that the "computer network" envisioned for the patent is the Internet and the World Wide Web. *Id*. at Fig.2; 3:60-4:59. And, perhaps most importantly, the meaning of the term "browser" can be isolated in the discussion of the shortcomings of "browsers" with respect to the World Wide Web and large data objects. *See id*. at 5:39-56. "Browser application" as used by the '906 patent must mean "web browser" because it is used in the context of criticizing the inability of existing "browsers" to process large data objects over the Internet and World Wide Web—one of the problems solved by the '906 invention.

The specification's description of a preferred embodiment likewise supports Plaintiffs' claim construction.[5] For example, the description of Figure 5 states that "in a preferred embodiment, network 206 is the internet and the network protocol layers are TCP/IP." *Id*. at 8:61-63. The specification also reiterates that "[b]rowser client is a process, such as [web browsers] NCSA Mosaic, Cello, etc." *Id*. at 10:17-18. With respect to Figure 7, "it is assumed that a hypermedia document has been obtained at a user's client computer and that a browser executing on the client computer displays the document and calls a first routine in the HTMLparse c file . . ." *Id*. at 14:12-16. But the browser would not be capable of executing in this manner, or parsing HTML files, if it were not a *web* browser. Similarly, Figures 9 and 10 demonstrate the preferred embodiment of the claimed inventions in the context of the Mosaic web browser. *Id*. at Fig.9 and 10; 16:11-23. Notably, the description of Figure 10 states: "the browser process, Mosaic [web browser], communicates with the Panel [part of the claimed "executable application"]. . . ." *Id*. at 16:29-31. Mosaic is undisputedly a web browser; this reference demonstrates that in the '906 patent the word "browser" implicitly includes the "web" modifier. "Browser application" as used by the '906 patent means "web browser."

Thus, while the specification does not expressly define "browser application," it

---

[5] *See SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001) (explaining that the written description of the preferred embodiments "can provide guidance as to the meaning of the claims, thereby dictating the manner in which the claims are to be construed, even if the guidance is not provided in explicit definitional format").

unambiguously demonstrates that the "browser application" required by the '906 patent is a "web browser" that operates on the World Wide Web. No other type of "browser application" is discussed (or even alluded to) within the specification of the '906 patent.

### C. Defendants' Construction Nullifies The "Browser Application" Limitation.

A court must give meaning to all of the words in a claim and may not read limitations out of a claim.[6] Defendants' proposed construction of the term "browser application" is overbroad and would, in effect, eliminate this term as a claim limitation altogether. Defendants ask the Court to construe the term "browser application" as "a program used to view or browse electronic documents." Dkt. 1301 at 1. Under this construction, virtually *any* software program would meet the Defendant's definition of "browser application"—almost all software programs on a computer are "programs" that are "used to view or browse electronic documents." For example, while the context of the '906 invention clearly is not desktop publishing, programs like Microsoft Word, PowerPoint, Notepad, etc. would all meet Defendants' "browser application" construction because each is "a program used to view or browse electronic documents." Defendants' construction makes the "browser application" term an impermissible non-limitation; the Court should therefore decline to construe the term as broadly as Defendants suggest.

### D. The Only Evidence Supporting Defendants' Overly Broad Construction Is Extrinsic Evidence That Pre-Dates The Filing Of The '906 Patent By Years.

Implicitly recognizing that the intrinsic record of the '906 patent does not support their proposed construction of "browser application," Defendants rely on extrinsic evidence that predates the 1994 filing of the '906 patent by years. Worse yet, in support of their argument that the term "browser" cannot mean "web browser," the extrinsic evidence Defendants cite was authored in the 1980s—well-before the filing of the '906 patent and prior to the advent of the

---

[6] *See Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 93 F.3d 1572, 1578 (Fed. Cir. 1996) (refusing to read a limitation so broadly that it would become "meaninglessly empty"); .*see also Nikken v. Robinsons-May, Inc.*, 51 F. App'x 874, 883-84 (Fed. Cir. 2002) ("[R]eading the limitation broadly to include any magnetic sheet . . . would render meaningless the 'attachable' limitation. We refuse to construe a claim term so broadly.").

World Wide Web. Defendants rely on this outdated extrinsic authority for two reasons: *first*, in any source authored in the pre-World Wide Web world it is impossible for the term "browser" to be defined as "web browser"; and *second*, the extrinsic evidence authored contemporaneously with the filing of the '906 and shortly thereafter defines "browser" to mean "web browser."

As to the first point, in evaluating extrinsic evidence for purposes of claim construction, the Federal Circuit requires that courts look to sources contemporaneous with the filing of the patent. "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313 (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 116 (Fed. Cir. 2004)). Accordingly, Defendants' 1980's era dictionary definitions—created years before the '906 patent was filed in October 1994—should be rejected.

And, as to the second point, since the advent of the World Wide Web in the early 1990's—the era in which the '906 patent was invented—the ordinary and customary meaning of the term "browser" is "web browser." A technical dictionary published during the World Wide Web age (unlike Defendants' sources) defines "browser" as "[a] program that enables the user to navigate the World Wide Web (WWW). . . . Synonymous with *Web browser*." Ex. A, Bryan Pfaffenberger, *Webster's New World Dictionary of Computer Terms* 68 (6th ed. 1997) (emphasis in original).[7] This contemporaneous authority thus demonstrates the propriety of Plaintiffs' proposed construction of "browser application." A "browser application" is a "web browser."

### E. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court reject Defendants' overbroad and improper construction of the term "browser application" and adopt Eolas' proposed construction.

---

[7] *See also* Ex. B, Microsoft Press, *Computer Dictionary* (3d ed. 1997) (cross references "browser" to "web browser"); Ex. C, Tim Berners-Lee, *Weaving the Web* 231 (1999) (defining "browser" as "A Web client that allows a human to read information on the Web.").

DATED: January 31, 2012

**MCKOOL SMITH, P.C.**
/s/ Mike McKool
Mike McKool
Lead Attorney
Texas State Bar No. 13732100
mmckool@mckoolsmith.com
Douglas Cawley
Texas State Bar No. 04035500
dcawley@mckoolsmith.com
Holly Engelmann
Texas State Bar No. 24040865
hengelmann@mckoolsmith.com
J.R. Johnson
Texas State Bar No. 24070000
jjohnson@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Josh W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Gretchen K. Curran
Texas State Bar No. 24055979
gcurran@mckoolsmith.com
Matthew B. Rappaport
Texas State Bar No. 24070472
mrappaport@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Robert M. Parker
Texas State Bar No. 15498000
rmparker@pbatyler.com
Robert Christopher Bunt
Texas Bar No. 00787165
rcbunt@pbatyler.com
Andrew T. Gorham
Texas State Bar No. 24012715
tgorham@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
(903) 531-3535
(903) 533-9687- Facsimile

**ATTORNEYS FOR PLAINTIFFS**

**EOLAS TECHNOLOGIES**
**INCORPORATED AND THE REGENTS**
**OF THE UNIVERSITY OF CALIFORNIA**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). This document was served on all counsel by email on January 31, 2012.

                                          /s/ Josh Budwin