IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EOLAS TECHNOLOGIES INCORPORATED and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | § § § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CASE NO. 6:09-CV-446 |
| ADOBE SYSTEMS, INC., AMAZON.COM INC., CDW CORPORATION, CITIGROUP INC., THE GO DADDY GROUP, INC., GOOGLE INC., J.C. PENNEY CORPORATION, INC., STAPLES, INC., YAHOO! INC., AND YOUTUBE, LLC, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion construes the term "browser application" in U.S. Patent Nos. 5,838,906 ("the '906 patent") and 7,599,985 ("the '985 patent"). The Court has already construed the disputed terms of the patents-in-suit. *See* Docket Nos. 914 & 989. The parties now, less than two weeks before trial, dispute the construction of the term "browser application."

## ANALYSIS

Defendants propose "a program used to [view or] browse electronic documents."[1] Plaintiffs propose "a client program that presents an interface and processes requests on behalf of a user to display, and traverse hyperlinks within, hypertext and/or hypermedia documents that are located on the World Wide Web."

---

[1] Defendants proposed this construction in their initial brief; their reply brief has withdrawn the bracketed terms from their proposed construction.

1

Defendants argue that the term "browser application" should not be limited to a *web* browser application. Defendants note that the specification uses many terms interchangeably to refer to the browser application, such as browser, browser program, browser software, browser client, and hypermedia browser. Defendants contend that the absence of "web browser" from this list of seemingly interchangeable terms precludes limiting the term browser application to a web browser. Defendants also argue that the claims support a broader construction of browser application than that proposed by Plaintiffs, noting that the claims are not limited "to the Web or the Internet, or even a wide-area network." Docket No. 1301, at 2. Their argument highlights that the specification's discussion of Figure 2 recognizes that "in practice Internet 100 may be replaced by any suitable computer network." '906 Patent col. 3:61–63.

Defendants also rely on the prosecution history and extrinsic evidence to support a broader construction of "browser application." Defendants note that Plaintiffs did not dispute the PTO's finding that BookManager READ, which is not a web browser, is considered a browser application by a person of skill in the art. Thus, Defendants argue, Plaintiffs have implicitly conceded that a browser application is necessarily broader than a web browser. Defendants also cite three articles published prior to the filing date for the patents-in-suit that recognize browsers that are not web browsers. Finally, Defendants note that one of the named inventors recognized that the patented invention "[is] not restricted to the web and HTML documents." Docket No. 1301, at 4 (quoting 7/21/2011 Ang Tr., at 293:5–20).

Plaintiffs respond that the term "browser application" should be limited to a web browser[2], first, because the Federal Circuit has recognized such a limitation when discussing the '906 patent. *See Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1328 (Fed. Cir. 2008)

---

[2] Plaintiffs' proposed construction is not "web browser"; however, their proposed construction describes the operation of a typical web browser.

("[T]he claimed invention allows a user to use a web browser in a fully interactive web environment."). Next, Plaintiffs argue that the specification supports a construction limiting browser application to the context of the World Wide Web. Plaintiffs note that the Background of the Invention "extensively discusses the Internet and the World Wide Web." Docket No. 1307, at 2 (citing '906 Patent col. 1). Plaintiffs further point out that the only two examples of a "browser application" in the specification are Mosaic and Cello, which are both web browsers. Plaintiffs also argue that the detailed discussion of the preferred embodiment, which is implemented by modifying Mosaic source code, supports limiting "browser application" to a web browser.

Plaintiffs also contend that Defendants' proposed construction is so broad that it nullifies the "browser application" limitation. Plaintiffs argue that such a broad construction would encompass applications such as "Microsoft Word, PowerPoint, [and] Notepad," which are clearly not within the context of the invention. Docket No. 1307, at 4. Finally, Plaintiffs argue that Defendants' extrinsic evidence from 1982, 1986, and 1990 should not be considered because it predates the 1994 filing date of the '906 patent by years.

Plaintiff's construction, which restricts the browser application to operating on documents located on the World Wide Web, is too narrow. However, Defendants' construction, which encompasses a broad spectrum of computer programs unrelated to the underlying invention, is too broad. What is clear upon reading the specification and claims of the patents-in-suit, is that a browser application is for displaying and responding to interaction with hypermedia documents. The Background of the Invention opens: "This invention relates generally to manipulating data in a computer network, and *specifically to retrieving, presenting and manipulating embedded program objects in distributed hypermedia systems*." '906 Patent col.

1:19–22 (emphasis added). The first paragraph of the Summary of the Invention firmly ties the invention to communicating in a "distributed hypermedia environment" and displaying and interacting with "hypermedia documents." *See id.* col 6:50–62.

As Defendants point out in their brief, many terms are used to refer to the browser application throughout the specification, such as browser, browser program, browser software, and hypermedia browser. "Program" and "software" are generally synonymous with "application" to one of skill in the art. The predominant limiting term used throughout the specification to refer to browser is "hypermedia." *See id.* col. 7:2, 7:14–15, 11:55, 12:6. Defendants note that the specification recites a "MetaMAP-capable client-based image browser application" when discussing applications of the invention. *See* '906 Patent col. 11:66–67. The MetaMAP browser is a narrow application of the invention, but it still relates to hypermedia processing. *See* Docket No. 1302 Attach 2 (Doyle Tr.) ("MetaMap browser was focused primarily on image-based data and links between hotpots and images. The -- it was a very special case kind of document.").

The claims themselves also support that the browser application is for displaying and managing interactions with hypermedia documents. Claim 1 recites a method step of "executing . . . a browser application, that *parses* a first distributed *hypermedia document* . . . ." '906 Patent col. 17:1–3 (emphases added). The next method step is "utilizing said browser to *display* . . . at least a portion of a first *hypermedia document* . . . ." *Id.* col. 17:6–8 (emphases added). Because the browser application is for displaying and managing interactions with hypermedia documents, Defendants' proposed construction, which encompasses any application that can browse electronic documents, is too broad.

4

Plaintiffs' construction, which is generally for a browser application that processes hypermedia documents, suffers from two flaws. First, Plaintiffs' proposed construction is a hyper-technical way of saying that the browser application displays and processes interactions with hypermedia documents. This construction may prove more confusing to a jury than helpful. Second, Plaintiff's construction is too narrow because it requires that the processed hypermedia documents be "located on the World Wide Web." In the preferred embodiment, the network is the Internet. *See id.* col. 8:61–63. However, the specification clarifies that "[o]ther networks and network protocols may be used." *Id.* col. 8:63–64. Thus, the browser application is not limited to processing hypermedia documents located on the World Wide Web.

Plaintiff's argument that the Federal Circuit's interpretation of "browser application" should control is also unconvincing. First, the construction of "browser application" was not before the *Eolas* court. Second, the commentary regarding browser application is dicta located in the background section of the opinion. *See Eolas*, 399 F.3d at 1328–29 (describing claimed invention of the '906 patent). Finally, the statements made by the *Eolas* court support a construction of "browser application" as being an application that processes hypermedia documents. *See id.* at 1328 ("Essentially, the claimed invention allows a user to use a web browser in a fully interactive environment. . . . Specifically, the invention calls for a browser located in a 'distributed hypermedia environment.'"); *id.* at 1328–29 ("In operation, the claimed browser locates a web page, *or distributed hypermedia document*, with a uniform resource locator (URL).") (emphasis added). The *Eolas* court recognized that the browser operated in a hypermedia environment and processed hypermedia documents.

The World Wide Web is a distributed hypermedia environment, and web browsers are browsers that display and respond to user interaction with hypermedia documents. However, the

5

specification and claims have not limited the browser application to operating only within the Internet or World Wide Web. The specification and claims limit the invention to operating in a slightly broader domain—a distributed hypermedia environment—and limit the browser to processing hypermedia documents. Accordingly, the Court construes the term "browser application" as "a client program that displays and responds to user interaction with hypermedia documents."

## CONCLUSION

For the reasons set forth above, the Court construes the term "browser application" as "a client program that displays and responds to user interaction with hypermedia documents."

**So ORDERED and SIGNED this 3rd day of February, 2012.**

          **LEONARD DAVIS**
          **UNITED STATES DISTRICT JUDGE**