# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| Eolas Technologies Incorporated and ) <br> The Regents Of The University Of California, ) <br> ) <br> *Plaintiffs and Counterdefendants*, ) <br> ) <br> vs. ) <br> ) <br> Adobe Systems Inc.; Amazon.com, Inc.; CDW Corp.; ) <br> Citigroup Inc.; The Go Daddy Group, Inc.; Google ) <br> Inc.; J.C. Penney Corporation, Inc.; Staples, Inc.; ) <br> Yahoo! Inc.; and YouTube, LLC, ) <br> ) <br> *Defendants and Counterclaimants*. ) | Civil Action No. 6:09-CV-446-LED <br><br> JURY TRIAL DEMANDED |

## OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO STRIKE DEFENDANTS' LATE-PRODUCED DOCUMENTS, VIDEO DEMONSTRATIONS, SOURCE CODE AND PREVIOUSLY UNIDENTIFIED PRIOR ART [DKT. 1317]

The parties in this case have not always seen eye-to-eye, and have, over the course of the case, sought the Court's rulings on their genuine, good faith disputes. This is not one of those disputes. In fact, Plaintiffs' Emergency Motion to Strike starts from a false premise and compounds it with false facts, a strategy plainly aimed at keeping compelling evidence and demonstrations of invalidity away from the jury. For instance, Plaintiffs allege that Defendants have produced new prior art and source code, Dkt. No. 1317 at 1, even after numerous representations from Defendants that their new productions are simply exhibit versions and trial demonstratives taken from source code and prior art, the overwhelming bulk of which was produced *well before* the fact discovery cutoff or public. In fact, Defendants produced their demonstrative videos *in advance* of the deadline for disclosing trial demonstratives precisely to address Plaintiffs' complaint that Defendants were planning to offer "frankenvideos" at trial. Likewise, Plaintiffs allege that "Defendants have not yet made the demonstration systems [that were used to generate the demonstratives] available for inspection by Plaintiffs at or before trial," *id.*, yet Defendants agreed to bring the systems to Tyler and make them available for inspection before Plaintiffs filed their motions, and Plaintiffs' counsel and technical consultant were *sitting in the room with Defendants' counsel and the demonstration machines* at the time that the motion was filed. Whatever criticisms Plaintiffs may have regarding the substance of Defendants' demonstratives, there will be ample opportunity for Plaintiffs to explore those criticisms on cross-examination. But Plaintiffs cannot hide this evidence and these demonstrations from the jury based on ill-founded procedural complaints. The prior art was timely disclosed and the trial demonstratives showing that prior art were disclosed early. This motion should be denied.

### A. Plaintiffs' Motion Starts From A False Premise: The Disputed Productions Are *Not* New Prior Art

Plaintiffs contend that Defendants' productions are "new—and massive—productions of alleged prior art, newly-created video demonstrations of that alleged prior art, and source code

1

related to that alleged prior art," and attached a chart purportedly illustrating the production date of these nineteen "new" productions as Appendix A to their Motion. Dkt No. 1317 at 1. Several entries in Plaintiffs' Appendix A chart are misleadingly duplicative. Plaintiffs' chart refers only to the Bates ranges for the recent productions, ignoring the actual content of the productions and their previous production dates. In fact, had Plaintiffs checked prior productions they would find that virtually all of the prior art disclosed has been previously produced. Defendants have prepared the following chart, which includes Appendix A to Plaintiffs' motion and appends a column at the end that highlights the omissions and errors in Plaintiffs' chart:

| Number | Date | Party Producing | Production File | Bates Range of Production | Size of Production | Errors and Omissions in Plaintiffs' Chart (Date of First Production for Prior Art Code[1]) |
|---|---|---|---|---|---|---|
| 1. | Jan. 6, 2012 | All Defendants | PA000 | PA-00334745 - PA00334749 | 9 MB (10 files) | NOT PRIOR ART P. Wei Identification Document & UC Transcript |
| 2. | Jan. 10, 2012 | Yahoo | YAHOO-E067-E068 | YAHOO-E03114528 - YAHOO-E03114530 | 17 MB (2124 files) | PUBLICLY AVAILABLE ARCHIVES My.yahoo.com and yahoo.com |
| 3. | Jan. 13, 2012 | All Defendants | VOL001 | PA-NAT-00000100 - PANAT-00000107 | 3000 MB (25,729 files) | Viola 5/12/93 (7/12/10); vplot 5/7/93 (7/12/10); Viola 7/30/92 (Public); Viola 10/25/92 (12/28/11); Viola 3/9/93 (1/11/12); Viola 5/27/93 (7/12/10); vplot (7/12/10); Viola 10/16/93 |

---

[1] Publicly available operating system code and SGMLS code for the machines used to create Defendants' demonstratives was included along with the prior art code to make it easier for Plaintiffs to understand and review Defendants' prior art and demonstratives.

2

| Number | Date | Party Producing | Production File | Bates Range of Production | Size of Production | Errors and Omissions in Plaintiffs' Chart (Date of First Production for Prior Art Code[1]) |
|---|---|---|---|---|---|---|
| | | | | | | (7/12/10); Viola 6/11/93 (1/11/12); Viola 10/23/92 (12/28/11)[2] |
| 4. | Jan. 14, 2012 | All Defendants | VOL0002 | PA-NAT-00000108 - PANAT-00000111 | 1100 MB (9,391 files) | Viola 5/12/93 (7/12/10); Viola 5/27/93 (7/12/10); vplot (7/12/10); vplot folder 5/18/93 & 8/12/93 (7/12/10) |
| 5. | Jan. 14, 2012 | All Defendants | VOL0004 | PA-NAT-00000108 - PANAT-00000112[3] | 512 MB (5,304 files) | ADBE018753 (7/12/10); LANL 92 CD (6/8/11); ADBE196641-Mediaview 3.0 (9/2/11); MV.tar (7/12/10); MV_1.tar (9/2/11); MV_2.1 (7/20/11); MV_2.tar (6/8/11); MV_3.0 (7/12/10); MV_copy (7/12/10); PA-NAT 00000071 (7/12/10) |
| 6. | Jan. 14, 2012 | Yahoo | YAHOO-E069 | YAHOO-E03114531 | 366 MB (1,090 files) | tkWWW[4] |
| 7. | Jan. 15, 2012 | Yahoo | YAHOO-E070-E072 | YAHOO-E03114532 - YAHOO- | 771 MB (5,736 files) | Viola 5/12/93 (7/12/10); Vplot 5/7/93 (7/12/10); Viola 5/27/93 |

---

[2] The October 23, 1992 and June 11, 1993 Viola code was produced on January 11, 2012 and December 28, 2012 respectively because this code had to be recovered from 27 back-up tapes containing 60GB of data located in the possession of third-party witness Dale Dougherty after the close of fact discovery. Mr. Dougherty agreed to appear for deposition and was deposed after the close of fact discovery.

[3] Plaintiffs' chart is incorrect. Entry No. 4 overlaps with Entry No. 5. VOL0004 contains only PA-NAT-00000112.

[4] At pages 4-5 of the Motion, Plaintiffs criticize Defendants for production of an "entirely new prior art system." Defendants do not rely on tkWWW as a basis for anticipation or obviousness. tkWWW may be addressed by fact witnesses in the context of a discussion of the state of the art. There is no prejudice to Plaintiffs from the demonstrations of tkWWW as reflecting the state of the art as presented by percipient witnesses.

2

| Number | Date | Party Producing | Production File | Bates Range of Production | Size of Production | Errors and Omissions in Plaintiffs' Chart (Date of First Production for Prior Art Code[1]) |
|---|---|---|---|---|---|---|
| | | | | E03114692 | | (7/12/10); Viola 7/30/92 (Public); Viola 10/25/92 (12/28/11); Viola 3/9/93 (1/11/12); Vplot (7/12/10); Viola 10/16/93 (7/12/10); Viola 6/11/93 (1/11/12); Viola 10/23/92 (12/28/11) <br><br> PRODUCTION ALSO INCLUDES FINANCIAL DOCUMENTS THAT ARE NOT PRIOR ART |
| 8. | Jan. 16, 2012 | All Defendants | PA001 | PA-00334750 - PA00334761 | 6 MB (17 files) | NOT PRIOR ART S. Silvey School Transcripts |
| 9. | Jan. 20, 2012 | Yahoo | YAHOO-E073 | YAHOO-E03114693 | 366 MB (1,126 files) | tkWWW |
| 10. | Jan 24, 2012 | All Defendants | VID001 | VID00000001-VID00000011 | 835 MB (11 files) | TRIAL DEMONSTRATIVE (VIDEO) |
| 11. | Jan. 24, 2012 | Yahoo | YAHOO-E074 | YAHOO-E03114694 | 361 MB (2,085 files) | Viola 5/12/93 (7/12/10); Vplot folder 5/18/93 & 8/12/93 (7/12/93) |
| 12. | Jan. 24, 2012 | All Defendants | VOL3 | PA-NAT-00000111 | 361 MB (2,085 files) | Viola 5/12/93 (7/12/10); Vplot folder 5/18/93 & 8/12/93 (7/12/93) |
| 13. | Jan. 31, 2012 | Yahoo | VID002 | VID00000012-VID00000017 | 565 MB (6 files) | TRIAL DEMONSTRATIVE (VIDEO) |

| Number | Date | Party Producing | Production File | Bates Range of Production | Size of Production | Errors and Omissions in Plaintiffs' Chart (Date of First Production for Prior Art Code[1]) |
|---|---|---|---|---|---|---|
| 14. | Jan 31, 2012 | All Defendants | VID003 | VID00000018-VID00000020 | 144 MB (3 files) | TRIAL DEMONSTRATIVE (VIDEO) |
| 15. | Feb. 1, 2012 | All Defendants | VOL5 | PA-NAT-00000113 to PANAT-00000121 | 3200 MB (13,101 files) | Viola 10/16/93 (7/12/10); Vplot 5/7/93 (7/12/10); Viola 5/12/93 (7/12/10); Vplot 8/12/93 (7/12/10); Viola 5/27/93 (7/12/10); Viola 7/30/92 (Public); Viola 4/14/95 3.3 (Public); Viola.org data (8/18/11); Vplot script 2012 (2/1/12) |
| 16. | Feb 1, 2012 | All Defendants | VID004 | VID00000021-VID00000029 | 727 MB (9 files) | TRIAL DEMONSTRATIVE (VIDEO) |
| 17. | Feb. 1, 2012 | Yahoo | YAH00E075 | YAHOO-E03114695 to YAHOO-E03114703 | 3200 MB (13,101 files) | Viola 10/16/93 (7/12/10); Vplot 5/7/93 (7/12/10); Viola 5/12/93 (7/12/10); Vplot 8/12/93 (7/12/10); Viola 5/27/93 (7/12/10); Viola 7/30/92 (Public); Viola 4/14/95 3.3 (Public); Viola.org data (8/18/11); Vplot script 2012 (2/1/12) |
| 18. | Feb. 1, 2012 | All Defendants | VOL6 | PA-NAT-00000122 to PANAT-00000124 | 7 MB (609 files) | tkWWW; viola-3.3.tar.gz (Public); MPEG_play-2.0.tar.Z (Public) |
| 19. | Feb. 1, 2012 | Yahoo | YAH00E076 | YAHOO-E03114704 | 0.25 MB (34 files) | tkWWW |

As this chart shows, the overwhelming majority of the purportedly late-produced prior art

3

falls into two categories, neither one of which is late: (1) previously-produced or public prior art source code reproduced in specific packages to be used as trial exhibits; and (2) trial demonstrative videos. As set forth below, neither one of these categories is late-produced prior art and neither category should be stricken.

### 1. Defendants' Production Of Subsets of Previously-Produced Code For Use As Trial Exhibits Is Proper

It is not disputed that Defendants timely served Plaintiffs with their invalidity contentions and expert reports on invalidity, setting forth in detail the basis for Defendants' invalidity defenses and substantial supporting evidence. Defendants have produced source code for the key prior art systems numbering in the millions of lines of code and covering multiple versions of these systems over time. Given the volume and complexity of the code at issue, Defendants identified the subsets of code versions and modules that they intend to introduce as exhibits at trial. There is nothing unusual or improper about this, nor is this in any way prejudicial to Plaintiffs. In fact, this only serves to assist Plaintiffs by focusing them on the precise code bases that Defendants intend to rely upon at trial. No new prior art is being added and no new theories offered.[5]

### 2. Defendants Produced Demonstrative Videos *Before* The Parties' Agreed-Upon Deadline For Exchange Of Trial Demonstratives

Plaintiffs' motion to strike is equally baseless with respect to the second category of items in dispute—trial demonstrative videos. The parties have agreed that all non-documentary demonstratives or live product demonstrations will be exchanged at 8 pm two nights before their use. Dkt. No. 1244 at 64-65. Notwithstanding this agreement, as shown above, Defendants have provided a number of trial demonstrative videos to Plaintiffs ***days before*** that agreed-upon

---

[5] For this reason, Plaintiffs' reliance on *LML Patent Corp. v. JPMorgan Chase & Co.*, No. 2:08-cv-448, 2011 U.S. Dist. LEXIS 128724 (E.D. Tex. Aug. 10, 2011), *Cummins-Allison Corp. v. SBM Co. Ltd., et al.*, No. 9:07-cv-196, 2009 U.S. Dist. LEXIS 22114 (E.D. Tex. Mar. 19, 2009) and *Finisar Corp. v. DirecTV Group, Inc.,* 424 F. Supp. 2d 896 (E.D. Tex. 2006) is misplaced. In those cases, Defendants disclosed new prior art or new combinations well into the case. That is not the situation here.

deadline. Although they were under no obligation to do so, Defendants made this early production of trial demonstratives precisely to avoid a dispute with Plaintiffs regarding these demonstratives. As the Court knows, at the January 24, 2012 pretrial hearing, Plaintiffs contended that Defendants' earlier-produced videos and the underlying source code had been modified to create "frankenvideos" and were not true and accurate representations of the asserted prior art's capabilities. January 24, 2012 Pretrial Hearing Tr. at 147-153. To avoid that concern and criticism, Defendants have undertaken significant time and expense to prepare these trial demonstratives in advance and provide them to Plaintiffs' counsel in an accessible and more understandable way. Plaintiffs' attempt to punish Defendants for this early disclosure is unfounded, to say the least.

### B. Defendants Have Made The Systems Used To Create The Demonstrative Videos Available For Inspection

On January 23, 2012, Plaintiffs requested access to the systems used to create demonstrative videos of prior art code. [Ex. A, Budwin 1/23/12 ltr. re: prior art demonstrations]. Yahoo! originally had the Sun SPARCstation Model 10 workstations that were used to create demonstrative videos VID00000001-29 in Sunnyvale, California. Plaintiffs requested that these machines be made available in Tyler, Texas. *Id.* Accordingly, despite the risks that transport presents to these very old and fragile computers, Yahoo! transported two SPARCstation machines to an office in Tyler. [Walker Decl. ¶ 2].

The bases and drives for these machines arrived in Tyler the morning of Wednesday, February 1, but monitors did not arrive until afternoon due to a shipping error. *Id.* at ¶ 3. Apparently due to damage that occurred during the shipping process, both the machines indicated errors at boot time due to failures in the Non-Volatile Random Access Memory (NVRAM). *Id.* at ¶ 4. Yahoo! personnel and counsel worked diligently but unsuccessfully to get the machines running. That evening they reached out to obtain replacement machines,

5

contacting an individual from whom Yahoo! had previously purchased machines from the same era. *Id.* at ¶ 5. That contact provided the name of a new source, an individual located over an hour from Tyler in Mesquite, Texas, from whom Yahoo! arranged to obtain two additional machines and replacement hard drives for delivery the next day. *Id.* at ¶ 6. Yahoo! also sent two backup, replacement hard drives with an additional copy of the previously produced prior art code necessary to run certain demonstrations from videos were made. *See id.* at ¶ 7. These replacement hard drives were carried by Yahoo! personnel traveling to Dallas, Texas on Thursday, February 2. *Id.* at ¶ 8.

On Thursday morning, a temporary solution to the boot problems was identified, which enabled the machines to start up successfully, access the local network, and communicate and operate as they previously had when located in Sunnyvale prior to the move to Tyler. At that point, Defendants notified Plaintiffs that the machines were available for inspection. *Id.* at ¶ 9.

However, when Plaintiffs' representatives arrived, the hard drive on the "client" machine apparently failed, and the machine failed to reboot properly. *Id.* at ¶ 10. Defendants made numerous attempts to get the machines working, and Plaintiffs asked a number of questions regarding the configurations of those machines and the steps necessary to run the demonstrations illustrated in the demonstrative video. *Id.* at ¶ 11. Defendants committed to investigate Plaintiffs' requests and explained that they were taking steps to get the machines operating again, and would notify Plaintiffs as soon as Defendants were again able to provide systems for inspection. *Id.* at ¶ 12.

Yahoo! arranged to transport the backup hard drives from Dallas that night and the two additional SPARCstations ordered on Wednesday arrived that night. *Id.* at ¶ 13. After performing testing enabled by the newly arrived machines, Defendants confirmed that one of the

6

original hard drives had failed. *Id.* at ¶ 14. The backup hard drives were delivered at approximately 1:00 am on Friday, February 3, 2012. *Id.* at ¶ 15. Working through the night into Friday morning, and replacing internal hardware, including hard drives and apparently failing NVRAM, Defendants were able to build two working machines, "client" and "remote," in addition to the original "server," and restored network functionality among the machines. *Id.* at ¶ 16.

Defendants then offered those machines to Plaintiffs for inspection on Friday afternoon. [Exh. B, Perito 2/3/12 3:05pm CT email to Budwin]. Defendants also offered to walk Plaintiffs through the complete set of steps necessary to run each of the demonstrations illustrated in eleven of the video trial demonstratives that Defendants intend to introduce at trial. [Exh. C, Perito 2/3/12 4:10pm CT email to Budwin]. Plaintiffs did not inspect these machines on Friday, and on Saturday afternoon, after multiple emails asking when Plaintiffs planned to inspect the machines, Plaintiffs finally informed Defendants that Plaintiffs' technical expert was out of town and would "likely proceed with the second inspection" on Sunday. [Exh. D, Budwin 2/4 3:42pm CT email to Perito]. Finally, at approximately 6:30 pm on Sunday, Plaintiffs' representative inspected the machines, taking code listings and screen shots.

### C. The Demonstrative Videos Do Not Misrepresent The State Of The Art Or Violate MILs 1 and 2

All but five of the Viola prior art demonstrative videos were produced using Viola-related code that bears original dates before October 17, 1994. *See supra*, § A. Chart. These videos demonstrate the capabilities of the prior art and were produced on machines available before October 17, 1994, running contemporaneous operating systems and software. Because the hard drives for these machines were recently loaded with operating system software and, in the case of the "client" and "remote" workstations, rebuilt Friday, February 3, 2012, as a result of

7

the failure of the original "client" hard drive, certain files on those hard drives bear recent creation and/or modified dates. There is no justifiable objection that these videos are misleading in any way or that they misrepresent the state of the prior art. In fact, these videos all could have been produced in October 1993 and would been identical—in all relevant respects—to those that Defendants intend to present to the jury.

For the same reasons, Plaintiffs' contention that these videos are barred by the Court's grant of Plaintiffs' Motion *in Limine* ("MIL") Nos. 1 and 2 is meritless. Dkt. No. 1317 at 10. The prior art codebases used to create these videos are unmodified and bear their original dates before October 17, 1994—in fact, they are dated before October 17, 1993. That simply disposes of any basis for exclusion under MIL 1. Similarly, MIL 2 does not bar these videos, as they in no way relate to any accused product, much less any contention that "an accused product [is] based on technology that did not exist at the time of the invention." Dkt. No. 1298. These videos present compelling illustrations of the functioning of prior art systems and there is no reason that the jury should be prevented from considering them.

The remaining Viola-related videos fall into three categories: (1) one video (produced as VID00000018, hereinafter "Video 18") illustrates how prior art vplot code could have been executed on a remote system; (2) three additional videos (produced as VID00000007-9) illustrate the flexibility and capabilities of the prior art Viola browser, which could have downloaded and run Viola script code that provides search suggestion functionality; and (3) a third video (produced as VID00000012) illustrates how Viola would have appeared in 1995/1996.

Video 18 was produced using prior art code, with addition of a single vplot-related file created on January 29, 2012. Defendants do not intend to offer this video as prior art, but rather, as a demonstrative video that highlights how the Viola code could have been used by

8

others to create applications on a remote machine. Likewise, Videos 7-9 are directed at showing the robustness of the Viola code. Again, Defendants do not intend to offer these videos as prior art. Defendants expect that Plaintiffs will attempt to attack the capabilities of the prior art Viola browser. To rebut that unsupported position, Defendants are entitled to show videos that illustrate the capabilities of the Viola browser and how it could be used to provide search suggestion functionality in coordination with a modern system. These demonstrative videos do not misrepresent the state of the prior art, and indeed, Defendants do not intend to present these demonstrations to suggest that the search suggestion technology was known in 1993. To the contrary, the demonstrations merely illustrate the robustness of the Viola system for the jury's consideration should Plaintiffs attempt to attack the system on that grounds, subject of course to Plaintiffs' cross-examination on Defendants' demonstratives.

Video 12, the video that shows how Viola would have looked in 1995/1996, is not offered as prior art, but as an illustration of diligence and the continued development of the Viola system. This use triggers none of the concerns Plaintiffs raised in their emergency motion.

### D. There Is No Prejudice To Plaintiffs

Plaintiffs' motion complains that they will be significantly prejudiced by the supposed "eve-of-trial" production of allegedly-new prior art and demonstrations. The reality is that there is no prejudice to Plaintiffs. For the first category at issue—subsets of code packaged to be usable as trial exhibits—Plaintiffs have had virtually all of the code for months. In fact, it is clear that Plaintiffs knew about Viola and had access to public versions of the code in the 1990s. In this case, they have had ample opportunity to depose the relevant witnesses and develop their rebuttal, and many of those witnesses will testify live at trial and be subject to cross-examination by Plaintiffs.

As to the second category—the video trial demonstratives—there can be no prejudice

because Defendants have provided those demonstratives long before the deadline that Plaintiffs themselves agreed to. If Plaintiffs believe that exchange of product demonstrations and nondocumentary demonstratives at 8 pm two days before their use in Court provides adequate time for them to prepare cross-examination, as agreed in the Pretrial Order, Defendants have only given them an additional head-start. That Defendants have also agreed to make the systems used for the demonstrations available for inspection and assist Plaintiffs in their inspection confirms that there is no prejudice here. The bottom line is that, whatever substantive challenges Plaintiffs have to the video demonstratives, how they were generated, or what they show, they have had *extra time and extra help* to prepare their cross-examination. Plaintiffs have presented no legitimate basis to strike these demonstratives.

Dated: February 6, 2012

Respectfully submitted,

*/s/ Jennifer H. Doan*
Edward Reines (Bar No.135960)
edward.reines@weil.com
Jared Bobrow (Bar No. 133712)
jared.bobrow@weil.com
Sonal N. Mehta (Bar No. 222086)
sonal.mehta@weil.com
Andrew L. Perito (Bar No. 269995)
andrew.perito@weil.com
Aaron Y. Huang (Bar No. 261903)
aaron.huang@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Doug W. McClellan (Bar No. 24027488)
doug.mcclellan@weil.com
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

        Jennifer H. Doan (Bar No. 088090050)
        jdoan@haltomdoan.com
        Josha R. Thane (Bar No. 24060713)
        jthane@haltomdoan.com
        HALTOM & DOAN
        6500 Summerhill Road, Suite 100
        Texarkana, TX 75503
        Telephone: (903) 255-1000
        Facsimile: (903) 255-0800

        Otis Carroll (Bar No. 3895700)
        Deborah Race (Bar No. 11648700)
        IRELAND, CARROLL & KELLEY, P.C.
        6101 South Broadway, Suite 500
        Tyler, Texas 75703
        Telephone: (903) 561-1600
        Facsimile: (903) 581-1071
        Email: fedserv@icklaw.com

        **Attorneys for Defendants**
        **AMAZON.COM, INC. AND YAHOO! INC.**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 6th day of February, 2012.

                                                 */s/ Andrew L. Perito*
                                                 Andrew L. Perito