**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA** | § § § | |
| | § | |
| **Plaintiffs,** | § | **CASE NO. 6:09-CV-00446-LED** |
| | § | |
| **vs.** | § | |
| | § | |
| **ADOBE SYSTEMS INC., AMAZON.COM INC., CDW CORPORATION, CITIGROUP INC., THE GO DADDY GROUP, INC., GOOGLE INC., J.C. PENNEY CORPORATION, INC., STAPLES, INC., YAHOO! INC., and YOUTUBE, LLC.,** | § § § § § § § | **JURY TRIAL** |
| | § | |
| **Defendants.** | § | |

**RENEWED MOTION OF PLAINTIFFS THE REGENTS OF THE UNIVERSITY OF CALIFORNIA AND EOLAS TECHNOLOGIES INCORPORATED FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) THAT THE ASSERTED CLAIMS OF THE PATENTS-IN-SUIT ARE NOT INVALID, OR IN THE ALTERNATIVE FOR A NEW TRIAL UNDER RULE 59.**

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

INTRODUCTION AND ARGUMENT SUMMARY .....................................................1

STATEMENT OF THE ISSUES.....................................................................................4

ARGUMENT ..................................................................................................................4

I.      THE COURT SHOULD GRANT JMOL ON INVALIDITY............................4

        A.      JMOL Is Proper When Legally Insufficient Evidence
                Supports the Verdict. ............................................................................4

        B.      There Is Legally Insufficient Evidence of Anticipation. ..........................5

                1.      Proof of anticipation requires clear and convincing
                        evidence that every element of the claim is found in
                        a single prior art reference. ...........................................................5

                2.      There is legally insufficient evidence that every
                        element of any asserted claim is found in a single
                        prior art reference...........................................................................5

                3.      There is legally insufficient evidence of anticipation
                        with respect to at least four claim elements. ................................8

                        a)      "embed text format specifies the location of
                                at least a portion of an object" .........................................8

                        b)      "type information to identify and locate" .......................9

                        c)      "distributed application" .............................................12

                        d)      "HTML tags" .................................................................13

                4.      There is legally insufficient evidence as to §§
                        102(a), (b), and (g). .....................................................................14

        C.      There Is Legally Insufficient Evidence of Obviousness. .......................16

                1.      Proof of obviousness requires clear and convincing
                        evidence regarding the prior art's scope, content,
                        and relevant differences, and careful consideration
                        of all objective evidence of nonobviousness. ...........................16

2.      There is legally insufficient evidence regarding the prior art's scope, content, and relevant differences. ..................................18

a)      "Viola" ..........................................................................................18

b)      "MediaView" ...............................................................................19

3.      There is legally insufficient evidence of the required consideration of all objective evidence of nonobviousness. ........................................................................................21

II.      IN THE ALTERNATIVE, THE COURT SHOULD GRANT A NEW TRIAL. ............................................................................................................24

A.      A New Trial Is Proper When the Verdict Is Insufficiently Supported, Reflects Confusion, or Was Influenced By Passion or Prejudicial Error. .................................................................................24

B.      If the Court Decides Not to Grant JMOL, It Should Grant a New Trial for One of Three Reasons. ...................................................................24

1.      The jury was confused, and based its verdict on passion and prejudice rather than on the relevant evidence. .........................................................................................25

2.      There is no clear and convincing proof of invalidity. ...............................28

3.      Exclusion of the licenses to the patents-in-suit precluded consideration of critical nonobviousness evidence. ..........................................................................................29

III.     CONCLUSION ..............................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3M v. Chemque, Inc.*,
　　303 F.3d 1294 (Fed. Cir. 2002)................................................................................14

*Alaniz v. Zamora-Quezada*,
　　591 F.3d 761 (5th Cir. 2009) ................................................................................28

*Alza Corp. v. Mylan Labs., Inc.*,
　　464 F.3d 1286 (Fed. Cir. 2006)........................................................................17, 18

*Ashland Oil v. Delta Resins & Refractories*,
　　776 F.2d 281 (Fed. Cir. 1985)......................................................................... passim

*Datapoint Corp. v. Picturetel Corp.*,
　　No. 3:93-CV-2381, 1998 U.S. Dist. LEXIS 1145 (N.D. Tex. Jan. 23, 1998) ..................23, 30

*DataTreasury Corp. v. Wells Fargo & Co.*,
　　No. 2:06-CV-72, 2010 U.S. Dist. LEXIS 143587 (E.D. Tex. Sept. 27, 2010).................23, 30

*Edwards v. Sears, Roebuck & Co.*,
　　512 F.2d 276 (5th Cir. 1975) ................................................................................28

*Eli Lilly & Co. v. Aradigm Corp.*,
　　376 F.3d 1352 (Fed. Cir. 2004)..............................................................................4

*Ford v. Cimarron Ins. Co.*,
　　230 F.3d 828 (5th Cir. 2000) ................................................................................4

*Function Media, L.L.C. v. Google, Inc.*,
　　No. 2:07-CV-279, 2011 U.S. Dist. LEXIS 101998 (E.D. Tex. Sept. 9, 2011)............... passim

*Honeywell Int'l, Inc. v. United States*,
　　609 F.3d 1292 (Fed. Cir. 2010)..............................................................................19

*i4i Ltd. P'ship v. Microsoft Corp.*,
　　670 F. Supp. 2d 568 (E.D. Tex. 2009) .....................................................................6

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
　　292 F.3d 728 (Fed. Cir. 2002)................................................................................4

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
　　381 F.3d 1142 (Fed. Cir. 2004)........................................................................5, 17

*Krippelz v. Ford Motor Co.*,
  No. 2011-1103, 2012 U.S. App. LEXIS 1504 (Fed. Cir. Jan. 27, 2012)..............................5, 7

*Kyocera Wireless Corp. v. ITC*,
  545 F.3d 1340 (Fed. Cir. 2008)...........................................................................................6

*Microsoft Corp. v. i4i Ltd. P'ship*,
  131 S. Ct. 2238 (2011)........................................................................................................5

*Mirror Worlds, LLC v. Apple, Inc.*,
  784 F. Supp. 2d 703 (E.D. Tex. 2011) ................................................................................5

*Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*,
  729 F.2d 1530 (5th Cir. 1984) ..............................................................................24, 26, 28

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
  520 F.3d 1358 (Fed. Cir. 2008)...............................................................................17, 19, 21

*Price v. Symsek*,
  988 F.2d 1187 (Fed. Cir. 1993)..........................................................................................15

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
  536 F.3d 1256 (Fed. Cir. 2008)......................................................................................5, 17

*QPSX Devs. 5 PTY Ltd. v. Nortel Networks, Inc.*,
  No. 2:05-CV-268, 2008 U.S. Dist. LEXIS 21076 (E.D. Tex. Mar. 18, 2008) ......................29

*Rothman v. Target Corp.*,
  556 F.3d 1310 (Fed. Cir. 2009)...............................................................................18, 23, 30

*Ruiz v. A.B. Chance Co.*,
  234 F.3d 654 (Fed. Cir. 2000)................................................................................17, 21, 23, 30

*Schumer v. Lab. Computer Sys.*,
  308 F.3d 1304 (Fed. Cir. 2002).............................................................................5, 7, 8, 18

*Simmons Fastener Corp. v. Ill. Tool Works, Inc.*,
  739 F.2d 1573 (Fed. Cir. 1984)..............................................................................17, 21, 23, 30

*Smith v. Transworld Drilling Co.*,
  773 F.2d 610 (5th Cir. 1985) ..............................................................................................24

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
  655 F.3d 1364 (Fed. Cir. 2011)................................................................................... passim

*Sud-Chemie, Inc. v. Multisorb Techs.*,
  554 F.3d 1001 (Fed. Cir. 2009)..........................................................................................17

*Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*,
   492 F.3d 1350 (Fed. Cir. 2007)...........................................................................16

*Teva Pharm. Indus. v. Astrazeneca Pharms. LP*,
   661 F.3d 1378 (Fed. Cir. 2011)...........................................................................16

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
   721 F.2d 1540 (Fed. Cir. 1983)..........................................................17, 21, 23, 30

*Westbrook v. General Tire & Rubber Co.*,
   754 F.2d 1233 (5th Cir. 1985) ............................................................................28

*Whitehead v. Food Max of Miss., Inc.*,
   163 F.3d 265 (5th Cir. 1984) .................................................................24, 26, 28

*WMS Gaming Inc. v. Int'l Game Tech.*,
   184 F.3d 1339 (Fed. Cir. 1999)...........................................................16, 17, 23, 30

*Zenith Elecs. Corp. v. PDI Commun. Sys.*,
   522 F.3d 1348 (Fed. Cir. 2008)................................................................5, 7, 8

## STATUTES

35 U.S.C. § 102....................................................................................1, 14, 15, 16

35 U.S.C. § 103.................................................................................................16

## OTHER AUTHORITIES

FED. R. CIV. P. 50..........................................................................................1, 4, 30

FED. R. CIV. P. 59........................................................................................1, 24, 30

**INTRODUCTION AND ARGUMENT SUMMARY**

Before this case was submitted to the jury, Plaintiffs moved for judgment as a matter of law ("JMOL") under Rule 50(a) that Defendants failed to meet their burden by clear and convincing evidence that the asserted claims were anticipated or obvious pursuant to 35 U.S.C. §§ 102 and 103. Tr. 2/8AM 139:23-155:14; FED. R. CIV. P. 50(a). Following the Court's entry of judgment, Plaintiffs now renew the motion for JMOL under Rule 50(b), and include an alternative request for a new trial under Rule 59. FED. R. CIV. P. 50(b), 59.

Rigorous evidence is required to invalidate a patent claim. Recognizing that their expert was not going to be able to provide the detailed, element-by-element testimony required for invalidation, Defendants took another approach: they brought in a parade of web pioneers who could not speak to whether the allegedly invalidating prior art references met the limitations of the asserted claims, but had much to say regarding other technology they had dedicated to the public to ensure that the Internet would be available "free of charge." Tr. 2/7AM 119:5-6. The reasons for this emotional, "us-versus-them" approach became clear when Defendants' expert, Dr. Richard Phillips, finally came to the stand. After spending hours with their web pioneers, Defendants spent a mere thirty minutes with Phillips going over the "Viola" system—offered for anticipation and obviousness purposes—and another some thirty minutes going over the "MediaView" system—offered only for obviousness purposes. Tr. 2/8AM 78:6-20, 85:8-12.

Phillips' testimony was legally insufficient to support a finding of anticipation for two fundamental reasons. **First**, while Phillips offered a generalized opinion that "Viola" anticipated the asserted claims, he explicitly defined "Viola" as the "entire collection" of Viola code bases, including distinct versions that had been modified over time. Tr. 2/8AM 38:6-20, 39:18-24. There was a reason for this: under Phillips' own theories, the early versions were missing some elements, and the later version was missing others. Tr. 2/8AM 50:5-7, 102:13-19. But as a matter

1

of law, distinct versions of the Viola code that had been modified over time could not constitute a single reference for anticipation purposes. Indeed, Phillips conceded this point on cross. Tr. 2/8AM 95:25-96:8. **Second**, even if the entire collection of modified code bases could be considered a single reference, Phillips did not present legally sufficient evidence that this collection satisfied at least four claim limitations: 1) "embed text format specifies the location of at least a portion of an object"; 2) "type information to identify and locate"; 3) "distributed application"; and 4) "HTML tags." With respect to these limitations, Phillips offered either: no opinion on anticipation; an entirely conclusory opinion; or an opinion that was plainly wrong as a matter of law. For these reasons, JMOL on anticipation is appropriate.

The evidence also was legally insufficient to support a finding of obviousness for at least two reasons. **First**, Phillips provided insufficient testimony regarding the scope, content, and relevant differences between the asserted claims and the alleged prior art. For Viola, Phillips suggested that the different versions of Viola might be combined "to fill any gaps, for example." Tr. 2/8AM 78:6-11. But because all the Viola versions are missing at least the claim limitations discussed above, no combination of the Viola versions would embody the missing limitations. For MediaView, Phillips suggested combining that "with a CERN browser to satisfy the HTML issue." Tr. 2/8AM 78:12-15. But because MediaView is missing much more than just "the HTML issue," simply combining it with a CERN browser would not embody the missing limitations. **Second**, the objective evidence of nonobviousness precluded any finding of obviousness. The nonobviousness evidence submitted to the jury was powerful and unrebutted, and other highly probative license-related nonobviousness evidence not even considered. Tr. 2/8PM 60:21-73:25, 12:8-16:13. For these reasons, JMOL on obviousness is appropriate.

Because there is legally insufficient evidence supporting a verdict of invalidity under either § 102 or § 103, the Court should grant JMOL that the asserted claims are not invalid. But if the Court finds that JMOL is inappropriate, it should grant a new trial for three reasons.

**First**, the jury was confused, and its verdict was not based on the relevant evidence. As noted, Defendants spent the bulk of their time offering testimony from praise-worthy web pioneers who had dedicated their work to the public in order to ensure a free Internet. When Defendants finally got to their expert, he opined that a Viola system comprised of a collection of distinct code bases anticipated the asserted claims. Not once, however, did he point to any Viola evidence in any admitted exhibit. Aware of this glaring deficiency, Defendants' counsel urged the jury in closing to write down the critical exhibit numbers and look at the underlying evidence: "272 through 295 are what all of this code is we've presented to you." Tr. 2/9 101:21-22. But this suggestion only led to confusion, as no witness had explained these exhibits to the jury, and some of them were not even in evidence. Turning then to one of the limitations on which Phillips had failed to offer sufficient evidence, counsel pointed to a snippet of unidentified code and attempted to provide her own testimony: "Look at this slide. You can read this. TYPE=percent. TYPE=radio. … This page is filled with type information. No one can fool you and say Viola didn't have TYPE=." Tr. 2/9 102:25-103:8. But TYPE=percent and TYPE=radio are not type information to identify and locate an executable application, and no witness suggested otherwise. This misleading and unsupported attorney argument only further confused the jury, which then rendered its verdict without seeing the code it had been urged to examine.

**Second**, even in the absence of jury confusion, or the influence of any passion or prejudice, the failures of proof with respect to anticipation and obviousness that justify JMOL also easily justify, in the alternative, a new trial on these issues.

**Third** and finally, the Court's exclusion of Plaintiffs' highly probative license-related evidence also counsels granting a new trial, should the Court decide not to grant JMOL.

## STATEMENT OF THE ISSUES

1.      Whether JMOL should be granted where legally insufficient evidence supports the jury's verdict that the asserted claims of the '906 and '985 patents are invalid.

2.      Whether, in the alternative, a new trial should be granted where the verdict reflects jury confusion, is against the great weight of the evidence, and is subject to the exclusion of relevant nonobviousness evidence.

## ARGUMENT

### I.      THE COURT SHOULD GRANT JMOL ON INVALIDITY.

#### A.      JMOL Is Proper When Legally Insufficient Evidence Supports the Verdict.

Motions for JMOL are governed by regional-circuit law. *Function Media, L.L.C. v. Google, Inc*., No. 2:07-CV-279, 2011 U.S. Dist. LEXIS 101998, at *4 (E.D. Tex. Sept. 9, 2011). In the Fifth Circuit, JMOL is proper when a party has been fully heard on an issue, and "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000); FED. R. CIV. P. 50. Legally sufficient evidence—also referred to as "substantial evidence"—is "not a fixed quantum of evidence: What is or is not substantial may only be determined with respect to the burden of proof that the litigant bore in the trial court." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004). The quantum of evidence necessary to support a verdict under the rigorous "clear and convincing" burden of proof is thus greater than that necessary to support a verdict under the lower "weight of the evidence" burden. *See id.*; *see also*, *e.g.*, *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 738 (Fed. Cir. 2002) (reviewing a jury verdict on invalidity for "substantial evidence satisfying [the] clear and convincing burden of proof").

4

**B.**     **There Is Legally Insufficient Evidence of Anticipation.**

**1.**     **Proof of anticipation requires clear and convincing evidence that every element of the claim is found in a single prior art reference.**

Because a patent is "presumed valid," assertions of invalidity must be "proved by clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). Anticipation in particular "requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith Elecs. Corp. v. PDI Commun. Sys.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008). Where—as here—the technology is sufficiently complex to fall beyond the grasp of ordinary laypersons, "expert testimony [is] required to establish invalidity on the grounds of anticipation." *Function Media*, 2011 U.S. Dist. LEXIS 101998, at *6; *see also Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008). Such expert testimony "must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference." *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). In short, it "must be clear as well as convincing." *Id.* Expert testimony that is confusing, conclusory, or generic, on the other hand, is legally insufficient to establish anticipation. *See id.* at 1315-16; *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004); *Krippelz v. Ford Motor Co.*, No. 2011-1103, 2012 U.S. App. LEXIS 1504, at *18-19 (Fed. Cir. Jan. 27, 2012); *see also*, *e.g.*, *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 719-20 (E.D. Tex. 2011).

**2.**     **There is legally insufficient evidence that every element of any asserted claim is found in a single prior art reference.**

Defendants offered only one witness at trial qualified to provide the limitation-by-limitation expert testimony required—Dr. Richard Phillips. And Phillips attempted to provide such testimony for only one prior art reference—the "Viola" system. Tr. 2/8AM 78:6-15, 85:8-

12. Critically, however, the Viola system as addressed by Phillips was not a single prior art reference; it was a collection of distinct code bases modified over time. As Phillips explained:

> Q. And for purposes of your testimony today, can we agree that the Viola system we're talking about is the Viola code as it was developed through, on October 16th of 1993? …
> A. Yes, that entire collection. …
> Q. … does it make sense to consider that collection of Viola code through October 16th of 1993 as a single piece of prior art?
> A. Sure. I think it does.

Tr. 2/8AM 38:6-20. In other words, Phillips offered a generalized opinion that "Viola" anticipated the asserted claims, but defined "Viola" for the purposes of his testimony as the "entire collection" of Viola code bases including the October 1993 "Alpha code," the "May 1993 Viola code," and "other Viola code." Tr. 2/8AM 38:6-20, 39:18-24.

This misguided approach necessarily rendered Phillips' testimony legally insufficient to show anticipation of the asserted claims. As a matter of law, a collection of distinct versions of program code developed and modified over time cannot be a single device, method, or publication. Tr. 2/9 29:25-30:9. Indeed, this Court held as much in *i4i* when it distinguished, for anticipation purposes, "particular version[s]" of a prior art reference "where the code was modified." *i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 586 (E.D. Tex. 2009); *see also Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1351 (Fed. Cir. 2008). The Court's charge to the jury also reflects this rule. Tr. 2/9 29:25-309. In any event, Defendants are in no position to argue otherwise, as Phillips himself conceded this point on cross examination:

> Q. … For purposes of anticipation … [i]t's not proper to pick from the different Viola code bases and stick them together, is it?
> A. No.
> Q. They have to be considered one at a time on their own merit?
> A. Yes.

Tr. 2/8AM 95:25-96:8. Notwithstanding this concession, Phillips failed to offer testimony considering the Viola code bases one at a time on their own merit. The Court will look in vain for any limitation-by-limitation testimony that the Alpha version of Viola, or any other distinct version, anticipates any asserted claim. It is not to be found: there is no element-by-element testimony in the record that any single version of Viola anticipates any asserted claim. That evidentiary failure is fatal to Defendants' anticipation case. *See Zenith*, 522 F.3d at 1363.

This infirmity in the Viola-related testimony is confirmed and compounded by the fact that not once did Phillips point to or show the jury any admitted exhibit—including the source code—evincing the function, operation, or structure of any version of Viola. Not once, that is, did he link any claim element to any evidence for any particular version of Viola.[1] Tr. 2/8AM 154:3-16. This omission further renders Phillips' Viola-related testimony conclusory, generic, and insufficient to meet the clear-and-convincing burden as a matter of law. *See Schumer*, 308 F.3d at 1315-16; *Krippelz*, 2012 U.S. App. LEXIS 1504, at *18-19.

Phillips had good reason to avoid pointing to any particular Viola code base in his anticipation testimony, and to improperly treat the entire collection of code bases as a single reference—he had testified in deposition that the earlier May versions did not satisfy the "HTML tags" limitation, Tr. 2/8AM 102:13-19, and the later Alpha version abandoned the "VPlot" feature that was critical to his analysis, Tr. 2/8AM 50:5-7. The only way he could opine that Viola anticipated the asserted claims, therefore, was to improperly treat the different versions of Viola as a single reference. In the absence of expert testimony that a particular Viola code base

---

[1] This doubtless explains at least in part why the jury—after the urging of Defendants' counsel in the closing argument—asked to see the Viola code bases during their deliberation: they had never been shown in the trial how the claim limitations allegedly matched up to any particular Viola code base. And of course the fact that they returned their verdict before seeing the code indicates that they ultimately made their decision on some other basis. Tr. 2/9 114:25-131:7.

met every limitation of any asserted claim—and there is no such testimony in the record—there was no basis for the jury to conclude that Defendants had met their burden to show anticipation by clear and convincing evidence, and JMOL is appropriate on this issue. *See Zenith*, 522 F.3d at 1363; *Schumer*, 308 F.3d at 1315-16; *Function Media*, 2011 U.S. Dist. LEXIS 101998, at *6.

### 3. There is legally insufficient evidence of anticipation with respect to at least four claim elements.

Even if "the entire collection" of Viola code bases could constitute "a single piece of prior art," Tr. 2/8AM 38:6-20—though it cannot—the record nonetheless reflects a critical failure of anticipation-related proof with respect to at least four claim limitations: "embed text format specifies the location of at least a portion of an object"; "type information to identify and locate"; "distributed application"; and "HTML tags." Because these limitations cover every asserted claim, this additional failure also makes JMOL on anticipation appropriate.

### a) "embed text format specifies the location of at least a portion of an object"

All thirteen asserted claims require that the "embed text format specifies the location of at least a portion of an object" (or similar language). But Defendants offered no evidence that the embed text format identified by Phillips "specifies the location of at least a portion of an object." At trial, Phillips was asked about this claim limitation, but rather than explaining how the "embed text format specifies the location of at least a portion of an object," Phillips testified only that the alleged embed text format specifies the location **of the executable application**:

> Q. And using that as an example, sir, can you explain how embed text format would specify the location of the object?
> A. Well, again, remember that VOBJF, textual information I mentioned, following that is some information that allows a Viola browser to **determine where an executable location can be found.** It executes that small program and then discovers that there is a larger program, which is called VPlot. And VPlot then allows the user to interact with data that he sees on—on the screen.

Tr. 2/8AM at 48:5-15 (emphasis added).  There is thus a complete failure of proof with respect to this limitation, and JMOL on anticipation is appropriate for claims 1 and 6 of the '906 patent, and claims 1, 3, 10, 16, 18, 20, 22, 36, 38, 40, and 42 of the '985 patent.

**b)      "type information to identify and locate"**

Nine of the thirteen asserted claims contain a limitation requiring "type information to identify and locate." These claims require an object that "has type information associated with it," and further require that the browser utilize this "type information to identify and locate" the right executable application to enable interaction with the object in the browser-controlled window. PX2 at claim 1. The court's claim construction further provides that "the identify and locate functions are performed by the browser." In short, the asserted claims do not simply require the presence of generic "type information"—they require type information that is associated with the object and utilized by the browser to perform specific functions. Defendants have long known that Viola fails to meet this element. Indeed, in the first reexamination of the '906 patent, the examiner considered and rejected the argument that Phillips advanced at trial:

> [s]ignificantly, the Viola browser application <u>does not fairly teach nor suggest where the browser application uses type information associated with the external object to identify and locate an external executable application</u>.

PX3.0694 (underlining by examiner). Reflecting this reality, Phillips' expert report offered no coherent theory with respect to how Viola satisfied this element. Tr. 2/8AM 16:4-11. At his deposition, he offered a new—if misguided—theory: that the name of the file to be opened, whatever that might be, was the relevant "type information." Tr. 2/8AM 16:4-11; 17:7-12. Before Phillips took the stand at trial, the Court heard argument on whether he could offer slides and testimony with respect to this new theory. Tr. 2/8AM 11:9-18:3. After Defendants' counsel conceded that it was not in the expert report, the Court sustained Plaintiffs' objection to its

9

admission. Tr. 2/8AM 18:4-9. On direct examination, when Phillips was asked to identify the type information associated with the object in Viola, he said the following:

> Well, in the case of VPlot that we were just talking about, it actually will display the equation of a 3-dimensional coordinate system. The graphics representing the equation of 3-dimensional ordinances, you'll see that on the screen.

Tr. 2/8AM 48:21-25. This confusing answer failed to identify type information of any kind. And when it came time to address the "type information to identify and locate," Defendants' counsel simply noted: "Okay. We already covered type information." Tr. 2/8AM 49:15.

Phillips thus offered no testimony on direct relating to type information for any version of Viola. Apparently recognizing this failure, on redirect counsel asked Phillips: "What is the type information in Viola that's used to identify and locate the VPlot application?" Tr. 2/8AM 126:18-20. Plaintiffs objected on the same grounds offered earlier, but the Court—perhaps swayed by the mistaken argument that Phillips' late-disclosed theory had been only about "Doodle," and not about the name of the file to be opened—overruled the objection. Tr. 2/8AM 126:21-127:12. Phillips then answered: "That would be the name, Plot.V, that is at the end of the information after the VOBJF." Tr. 2/8AM 127:21-22. That was it. There was no explanation of how the name of a file could be type information; no explanation of how it could be used by the browser to identify and locate a particular type of executable application; no explanation of how it could be associated with the object; no explanation even of where in any particular Viola code base the jury might find a "Plot.V … after the VOBJF."  Nor could there be such an explanation because, just as the examiner had previously determined, the name after the VOBJF tag is not the type information required by the claims.[2]  PX3.0693-0694. Furthermore, there is no "Plot.V …

---

[2] As Dr. David Martin explained—in unrebutted testimony—the name of a file is not type information associated with the file; it is simply the name of the file. Tr. 2/8PM 36:11-19. And no version of Viola uses the name of any file as type information for identifying and locating an

after the VOBJF" in the Alpha code—VPlot was not part of that code, nor was the VOBJF tag containing the name Plot.V that Phillips identified as the type information. Tr. 2/8AM 50:5-7; Tr. 2/7PM 34:3-35:13.[3] The only "type information" identified by Phillips, therefore, was abandoned in "the Viola code as it was developed through, on October 16th of 1993." Tr. 2/8AM 127:16-22.

Defendants plainly recognized their evidentiary problems on this issue: they attempted to call Mr. Silvey back to the stand in rebuttal prior to the close of all evidence in order to testify as to "whether the Viola Alpha code identified type information." Tr. 2/8PM 212:3-4. The Court properly excluded such testimony, however, as it was expert testimony, and Silvey was not qualified as an expert. Tr. 2/8PM 212:13-213:5. When the Silvey gambit failed, Defendants' counsel offered new "testimony" on this point in closing argument: "They also said yesterday Viola doesn't have type information. Look at this slide. You can read this. TYPE=percent. TYPE=radio. … That page is filled with type information. No one can fool you and say Viola didn't have TYPE=. You have the code in front of you." Tr. 2/9 102:25-103:8. But of course no witness suggested that those "TYPE=" references in that unidentified Viola code were type

_____

executable application—indeed, Phillips offered no testimony explaining how any version of Viola operates to perform either of these functions. Tr. 2/8PM 35:13-40:15. In fact, the only testimony as to how Viola operates in this regard came from Martin. He explained that "what Viola does is whatever name is given between the VOBJF tag, it simply goes and gets that file and does whatever that file tells it to do. It treats that file as a program. And the program can do anything….Whatever it does, Viola attempts to run that program." Tr. 2/8PM 36:11-19. This was a principal source of the serious security issues that plagued Viola: "one of the things [that program] could do is run and delete the user's hard drive. And Mr. Wei agrees, well, yes, that's a problem with Viola." Tr. 2/8PM 39:20-22. The invention in the asserted claims solved that problem through the use of type information to identify and locate an executable application recognized by the browser as an application safe to execute. Tr. 2/8PM 37:12-25.

[3] Scott Silvey testified as a fact witness that the Alpha code contained a reference to Plot.V, but it was not encoded within the VOBJF tags to run VPlot as it had been in the earlier May versions. Indeed, Silvey simply testified that someone who knew about Plot.V, VPlot, and the VOBFJ tag could modify the code to put them together and "you know, it would run." Tr. 2/7PM 35:7-13.

information to identify and locate an executable application—because they play no such role.[4] This attorney argument was thus not only improper, it was misleading and could not help but confuse the jury. Certainly it could not supply the evidence that a reasonable jury would have needed to determine that any version of Viola contains the requisite "type information to identify and locate." And the fact that Defendants felt the need to mislead and confuse the jury on this point only confirms that, as they have long known, Viola does not meet this critical limitation.

For this reason JMOL on anticipation is further appropriate for claims 1 and 6 of the '906 patent, and claims 1, 3, 10, 16, 18, 20, and 22 of the '985 patent.

### c) "distributed application"

The four remaining asserted claims contain a limitation requiring that "the executable application is part of a distributed application." PX2. With respect to Viola, Phillips identified only one executable application—VPlot. Tr. 2/8AM 107:2-5. Phillips never testified that VPlot was part of a distributed application, or was capable of being distributed as written. His principal testimony on the matter reflects a conclusory opinion of obviousness, not anticipation:

> Q. Let's look at the distributed application limitation that we were talking about in Claims 36 and 40. And back in 1993, would it have been obvious to make the executable application as a distributed application based on Viola?
> A. It would have been obvious from several standpoints. …

Tr. 2/8AM 58:9-15. Phillips further confirmed on cross examination that he was not "aware of any instance, prior to the end of 1994, where VPlot was, in fact, implemented as a distributed application." Tr. 2/8AM 107:9-12. In short, Phillips provided some high-level testimony that it "would have been obvious" to make VPlot into an application capable of being distributed, but

---

[4] *See* Ex. 1, the file "testInputAll.hmml" located in JDX272 and JDX290. This is the file Defendants pointed to in their closing arguments. It is plain to see that the "TYPE=" references in the file are within INPUT tags, not within the VOBJF tag identified by Phillips. The INPUT tags simply define the appearance of a form for ordering a pizza.  There is no testimony, expert or otherwise, linking these "TYPE=" references within INPUT tags to the claim limitations.

provided no testimony indicating that Viola actually anticipated this claim element.[5] Thus, JMOL on anticipation is further appropriate for claims 36, 38, 40, and 42 of the '985 patent.

### d)   "HTML tags"

There is an additional failure of proof with respect to the "HTML tags" limitation found in five dependent claims—3, 18, 22, 38, and 42—of the '985 patent. Claims 1-3 are representative. Claim 1 recites receiving "at least one file containing information to enable a browser application to display at least a portion of a distributed hypermedia document within a browser-controlled window." PX2. Claim 2 recites the method of claim 1 where "the information to enable comprises text formats." *Id.* Claim 3 in turn recites the method of claim 2 where "the text formats are HTML tags." *Id.* These asserted dependent claims thus do not simply require the presence of generic "HTML tags"—they require HTML tags that enable a browser application to display at least a portion of a distributed hypermedia document. *Id*

> Phillips' testimony with respect to this limitation is encapsulated in this exchange:
>
> Q. You see how there are five claims on here, and the language is the text formats or HTML tags?
> A. Yes.
> Q. And can you explain how that's satisfied by Viola?
> A. Well, Viola can understand and execute HTML tags. And again, … I keep coming back to this very simple thing, the P tag, because that simply means start a new paragraph, and that is an HTML tag.
> Q. And based on that, does Viola satisfy the limitations required in each of Claims 3, 18, 22, 38, and 42?
> A. Yes, it does.

Tr. 2/8AM 57:10-23. The claims are not satisfied, however, by a system that simply "can understand and execute HTML tags." Nor are they satisfied by the presence of an HTML tag that "simply means start a new paragraph." They require HTML tags that "enable a browser

---

[5] Martin, on the other hand, provided unrebutted testimony that "none of the five versions of Viola satisfy the limitations associated with distributed applications." Tr. 2/8PM 51:1-14.

application to display at least a portion of a distributed hypermedia document within a browser-controlled window." PX2. This is the explicit requirement, and Phillips never addressed it. Nor did he purport to identify any such HTML tags in Viola. Tr. 2/8AM 57:10-23.

There is legally insufficient evidence with respect to this limitation as well, therefore, and JMOL on anticipation is further appropriate for claims 3, 18, 22, 38, and 42 of the '985 patent.

### 4.      There is legally insufficient evidence as to §§ 102(a), (b), and (g).

The preceding establishes critical failures of proof with respect to anticipation: there is no element-by-element testimony that any single Viola reference anticipates any asserted claim, and there is legally insufficient evidence that the Viola references—whether considered separately or as an entire collection—disclose at least four limitations cutting across every asserted claim. Because anticipation always requires clear and convincing evidence that every claim element is found in a single prior art reference, nothing more is required to determine that Defendants failed to meet their burden as a matter of law. It is worth further noting, however, that additional failures of proof extend to each of the statutory bases for anticipation at issue in this litigation, including 35 U.S.C. §§ 102(a), (b), and (g). Tr. 2/8AM 147:18-148:15.

With respect to §§ 102(a) and (b), Defendants failed to prove any public knowledge or use of a prior art reference that allegedly anticipates the asserted claims. *See 3M v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002). As shown above, the only relevant opinion proffered to the jury was that the "entire collection" of Viola code bases might anticipate the claims if that collection were considered "as a single piece of prior art." Tr. 2/8AM 38:6-20, 39:18-24. But as Phillips conceded, the "various references that [he] mentioned" in his analysis had "[n]ever been a compendium that was published as a single entity." Tr. 2/8AM 95:2-10. There is no evidence, therefore, that the "entire collection" of Viola code could possibly satisfy §§ 102(a) or (b).

14

Even if there were some relevant testimony that any of the May, July, or October 1993 versions of Viola alone anticipated any of the asserted claims—though Phillips never provided it—there would remain a fundamental failure of proof with respect to public knowledge or use. For one thing, the VPlot application was critical to Phillips' analysis, and he conceded that there was no evidence "that VPlot was ever distributed to anybody." Tr. 2/8AM 97:5-9. For another, Defendants failed to match up any particular code base with the alleged public demonstrations or distributions in May or July 1993. Tr. 2/8AM 97:16-20 ("There's no evidence in the record that anybody knows what code was actually demonstrated at that demonstration? A. That's correct."); Tr. 2/7PM 129:8-14, 141:2-16, 143:8-17.[6] And the distribution of the Alpha code in October 1993 cannot be prior art under § 102(b), as it came within one year of the filing for patent on October 17, 1994. Tr. 2/7PM 144:2-16, 170:16-19. Tr. 2/8AM 146:20-147:2.

The conclusion that there is legally insufficient evidence of anticipation under §§ 102(a) and (b) is confirmed by the concession of Defendants' counsel that "the evidence has come into place clearly that it's a 102(g), 103 case, Your Honor. We've never had a 102(b) case." Tr. 2/7PM 145:11-15; *see also* Tr. 2/8PM 227:16-19, 219:11-17 ("This is for—you know, October 16th, 1993. There's evidence of a reduction to practice, and that's what this case is…. And we have evidence of reduction to practice, not a demonstration, a public demonstration. It's just a reduction to practice."). In short, Defendants made clear that they believed their anticipation case rested on an October 16, 1993 reduction to practice under § 102(g).

With respect to the October 1993 version of Viola, however, Defendants are faced with another critical failure of proof: that version of Viola had no VPlot (the alleged executable

---

[6] In the absence of any matching code, Defendants are left with uncorroborated oral testimony that a later version of Viola "basically contains the demonstration" given earlier. Tr. 2/7PM 26:18-25; 129:1-3. As a matter of law, such uncorroborated oral testimony is insufficient to establish anticipation. *See Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993).

application), and no Plot.V after any VOBJF tag (the alleged type information). Tr. 2/8AM 50:5-6; Tr. 2/7PM 34:3-35:13. Under Phillips' own analysis, therefore, that system failed to meet two critical claim limitations. Tr. 2/8AM 126:18-20, 127:21-22. The October 1993 version of Viola, in other words, abandoned elements at the heart of Phillips' anticipation opinion. And as a matter of law, elements that have been abandoned cannot be used to show anticipation under § 102(g). *See* 35 U.S.C. § 102(g) (requiring proof that "the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it"); *see also Teva Pharm. Indus. v. Astrazeneca Pharms. LP*, 661 F.3d 1378, 1382 (Fed. Cir. 2011).

### C.    There Is Legally Insufficient Evidence of Obviousness.

#### 1.    Proof of obviousness requires clear and convincing evidence regarding the prior art's scope, content, and relevant differences, and careful consideration of all objective evidence of nonobviousness.

Given their failures of proof with respect to anticipation, Defendants are left only with obviousness. Under § 103(a), a claimed invention may be invalid if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). The ultimate determination of obviousness is a legal conclusion for the Court, based on underlying factual questions addressed by the jury. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999); *Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007); *Ashland Oil v. Delta Resins & Refractories*, 776 F.2d 281, 291 (Fed. Cir. 1985) ("This court reviews the ultimate conclusion of obviousness as one of law on which it must exercise independent judgment."). Those underlying factual questions include:

(1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness.

16

*WMS Gaming*, 184 F.3d at 1355. With respect to differences between the invention and the prior art, "a flexible TSM test"—requiring evidence of teachings, suggestions, or motivations pointing toward the invention in the relevant timeframe—"remains the primary guarantor against a non-statutory hindsight analysis" that might otherwise, and improperly, suggest obviousness. *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364-65 (Fed. Cir. 2008); *see also Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1376 (Fed. Cir. 2011).

As with anticipation, "[e]ach fact forming the factual foundation upon which the court bases its ultimate conclusion regarding the obviousness of the claimed subject matter as a whole must be established by clear and convincing evidence." *Ashland*, 776 F.2d at 292. And where— as here—the subject matter is sufficiently complex to fall beyond the grasp of ordinary laypersons, "expert testimony [is] required to establish invalidity on the grounds of … obviousness." *Function Media*, 2011 U.S. Dist. LEXIS 101998, at *6; *see also Proveris*, 536 F.3d at 1267; *Koito*, 381 F.3d at 1152. Again, that expert testimony must be detailed, and cannot be conclusory. *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1290-91 (Fed. Cir. 2006).

Of importance here is the additional rule that all objective evidence of nonobviousness must be considered by the fact finder before it is legally permissible to conclude that a claim is obvious under § 103. *Ashland*, 776 F.2d at 306; *WMS Gaming*, 184 F.3d at 1359-60; *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555 (Fed. Cir. 1983); *Simmons Fastener Corp. v. Ill. Tool Works, Inc.*, 739 F.2d 1573, 1574-75 (Fed. Cir. 1984); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664 (Fed. Cir. 2000); *Sud-Chemie, Inc. v. Multisorb Techs.*, 554 F.3d 1001, 1008 (Fed. Cir. 2009). Excluding any such evidence from the obviousness calculus constitutes an "error as a matter of law." *Ashland*, 776 F.2d at 307; *Simmons*, 739 F.2d at 1574-75; *Ruiz*, 234 F.3d at 664. And such evidence includes that relating to licensing activity involving the patents-in-suit. *WMS*

17

*Gaming*, 184 F.3d at 1359; *Star*, 655 F.3d at 1375-76; *Rothman v. Target Corp.*, 556 F.3d 1310, 1322 (Fed. Cir. 2009) (approving district court's charge "that the jury 'must consider' objective indicia of nonobviousness, such as … licensing activity").

> **2.      There is legally insufficient evidence regarding the prior art's scope, content, and relevant differences.**

Defendants offered only one witness at trial qualified to provide the detailed expert testimony regarding the prior art's scope, content, and relevant differences required to prove obviousness—Phillips. And Phillips attempted to provide such testimony for only two systems— "Viola" and "MediaView." Tr. 2/8AM 78:2-15, 85:8-12.[7] The testimony regarding both of these systems, however, again suffers from critical failures of proof.

> **a)      "Viola"**

Phillips opined that "all of the asserted claims … are anticipated or obvious based upon Viola." Tr. 2/8AM 78:6-8. But again, Phillips improperly treated the "entire collection" of Viola code bases as a "single piece of prior art." Tr. 2/8AM 38:6-20. As a consequence, Phillips never explained to the jury what elements were to be found in which versions of Viola, or how the various versions would need to be combined in order to render obvious any particular asserted claims. The conclusory and generic nature of his obviousness testimony is reflected in the "summary of [his] opinions based on Viola"—"and it's obvious to combine any of the prior art to fill any gaps, for example." Tr. 2/8AM 78:4-11. Such vague testimony is legally insufficient to support an obviousness finding. *See Alza*, 464 F.3d at 1290-91; *Schumer*, 308 F.3d at 1315-16.

---

[7] Phillips also offered a brief and conclusory opinion regarding Mosaic: "Q. And does the combination of Mosaic, plus HTML+ render all of the claims obvious …? A. I believe so." Tr. 2/8AM 78:25-79:3. Such conclusory testimony, however, is insufficient to establish obviousness as a matter of law. *Alza*, 464 F.3d at 1290-91; *Schumer*, 308 F.3d at 1315-16.

But even if Phillips had offered clear testimony that, for example, one of the May 1993 versions of Viola combined with the October 1993 Alpha version of Viola rendered obvious particular asserted claims—though he did not—that testimony would still fail to support an obviousness finding for at least two reasons. First, as shown above, none of the Viola code bases satisfies the "embed text format specifies the location of at least a portion of an object", "type information to identify and locate," "distributed application," and "HTML tags" limitations required by the asserted claims. The failures of proof with respect to these claim elements therefore cannot be cured by any combination of the various Viola versions. *See Honeywell Int'l, Inc. v. United States*, 609 F.3d 1292, 1300-01 (Fed. Cir. 2010). Second, the development of the Viola code bases over time in fact teaches away from combining the May and October 1993 versions in the manner that Defendants might suggest: as shown above, key elements in Phillips' invalidity analysis were abandoned before Viola was allegedly reduced to practice in October 1993. The highly relevant TSM test—with respect to which Phillips offered no testimony—thus points away from an obviousness finding on these grounds. *See Ortho-McNeil*, 520 F.3d at 1364.

b)      "MediaView"

Phillips also offered an obviousness opinion with respect to the MediaView system: "[a]s far as MediaView is concerned, all asserted claims are obvious, and it's obvious to combine … MediaView with a CERN browser to satisfy the HTML issue." Tr. 2/8AM 78:12-15. Phillips thus suggested that the only limitation missing from MediaView was "HTML tags," and that combining MediaView with the CERN browser would have rendered this limitation obvious. This testimony fails to support an obviousness finding for at least three reasons.

First, no reasonable jury could find that "HTML tags" is the only claim element missing in MediaView. Phillips never explained, for example, how MediaView satisfies the "embed text format" or "type information" limitations. Although he offered some conclusory testimony that

19

there is an embed text format ("ViewCell") and type information ("TIFF button") in MediaView, Phillips offered no explanation of how: 1) the "ViewCell" embed text format specifies the location of at least a portion of an object; 2) the "TIFF button" type information is used to identify and locate executable applications; 3) the "TIFF button" type information is associated with objects; or 4) MediaView invokes an executable application in response to the identifying of the "ViewCell" embed text format. Tr. 2/8AM 69:24-70:14; 71:1-73:21. MediaView is therefore missing multiple limitations of each of the asserted claims—not just "the HTML issue"—and Phillips never testified that these shortcomings could be remedied by combining MediaView with the CERN browser, or any other prior art.[8]

Second, even if "HTML tags" were the only element missing, and even if combining MediaView with a CERN browser would have cured that deficiency, the most relevant and powerful—and uncontroverted—evidence at trial demonstrated that such a combination would not have been obvious to one of ordinary skill in the art at the time of the invention:

> Q. Now, Dr. Phillips, you worked on MediaView for about six years; you had a Ph.D.; you were at one of the … foremost research laboratories in the United States; and nobody in the world was a bigger expert on MediaView that you; and you never combined MediaView with the CERN web browser, did you?
> A. I did not.

---

[8] Moreover, nine of the thirteen asserted claims require "identify[ing] and locat[ing] an executable application external to the file"; and "automatically invok[ing] the executable application" (and minor variations thereof). Phillips identified two potential executable applications for use with MediaView—Mathmatica and the 3D line viewer—neither of which satisfy these claim requirements. For Mathmatica, Phillips never opined that MediaView automatically invokes the Mathematica executable application as required by the claims. Rather, to invoke Mathmatica, Phillips' testified that the user is required to click to link, just as with the prior art "viewer applications" discussed in the patents. Tr. 2/8AM 72:1-11; JDX5; PX0001.0014 at 3:3-8. For the 3D line viewer, Phillips never opined that the 3D line viewer executable application was external to the file as required by the claims. Rather, Phillips' testified that the 3D line viewer was part of the file. Tr. 2/8AM 73:7-21 (testifying that the 3D line viewer application is "a custom component that the user can insert *in a document*") (emphasis added). Phillips never explained how these missing limitations could be met—because they could not—by combining MediaView with a CERN browser. Tr. 2/8AM 78:12-15.

Tr. 2/8AM 91:25-92:6, 88:23-89:2, 90:7-16. Again, therefore, the highly relevant TSM test—with respect to which Phillips offered no testimony—points away from an obviousness finding on these grounds. *See Ortho-McNeil*, 520 F.3d at 1364; *Star*, 655 F.3d at 1376.

### 3. There is legally insufficient evidence of the required consideration of all objective evidence of nonobviousness.

The preceding discussion would easily justify this Court's conclusion, in the "exercise [of its] independent judgment" on the "ultimate conclusion of obviousness," that Defendants failed to satisfy their clear and convincing burden to prove that any of the asserted claims are invalid under § 103. *See Ashland*, 776 F.2d at 291. But even if the Court finds that Defendants made out a prima facie case of obviousness on one or more of the asserted claims, the objective evidence of nonobviousness requires JMOL on this issue. The Federal Circuit has repeatedly explained that such objective evidence, also referred to as "secondary considerations," can "often be the most probative and cogent evidence" relating to the obviousness inquiry. *Ruiz*, 234 F.3d at 667; *Star*, 655 F.3d at 1375; *W.L. Gore*, 721 F.2d at 1555 ("may be the most pertinent, probative, and revealing evidence available"). Indeed, such evidence can "be entitled to such weight that it may be decisive." *Ashland*, 776 F.2d at 306. And again, the law requires that the fact finder take all such evidence into account. *Id.* at 307; *Simmons*, 739 F.2d at 1574-76; *Ruiz*, 234 F.3d at 664. The objective evidence of nonobviousness in this case requires JMOL for two reasons.

First, the objective evidence of nonobviousness admitted at trial was the most pertinent, probative, and revealing evidence available to the jury—and it was unrebutted. Phillips offered one conclusory sentence with respect to secondary considerations: "I did consider those and, still, I find that Viola is obvious." Tr. 2/8AM 50:8-13. Martin, in contrast, offered extensive testimony on the objective and powerful evidence that the asserted claims were not obvious:

**Failure of others.** Defendants brought in a parade of web-related pioneers to testify regarding

21

the work they had dedicated to the public. Tr. 2/6PM 176:16-235:19; Tr. 2/7AM 38:16-131:10. Aside from its obvious emotional appeal, that testimony did not support Defendants' invalidity case. Instead it demonstrated that all of these pioneers, operating with every resource and incentive in the relevant timeframe, had failed to come up with the invention in the asserted claims. Tr. 2/8PM 60:21-69:3; Tr. 2/6PM 218:10-14; Tr. 2/7AM 122:21-24; Tr. 2/8AM 91:25-92:6. Moreover, as shown above, Phillips failed to make the combination he now claims is obvious, even though he was intimately familiar with the prior art at issue and far more able than one of ordinary skill in the art. **Industry praise.** Among other evidence, the World Wide Web Consortium (W3C), a group of hundreds of technology companies, had "recognized that the invention was important," describing it as "essential" to their work on the web. Tr. 2/8PM 69:4-72:15; PX444. In light of this recognition, the W3C and other industry players sought multiple reexaminations of the '906 patent. And that patent survived those reexaminations—including a rare director-ordered reexamination[9]—involving some twenty-five individual examiners, addressing Viola among other prior art. Tr. 2/8PM 72:16-73:25. **Teaching away.** Marc Andreessen, a developer of Mosaic, had expressed his belief that it was inadvisable to provide browser support for embedded interactive objects. Tr. 2/8PM 63:7-25; JDX148.

Second, the millions of dollars in licensing revenue generated by the patents-in-suit is highly relevant object evidence of nonobviousness—that the jury never had an opportunity to consider. Tr. 2/8PM 12:8-16:13. The Federal Circuit has made clear that patent licenses worth millions of dollars are highly probative of nonobviousness. In *WMS Gaming*, for example, the court found that licenses worth "over $2 million" were a "strong indicia that the patent is not

---

[9] According to the PTO Official Gazette, http://www.uspto.gov/news/og/index.jsp, between 1995 and 2012 eighty-four patents have been subject to director-ordered reexamination. Never before has one of those patents been invalidated by a jury.

obvious." 184 F.3d at 1360. And in *Star*, the court found that licenses "which cost millions of dollars" supported the entrance of JMOL overturning a jury verdict on obviousness. 655 F.3d at 1376. The licenses at issue here—including in particular the Microsoft license—are worth far more than those in *WMS Gaming* and *Star*. PX456; PX453; PX454; PX455; PX66; PX65. And given the fact that these are licenses to the very patents-in-suit, there is clearly "a 'nexus' between [the licenses] and the secondary consideration of licensing." *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72, 2010 U.S. Dist. LEXIS 143587, at *9 (E.D. Tex. Sept. 27, 2010); Tr. 2/8PM 14:1-21. Because this highly probative evidence of nonobviousness was excluded at trial, the jury was precluded—as a matter of law—from making a legally supportable determination that the asserted claims were obvious.[10] *See Ashland*, 776 F.2d at 306-07; *W.L. Gore*, 721 F.2d at 1555; *Ruiz*, 234 F.3d at 664; *Simmons*, 739 F.2d at 175-76; *see also Rothman*, 556 F.3d at 1322 (approving district court's charge "that the jury 'must consider' objective indicia of nonobviousness, such as … licensing activity").

---

[10] The Court excluded the licensing evidence on the ground "that the probative value of this is outweighed by the prejudicial effect that it would have on—within the context of the case." Tr. 2/8PM 15:17-19. Because of the trial's unusual procedural posture, however, the jury was presented with only one question: whether the asserted claims were invalid. The only possible prejudicial effect that the licensing evidence could have had, therefore, was to suggest that the claims were valid. The secondary-considerations case law cited above, however, makes clear that this is precisely the inference that the fact-finder is permitted to draw from such evidence. *See WMS Gaming*, 184 F.3d at 1360; *Star*, 655 F.3d at 1375; *Rothman*, 556 F.3d at 1322; *DataTreasury*, 2010 U.S. Dist. LEXIS 143587, at *9-10; *see also Datapoint Corp. v. Picturetel Corp.*, No. 3:93-CV-2381, 1998 U.S. Dist. LEXIS 1145, at *6 (N.D. Tex. Jan. 23, 1998). It should be noted that the Microsoft license is particularly probative of the issue in this case, as Microsoft entered that license after the Federal Circuit had sent Microsoft's litigation with Eolas back down for an invalidity trial on the very prior art at issue here. There is thus an unusually strong nexus between the Microsoft license and the nonobviousness of the patents-in-suit.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT A NEW TRIAL.

### A.    A New Trial Is Proper When the Verdict Is Insufficiently Supported, Reflects Confusion, or Was Influenced By Passion or Prejudicial Error.

Motions for a new trial are also governed by the law of the regional circuit, and in the Fifth Circuit a new trial is proper if the Court "suspects that the jury verdict reflects confusion," *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1538 (5th Cir. 1984), or that it was "influenced by passion and prejudice," *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 276 (5th Cir. 1984), or if the Court "'finds the verdict is against the weight of the evidence, … the trial was unfair, or prejudicial error was committed in its course.'" *Function Media*, 2011 U.S. Dist. LEXIS 101998, at *5; *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985); Fed. R. Civ. P. 59(a)(1). The standard for a new trial is lower than that for JMOL, because a "verdict can be against the 'great weight of the evidence,' and thus justify a new trial, even if there is substantial evidence to support it.'" *Whitehead*, 163 F.3d at 270. Furthermore, in deciding to grant a new trial, the Court "need not take the view of the evidence most favorable to the verdict winner, … but may weigh the evidence." *Id.* In short, the Court "may and should exercise a sound discretion" in deciding whether to grant a new trial on any issue.[11] *Id.*

### B.    If the Court Decides Not to Grant JMOL, It Should Grant a New Trial for One of Three Reasons.

If the Court elects not to grant JMOL on invalidity, a new trial should be granted for one of at least three reasons: 1) the jury was confused, and based its verdict on passion and prejudice, rather than on the relevant evidence; 2) there is no clear and convincing proof of invalidity; and 3) exclusion of the patent licenses precluded consideration of critical nonobviousness evidence.

---

[11] Rule 59 provides that the Court may "grant a new trial on all or some of the issues" tried to the jury. Fed. R. Civ. P. 59(a). The Court could thus decide to grant JMOL on anticipation and a new trial on obviousness, for example, or JMOL on obviousness and a new trial on anticipation.

### 1.    The jury was confused, and based its verdict on passion and prejudice rather than on the relevant evidence.

Defendants set out to sway the jury with a case based on passion, prejudice, and confusion, and they succeeded. Though they complained about the time constraints for trial, they elected to spend the majority of their time with witnesses who had little or nothing to offer in support of their expert's cursory invalidity opinions. Rather than focusing on the relevant prior art and its relation to the asserted claims, Defendants spent much of their trial time proving that many early pioneers of web-related technology—implicitly, the good guys—dedicated their work to the public, thus ensuring that the Internet would be "free of charge." Tr. 2/7AM 119:5-6. This theme ran throughout the testimony of Defendants' first four witnesses:

> **Eric Bina**: "And did NCSA Mosaic release the versions of the Mosaic web browser and dedicate them to the public or release them freely on the Internet? A. Yeah. All of them were free for non-commercial use." Tr. 2/6PM 182:9-13. Q. "I think I covered this before, but Mosaic was freely released to the public, correct? A. … Yes." Tr. 2/6PM 207:3-5.
> **Tim Berners-Lee**: "And did you apply for a patent for this invention? A. No. I didn't. … Q. Okay. So who owns the web? A. We—the public. … Q. Okay. And is the web that we all own, is it interactive? A. I think it's pretty interactive, yeah." Tr. 2/7AM 45:12-47:8.
> **Dave Raggett**: "Did you intend to keep the embed tag all to yourself, sir? A. No. Q. What did you intend? A. To be public, for any—used by anybody." Tr. 2/7AM 130:4-8. "Q. And sir, if you were the first person to come up with the embed tag, why didn't you seek a patent on it? A. Well, there is a long tradition of sharing, so we were working together collaboratively to share ideas freely and openly. And we wanted to make it possible for anybody to implement web technologies free of charge." Tr. 2/7AM 118:24-119:6.
> **Scott Silvey**: "I think that it would be important for the jury to know that, you know, we came up with a lot of ideas that are—that are relevant here, and we shared them freely with the public. …We were basically giving something back for the public good. And we derived a lot of personal satisfaction from doing that, and we'd like to make sure that this technology remains open to the web." Tr. 2/7AM 134:13-24.

None of this testimony had anything to do with the validity of the asserted claims; it was offered simply to encourage a verdict based on the feeling that praise-worthy people dedicate their work to the public, and "make it possible for anybody to implement web technologies free of charge."

Tr. 2/7AM 118:24-119:6. In short, it was offered to encourage an improper verdict based on passion and prejudice, rather than on the relevant evidence. *See Whitehead*, 163 F.3d at 276.

The fact that Defendants crafted an "us-versus-them" atmosphere of emotion in the trial's opening hours would perhaps have provided insufficient justification, in itself, for a new trial. But the fact that they crafted an atmosphere of confusion in the trial's closing hours—and plainly succeeded, ultimately, in confusing the jury—surely does justify that result. *See Nissho-Iwai*, 729 F.2d at 1538. Following the extensive and multi-day testimony from these "public-minded" web pioneers, Defendants finally put on their expert, Phillips, who then spent some thirty minutes discussing Viola, the principal prior art reference in this case. Tr. 2/8AM 38:3-62:18. But in that discussion, as shown above, Phillips obscured the differences between the Viola code bases that had been modified over time, offered vague and conclusory testimony with respect to critical claim limitations, and failed to link any element of any claim to any evidence of Viola's function, operation, or structure in any admitted exhibit. In short, Phillips failed to show the jury how any Viola-related evidence in the record matched up with the claim limitations.[12]

This testimony alone surely left the jury confused as to what the Viola-related evidence demonstrated, and as to whether it in fact supported Phillips' conclusory opinions. And that confusion was only compounded by Defendants' final argument. Aware that Phillips had failed to point to the relevant Viola code, counsel urged the jury in closing: "Write this down, because I want you to see" the evidence, including "most importantly, 272 through 295 are what all of this code is we've presented to you." Tr. 2/9 101:7-22. Counsel then turned to a slide showing a

---

[12] Defendants may suggest now that the trial-time constraints precluded them from offering more detailed testimony, but that is plainly not true. They made a considered decision to spend hours of trial time with witnesses who could testify only as to the work they had dedicated to the public, and to spend minutes of trial time with the only witness who could provide the rigorous, element-by-element testimony required by law to invalidate the asserted claims.

snippet of Viola code and offered new "testimony" on a critical element of Defendants' case: "They also said yesterday Viola doesn't have type information. Look at this slide. You can read this. TYPE=percent. TYPE=radio. … That page is filled with type information. No one can fool you and say Viola didn't have TYPE=. You have the code in front of you." Tr. 2/9 102:25-103:8. Considering that the "type information" counsel asked the jury to consider is completely unrelated to the only type information Phillips ever suggested satisfied the claims (i.e., Plot.V), this argument was misleading, unsupported, and could only have further confused the jury.[13]

And in fact it did further confuse the jury. Responding to counsel's exhortations to write down the relevant exhibit numbers, and then to look at the code in those exhibits, the jury sent a note during deliberations asking for "a computer to view a CD of JDX 272 through 275." Tr. 2/9 115:1-2. The request itself reflected serious confusion on two levels, as: 1) the jury plainly could make no sense of the relevant exhibits as they had been admitted; and 2) the jury asked for two exhibits—JDX273 and 275—that had never been admitted. Tr. 2/9 119:6-12. Significantly, this confusion was never remedied, because the jury returned its verdict before it was able to view the code upon which Defendants' case rested. Tr. 2/9 131:4-7. Furthermore, even if the jury had been able to view this critical evidence, there is no reason to believe that would have remedied its confusion. Tellingly, after instructing the jury to write down these exhibit numbers and review these exhibits, Defendants' counsel then objected to the jury viewing any of the Viola code on the CDs: "If they're trying to use the code thinking that they're going to get something they're not going to get, then that disappointment could be unfairly prejudicial." Tr. 2/9 126:16-20. In short, Defendants never showed the jury the code or any other evidence underlying their

---

[13] It is also significant that this confusing attorney "testimony" was proffered in the reserved time of Defendants' closing argument, after Plaintiffs' closing remarks had concluded. As such, Plaintiffs had no avenue to rebut those erroneous and misleading assertions.

principal invalidity argument, and even objected to the jury viewing that code on the ground that the jury would be disappointed by what it saw. In light of these facts, it is reasonable to conclude that the jury based its verdict not on the relevant evidence—which it was never shown—but on the passion and prejudice generated by the parade of web pioneers testifying about their efforts to ensure that the Internet would always be available free of charge.

If the Court elects not to grant JMOL, a new trial is appropriate in these circumstances. *See Nissho*, 729 F.2d at 1538; *Whitehead*, 163 F.3d at 276; *see also Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 281-84 (5th Cir. 1975); *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233, 1242 (5th Cir. 1985); *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 778 (5th Cir. 2009).[14]

## 2.      There is no clear and convincing proof of invalidity.

Even in the absence of jury confusion, or the influence of any passion or prejudice, the failures of proof that justify JMOL, as shown above, also justify a new trial. Consideration of Plaintiffs' countervailing evidence further confirms this conclusion. *Whitehead*, 163 F.3d at 270.

With respect to anticipation, Defendants failed to satisfy their burden to offer clear and convincing evidence that any single version of Viola satisfied every element of any claim. Tr. 2/8AM 38:6-20. Plaintiffs, on the other hand, offered detailed expert testimony distinguishing the various versions where relevant, and demonstrating that every version of Viola was missing certain elements. Tr. 2/8PM 37:8-18, 44:9-20, 49:1-7, 51:9-14. Defendants also offered no clear and convincing evidence that any version of Viola satisfied the "embed text format specifies the

---

[14] Defendants may point out that Plaintiffs did not object to the "TYPE=" testimony of Defendants' counsel during closing arguments. Plaintiffs, however, do not argue that a new trial is justified by that improper testimony; they argue that a new trial is justified by the jury's obvious confusion regarding Defendants' critical underlying evidence—which confusion is explained by Defendants' overall trial strategy, including the improper testimony at closing. *See Nissho*, 729 F.2d at 1538 (approving *sua sponte* grant of new trial when court suspected jury confusion). In any event, a new trial is proper in the Fifth Circuit even in the absence of relevant objection "where the interest of substantial justice is at stake." *Edwards*, 512 F.2d at 286.

location of at least a portion of an object", "type information," "distributed application," and "HTML tags" elements. Tr. 2/8AM 127:16-22, 57:10-23, 58:9-15. Plaintiffs, on the other hand, offered detailed expert testimony explaining how Viola worked, what these elements meant, and why they were not disclosed in the prior art. Tr. 2/8PM 36:8-39:24, 51:9-14.[15] The great weight of the evidence thus confirms that Defendants failed to meet their rigorous burden under § 102.

With respect to obviousness, Defendants offered no clear and convincing evidence that the various versions of Viola could be combined in such a way as to render the asserted claims invalid, or that MediaView could be combined with a CERN browser in such a way as to render the claims invalid. Tr. 2/8AM 78:2-15. And they offered no substantive testimony at all on the TSM test or the objective evidence of nonobviousness. Tr. 2/8AM 50:8-13. Plaintiffs, on the other hand, offered detailed expert testimony explaining why Viola and MediaView did not render any claims obvious, and how this conclusion was confirmed by the overwhelming and undisputed objective evidence of nonobviousness. Tr. 2/8PM 59:13-74:24. The great weight of the evidence thus confirms that Defendants also failed to meet their rigorous burden under § 103.

### 3. Exclusion of the licenses to the patents-in-suit precluded consideration of critical nonobviousness evidence.

The Court's exclusion of Plaintiffs' license-related evidence constitutes a third reason to grant a new trial as an alternative to JMOL. *See QPSX Devs. 5 PTY Ltd. v. Nortel Networks, Inc.*,

---

[15] Considering "type information," for example, Phillips offered only the conclusory assertion that this "would be the name, Plot.V, that is at the end of the information after the VOBJF." Tr. 2/8AM 127:21-22. Martin, on the other hand, explained in detail that "what Viola does is whatever name is given between the VOBJF tag, it simply goes and gets that file and does whatever that file tells it to do. It treats that file as a program. And the program can do anything....Whatever it does, Viola attempts to run that program." Tr. 2/8PM 36:11-19. And this fails to satisfy the limitation in part because the "requirement to utilize type information means that the browser has to make a choice. It has to get the type information and match it to something. It has to know that it's this type of object versus that type of object as opposed to simply taking an instruction to go run some program on the disk drive." Tr. 2/8PM 37:12-18.

No. 2:05-CV-268, 2008 U.S. Dist. LEXIS 21076, at *2-3 (E.D. Tex. Mar. 18, 2008) (noting that "substantial errors in [the] rejection of evidence" may be grounds for a new trial). The Court found that the probative value of this evidence was "outweighed by the prejudicial effect that it would have … within the context of the case." Tr. 2/8PM 15:17-19. While it is possible that license-related evidence could have a prejudicial effect in the context of questions involving infringement or damages, the only question before this jury was whether the patents-in-suit were invalid. The only prejudicial effect that the licensing evidence could have had in this case, therefore, was to suggest that the claims were valid. And as the secondary-considerations case law cited above makes clear, that is precisely the inference that the fact-finder is permitted to draw from such evidence. *See WMS Gaming*, 184 F.3d at 1360; *Star*, 655 F.3d at 1375; *Rothman*, 556 F.3d at 1322; *DataTreasury*, 2010 U.S. Dist. LEXIS 143587, at *9; *Datapoint*, 1998 U.S. Dist. LEXIS 1145, at *6. In any event, the Federal Circuit has repeatedly held that it is legal error to exclude any secondary-considerations evidence from the obviousness calculus. *See Ashland*, 776 F.2d at 306-07; *W.L. Gore*, 721 F.2d at 1555; *Ruiz*, 234 F.3d at 664; *Simmons*, 739 F.2d at 175-76. As shown above, such evidence was excluded here. The Court should thus grant a new trial in which the fact finder will be able to consider the objective evidence of nonobviousness that the patents-in-suit have generated many millions of dollars in licensing revenue.

## III.    CONCLUSION

For all of these reasons, Plaintiffs respectfully ask that the Court grant judgment as a matter of law under Rule 50(b) that the asserted claims are not invalid, or in the alternative that the Court grant a new trial under Rule 59.

Dated: March 12, 2012.                    **MCKOOL SMITH, P.C.**

                                          */s/  Mike McKool*
                                          Mike McKool
                                          Lead Attorney
                                          Texas State Bar No. 13732100
                                          mmckool@mckoolsmith.com
                                          Douglas Cawley
                                          Texas State Bar No. 04035500
                                          dcawley@mckoolsmith.com
                                          Holly Engelmann
                                          Texas State Bar No. 24040865
                                          hengelmann@mckoolsmith.com
                                          **MCKOOL SMITH, P.C.**
                                          300 Crescent Court, Suite 1500
                                          Dallas, Texas 75201
                                          Telephone: (214) 978-4000
                                          Telecopier: (214) 978-4044

                                          Kevin L. Burgess
                                          Texas State Bar No. 24006927
                                          kburgess@mckoolsmith.com
                                          Josh W. Budwin
                                          Texas State Bar No. 24050347
                                          jbudwin@mckoolsmith.com
                                          Gretchen K. Curran
                                          Texas State Bar No. 24055979
                                          gcurran@mckoolsmith.com
                                          Matthew B. Rappaport
                                          Texas State Bar No. 24070472
                                          mrappaport@mckoolsmith.com
                                          J.R. Johnson
                                          Texas State Bar No. 24070000
                                          jjohnson@mckoolsmith.com
                                          **MCKOOL SMITH, P.C.**
                                          300 West Sixth Street, Suite 1700
                                          Austin, Texas 78701
                                          Telephone: (512) 692-8700
                                          Telecopier: (512) 692-8744

Robert M. Parker
Texas State Bar No. 15498000
rmparker@pbatyler.com
Robert Christopher Bunt
Texas Bar No. 00787165
rcbunt@pbatyler.com
Andrew T. Gorham
Texas State Bar No. 24012715
tgorham@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

**ATTORNEYS FOR PLAINTIFFS
THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA AND EOLAS
TECHNOLOGIES INCORPORATED**

## CERTIFICATE OF SERVICE

Pursuant to Local Rule CV-5(a)(7), the undersigned certifies that the foregoing document was filed electronically on March 12, 2012.  As such, counsel for Plaintiffs has served this Motion in electronic form on all counsel who have consented to electronic service.

*/s/ Josh Budwin*
Josh Budwin