**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| EOLAS TECHNOLOGIES INCORPORATED and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | § § § § | |
| Plaintiffs, | § § | CASE NO. 6:09-CV-00446-LED |
| vs. | § § | |
| ADOBE SYSTEMS INC., AMAZON.COM INC., CDW CORPORATION, CITIGROUP INC., THE GO DADDY GROUP, INC., GOOGLE INC., J.C. PENNEY CORPORATION, INC., STAPLES, INC., YAHOO! INC., and YOUTUBE, LLC., | § § § § § § § § | JURY TRIAL |
| Defendants. | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) THAT THE ASSERTED CLAIMS OF THE PATENTS-IN-SUIT ARE NOT INVALID, OR IN THE ALTERNATIVE FOR A NEW TRIAL UNDER RULE 59 (DKT. 1367)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT IN REPLY .............................................................................................................. 2

I. THE COURT SHOULD GRANT JMOL ON INVALIDITY ........................................... 2

    A. Every Ground for JMOL on Anticipation and Obviousness
       Was Preserved. ............................................................................................ 2

    B. JMOL Should Be Granted as to Obviousness. .......................................... 2

       1. The objective evidence of nonobviousness requires
          JMOL. ............................................................................................. 2

       2. There is insufficient evidence of obviousness based
          on Mosaic. ..................................................................................... 4

       3. There is insufficient evidence of obviousness based
          on MediaView. .............................................................................. 5

       4. There is insufficient evidence of obviousness based
          on Viola. ......................................................................................... 7

    C. JMOL Should Be Granted as to Anticipation. .......................................... 8

       1. The single-reference issue requires JMOL. ................................. 8

       2. Elements are missing even from an "amalgam" of
          Viola references. ........................................................................... 9

II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT A
    NEW TRIAL. ..................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agrizap, Inc. v. Woodstream Corp.*,
  520 F.3d 1337 (Fed. Cir. 2008)..................................................................................................3

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001)..................................................................................................4

*Ashland Oil v. Delta Resins & Refractories*,
  776 F.2d 281 (Fed. Cir. 1985)....................................................................................................3

*The Barbed Wire Patent*,
  143 U.S. 275, 286-92 (1892) .....................................................................................................5

*Blackboard, Inc. v. Desire2Learn, Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009)..................................................................................................2

*Dystar Textilfarben GmbH v. C.H. Patrick Co.*,
  464 F.3d 1356 (Fed. Cir. 2006)..................................................................................................3

*Enzo Biochem, Inc. v. Calgene, Inc.*,
  188 F.3d 1362 (Fed. Cir. 1999)..................................................................................................4

*Eolas Techs., Inc. v. Microsoft Corp.*,
  399 F.3d 1325 (Fed. Cir. 2005).............................................................................................8, 9

*Honeywell Int'l, Inc. v. Nikon Corp.*,
  672 F. Supp. 2d 638 (D. Del. 2009)...........................................................................................4

*i4i Ltd. P'ship v. Microsoft Corp.*,
  670 F. Supp. 2d 568 (E.D. Tex. 2009).......................................................................................8

*In re GPAC Inc.*,
  57 F.3d 1573 (Fed. Cir. 1995)....................................................................................................4

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)...................................................................................................................5

*Motorola, Inc. v. Interdigital Tech. Corp.*,
  121 F.3d 1461 (Fed. Cir. 1997)..................................................................................................4

*Muniauction, Inc. v. Thomson Corp.*,
  532 F.3d 1318 (Fed. Cir. 2008)..................................................................................................4

*Newell Cos. v. Kenney Mfg. Co.*,
 864 F.2d 757 (Fed. Cir. 1988) ..................................................................................................3

*Rothman v. Target Corp.*,
 556 F.3d 1310 (Fed. Cir. 2009) ................................................................................................3

*Schumer v. Lab. Computer Sys.*,
 308 F.3d 1304 (Fed. Cir. 2002) ................................................................................................4

*Spreadsheet Automation Corp. v. Microsoft Corp.*,
 587 F. Supp. 2d 794 (E.D. Tex. 2007) ......................................................................................4

*W. Union Co. v. MoneyGram Payment Sys.*,
 626 F.3d 1361 (Fed. Cir. 2010) ................................................................................................2

*WMS Gaming Inc. v. Int'l Game Tech.*,
 184 F.3d 1339 (Fed. Cir. 1999) ................................................................................................3


**OTHER AUTHORITIES**

FED. R. CIV. P. 50 ............................................................................................................................2

Rigorous evidence is required to invalidate a patent claim. Defendants' JMOL response confirms that they could not marshal such evidence—because the claims are not invalid—and resorted time and again to misdirection in their efforts to hide their evidentiary failures.

**Anticipation.** Attempting to fill a hole in their expert's Viola-related testimony, Defendants argued at closing that a never-before-cited document satisfied the "type information" element. They now suggest this was "proper" because it "identified [type information] for the Doodle.v application example." But this so-called "type information" is part of an INPUT tag, DDEM3, and there is no testimony that all or part of any INPUT tag satisfies any claim limitation. Phillips mentioned only the VOBJF tag, and in that context, the Court precluded him from offering testimony about "type information" for Doodle.v. Dkt. 1384 at 29; Tr. 2/8AM 15:6-18:9. Defendants' attempt to circumvent the Court's holding on this point was improper. But in any event, it did not save Defendants' anticipation case. Phillips explicitly treated the "entire collection" of various Viola references as a single piece of prior art—and then conceded on cross that this was inappropriate. Tr. 2/8AM 38:6-20, 95:25-96:8. Defendants argue briefly that the *Eolas* and *i4i* cases support such an "entire collection" approach to anticipation, but they fundamentally mischaracterize the holdings in those cases. Dkt. 1384 at 16.

**Obviousness.** Implicitly acknowledging the failure to establish anticipation, Defendants change direction in their response, and assert that the Viola arguments are now "[i]rrelevant" because MediaView and Mosaic obviousness arguments are in fact "at the heart of [their] invalidity case." Dkt. 1384 at 1, 13. Defendants' Mosaic argument, however, is supported by three words of conclusory expert testimony: "I believe so." Tr. 2/8AM 79:3. Even more troubling, their MediaView argument is supported by a fabrication: Defendants repeatedly point

1

to "MediaView source code" as providing the necessary substantial evidence of invalidity, but in fact there is no such code in the record. Dkt. 1384 at 4-8; Tr. 2/8AM 64:21-22; JDX184.

These and the many other critical evidentiary deficiencies addressed below, and in Plaintiffs' opening brief, confirm that either JMOL or a new trial is necessary in this case.

**ARGUMENT IN REPLY**

**I.    THE COURT SHOULD GRANT JMOL ON INVALIDITY.**

   **A.    Every Ground for JMOL on Anticipation and Obviousness Was Preserved.**

Defendants open their responsive brief with the near-frivolous argument that Plaintiffs' motion "includes grounds not preserved under Rule 50(a)." Dkt. 1384 at 2. Prior to submission of this case to the jury, Plaintiffs moved for JMOL on the grounds that legally insufficient evidence supported a finding of either anticipation or obviousness on any basis, and with respect to four prior art references in particular—individually or in any combination: Viola, MediaView, Mosaic, and the embed tag (HMTL+). Tr. 2/8AM 140:8-155:11; Dkt. 1338 at 3-6. The law is clear that even a "cursory motion" raising JMOL grounds of anticipation or obviousness with respect to particular prior art references is sufficient to preserve all related anticipation or obviousness arguments as to those references. *W. Union Co. v. MoneyGram Payment Sys.*, 626 F.3d 1361, 1367-68 (Fed. Cir. 2010) (applying Fifth Circuit law); *see also Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371 (Fed. Cir. 2009) (same). Every JMOL ground asserted in Plaintiffs' Rule 50(b) motion, Dkt. 1367 at 1-4, was thus plainly preserved under Rule 50(a).

   **B.    JMOL Should Be Granted as to Obviousness.**

      **1.    The objective evidence of nonobviousness requires JMOL.**

In a departure from their Viola-focused closing argument at trial, Tr. 2/9 99:24-110:22, Defendants now assert that the Viola arguments are "[i]rrelevant" because obviousness based on MediaView and Mosaic is "at the heart of [their] invalidity case." Dkt. 1384 at 1, 13. If that is

2

true, then the objective evidence of nonobviousness takes on even greater significance. Plaintiffs' opening brief demonstrated that: 1) the objective evidence of nonobviousness admitted at trial was the most pertinent, probative, and unrebutted evidence available to the jury; and 2) additional evidence presented by Plaintiffs was excluded from consideration, precluding any permissible conclusion of obviousness as a matter of law. Dkt. 1367 at 17-18, 21-23.

In response, Defendants do not dispute that they failed to offer any rebuttal to the extensive evidence of nonobviousness admitted at trial. Dkt. 1384 at 11-13. Nor do they dispute that an obviousness determination is unsupportable—as a matter of law—when the fact-finder has not considered all of the "objective evidence presented by the patentee." *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999).[1] Instead they cite to cases suggesting that nonobviousness evidence will not overcome "overwhelming" proof of obviousness. *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008).[2] These cases do not help Defendants. As demonstrated below and in the opening brief, there is no "overwhelming" proof of obviousness here. Dkt. 1367 at 18-21. And in any event, these cases confirm that even when "a very strong prima facie case of obviousness" has been made, all of the nonobviousness evidence still "must be considered" before an obviousness conclusion can be reached. *Newell*, 864 F.2d at 768. Because the jury was precluded from considering the objective license-related evidence of nonobviousness presented by Plaintiffs, JMOL as to obviousness is required.[3]

---

[1] *See also Ashland Oil v. Delta Resins & Refractories*, 776 F.2d 281, 306 (Fed. Cir. 1985) ("all relevant evidence going to the issue of obviousness … must have been considered prior to reaching a conclusion on obviousness"); *Rothman v. Target Corp.*, 556 F.3d 1310, 1322 (Fed. Cir. 2009) (approving district court's charge "that the jury 'must consider' objective indicia of nonobviousness, such as … licensing activity"); Dkt. 1367 at 17-18.

[2] *See also Dystar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, 1371 (Fed. Cir. 2006) ("the evidence only supports [an obviousness] conclusion"); *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 768 (Fed. Cir. 1988) ("a very strong prima facie case of obviousness"); Dkt. 1384 at 11.

[3] Defendants' "nexus" argument misses on two levels. Dkt. 1384 at 12. First, it is incorrect—there is a clear nexus between the licenses and the asserted claims because the licenses are only for the asserted patents. Dkt. 1367 at 23. Second, it is irrelevant—Defendants' own case law confirms that the "nexus" question simply goes to the weight

### 2. There is insufficient evidence of obviousness based on Mosaic.

Defendants' assertion that "obviousness based on Mosaic with HTML+" was "at the heart of [their] invalidity case," Dkt. 1384 at 1, should tell the Court everything it needs to know about the merits of that case. Phillips' element-by-element testimony on this heart-of-the-case issue is encapsulated in this exchange: "Q. And does the combination of Mosaic, plus HTML+ render all of the claims obvious …? A. **I believe so**." Tr. 2/8AM 78:25-79:3 (emphasis added). Defendants suggest that the Court can ignore the absence of relevant expert testimony because one of Defendants' fact witnesses talked generally about Mosaic, and another talked generally about HTML+. Dkt. 1384 at 10-11. Defendants misapprehend the rigors of proving invalidity. *See Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 1997).

When "testifying on invalidity, an expert must compare the construed claims to the prior art." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1325 (Fed. Cir. 2008) (internal quotes omitted). This comparison must be done on a patent-by-patent, claim-by-claim, and element-by-element basis. *See Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1379 (Fed. Cir. 1999); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). Indeed, a witness providing invalidity testimony must "explain in detail how each claim element is disclosed in the prior art reference." *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1315-16 (Fed. Cir. 2002).[4] Defendants are wrong to argue that expert testimony was not required to

---

accorded to nonobviousness evidence; that evidence still must be considered before an obviousness conclusion can be reached. *See In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995); Dkt. 1384 at 13. The two district court cases cited by Defendants also do not help them. Dkt. 1384 at 12. *Spreadsheet* did not involve obviousness questions, and in *Honeywell* the district court ultimately granted summary judgment on anticipation grounds—so the obviousness question presented here was never presented there. *See Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 800 (E.D. Tex. 2007); *Honeywell Int'l, Inc. v. Nikon Corp.*, 672 F. Supp. 2d 638, 647 (D. Del. 2009).

[4] Defendants suggest that Phillips need not have "explained 'how' [the prior art] satisfies the … elements." Dkt. 1384 at 5, 8-9. The case law makes clear, however, that Phillips was not only required to provide such "how" explanations, but to provide them "in detail." *Schumer*, 308 F.3d 1304, 1315-16; Dkt. 1367 at 5, 16-17.

establish invalidity in this case.[5] Dkt. 1367 at 5, 17. But even if they were right, it would make no difference. A claim may not be invalidated in the absence of testimony providing an element-by-element comparison of the claims as construed to the prior art at issue. And there is no such testimony anywhere in this trial record—from expert or fact witnesses—with respect to either Mosaic or HTML+. Nothing in Defendants' response suggests otherwise. Dkt. 1384 at 4-5.

### 3. There is insufficient evidence of obviousness based on MediaView.

Defendants' argument that there is substantial evidence of obviousness based on MediaView, Dkt. 1384 at 4-10, suffers from at least three critical flaws: first, it rests on flat-out fabrications of the record evidence; second, it depends on a shell-game analysis of two separate modes of the reference's operation; and third, it fails to show that any of the claim elements highlighted in Plaintiffs' opening brief are satisfied by the reference. Dkt. 1367 at 19-20.

First, Defendants' MediaView argument rests on fabricated evidence. Defendants repeatedly assert that the "source code for MediaView" supports the verdict, and argue that Phillips "went through an element-by-element claim analysis at a source-code level." Dkt. 1384 at 4-8 (citing "source code" seven times). This is false—there is no MediaView source code in the record. Indeed, Phillips testified that there is "no source code for MediaView 2 left. I have no idea what happened to it." Tr. 2/8AM 64:21-22. Phillips further made clear that his analysis was not at a source-code level. Tr. 2/8AM 65:1-9. Defendants' repeated claim that the verdict is supported by source-code evidence is thus a fabrication. But it gets worse. Defendants also

---

[5] Defendants suggest that *KSR* stands for the proposition that obviousness in this case "may be proved through common sense." Dkt. 1384 at 10 n.5. They are wrong. *KSR* simply warned against the application of "[r]igid preventative rules that deny factfinders recourse to common sense." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007). It did not come close to holding that—in the absence of relevant expert testimony—this "jury could understand for itself using common sense" how the source code from two separate computer programs might have been combined to satisfy every element of every claim asserted in this complex case. Dkt. 1384 at 11. Furthermore, any oral testimony—whether from Defendants' expert or their fact witnesses—is insufficient to invalidate the asserted claims in the absence of corroboration. *The Barbed Wire Patent*, 143 U.S. 275, 286-92 (1892). This is true for the testimony relating to Mosaic, MediaView, and Viola.

5

repeatedly point to a demonstrative, DDEM162, that they say shows "'ViewCell' and 'TIFF button' code" allegedly "excerpt[ed]" from JDX184. Dkt. 1384 at 5, 6, 7. This misleads on multiple levels. First, it is not source code—it is a snippet of formatting information such as used in MediaView documents. Tr. 2/8AM 69:16-21; JDX 5 at 26. Second, it is not excerpted from JDX184—as far as Plaintiffs can tell, it is excerpted from a MediaView 3 document that was created in 2011 and never admitted at trial.[6] The demonstrative snippet upon which Defendants rely to show the existence of an **externally-linking** "TIFF button" is thus nowhere in evidence.

Second, Defendants' MediaView argument is a shell game. As Defendants concede, Phillips testified that MediaView could be used in two separate modes: an internal-component mode in which a "custom" 3D dataset could be "insert[ed] in a document" and then "rotate[d] … within the window," and an external-component mode in which "an external program … called Mathematica" could be opened in a new window by "click[ing]" on a link. Tr. 2/8AM 72:4-73:21; JDX5. The first internal-component mode involves no executable application or object external to the file. The second external-component mode involves something external to the file, but that mode practices the prior art—upon clicking a link, the program is opened and accessed in a new window. Ex. 2; JDX121. Simply adding HTML tags to either mode of operation plainly does not get Defendants to the invention at issue. Defendants' shell game consists of pointing to the first mode as evidence that MediaView satisfies, *e.g.*, the "automatically invoke" element, and pointing to the second mode as evidence that it satisfies, *e.g.*, the "external to the file" elements. Dkt. 1384 at 7-8. But of course the claims require that these elements work together: a browser must automatically invoke an executable application that is external to the file (and in response to an embed text format). PX2. MediaView does not work that way. Dkt. 1367 at 20.

---

[6] Phillips' obviousness opinion was based on MediaView 2, Tr. 2/8AM 64:7-11, and MediaView 2 **will not even open** the MediaView 3 document from which Defendants' snippet was excerpted.

Third, Defendants' MediaView argument fails to fill any of the four holes identified in Plaintiffs' opening brief, Dkt. 137 at 19-20: 1) Defendants cite three "ViewCell" references in the record, but none state that "ViewCell" specifies the location of at least a portion of an object;[7] 2) Defendants cite one "TIFF button" reference in the record, but it does not state that "TIFF button" is used to identify and locate executable applications;[8] 3) Defendants again cite the one "TIFF button" reference in the record, but it does not state that "TIFF button" is associated with objects;[9] 4) Defendants cite one final "ViewCell" reference in the record, but it does not state that an executable application is invoked in response to identifying the "ViewCell."[10] In short, Defendants have identified no evidence, much less clear and convincing evidence, that MediaView satisfies every element but "the HTML issue." Dkt. 1367 at 19.

### 4. There is insufficient evidence of obviousness based on Viola.

Plaintiffs' opening brief demonstrated that there is insufficient evidence of obviousness based on Viola, and Defendants offer only conclusory assertions in response. Dkt. 1367 at 18-19; Dkt. 1384 at 25-26. Critically, Phillips never provided an element-by-element analysis with

---

[7] Dkt. 1384 at 6; Tr. 2/8AM 70:4-11 (Phillips referencing an image not in evidence—"what we're seeing here is the word view cell"); Tr. 2/8AM 70:12-25 (Phillips discussing whether ViewCell corresponds to a location in the document—a different claim limitation); JDX 7 (article noting that the MediaView Cell class "implements the methods needed for cutting, copying, pasting…."). None of these references even specifies what the object is, let alone identifies its location. Defendants also cite JDX5 and Tr. 2/8AM 71:1-14, but those references do not mention "ViewCell," and so cannot possibly show that ViewCell meets this limitation.

[8] Dkt. 1384 at 6; Tr. 2/8AM 71:15-25 (Phillips referencing an image not in evidence—"TIFF button is in this case the type information that MediaView uses"). This reference says nothing about whether or how TIFF button is used to identify and locate anything. Defendants also cite JDX5, JDX184, but neither of these exhibits use or mention "TIFF button" in connection with Mathematica—the only executable application identified by Phillips.

[9] Dkt. 1384 at 7; Tr. 2/8AM 71:15-25 (Phillips referencing an image not in evidence—"TIFF button is in this case the type information that MediaView uses"). This reference says nothing about whether or how TIFF button is associated with objects. Defendants also cite JDX5, JDX7, and JDX121, but while one exhibit mentions buttons, JDX7 at 7, and another TIFF files, JDX5 at 5, none of these exhibits mentions or discusses "TIFF button."

[10] Dkt. 1384 at 7; JDX7 at 3-4 (article noting that the "MediaViewCell class … implements the methods needed for cutting, copying, pasting and writing/reading multimedia components to and from files"). This reference says nothing about whether or how MediaView invokes an executable application in response to identifying the ViewCell. Defendants also cite JDX5 and Tr. 2/8AM 72:1-15, but neither of those references mentions or discusses "ViewCell," and so cannot show that an executable application is invoked in response to identifying the ViewCell.

respect to any particular version of Viola—he treated all the versions as one reference. There is thus no clear evidence supporting the conclusion that any particular version could be combined with any other particular version to render any particular claim obvious. Dkt. 1367 at 18; Tr. 2/8AM 38:6-20, 78:4-11. And nowhere did Phillips testify that any particular Viola reference could be combined with some other piece of prior art for obviousness purposes.

      **C.**      **JMOL Should Be Granted as to Anticipation.**

            **1.**      **The single-reference issue requires JMOL.**

The anticipation question should be an easy one for the Court, which is doubtless why Defendants now assert that the Viola-related arguments are "Irrelevant." Dkt. 1384 at 13. The law requires that "for a claim to be anticipated, every limitation must be found in a single prior art reference." *i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 586-87 (E.D. Tex. 2009). There is no testimony in the record that any single Viola reference contains every limitation of any asserted claim. It is simply not there. Dkt. 1367 at 5-8; Dkt. 1384 at 13-17. Phillips explicitly treated the "entire collection" of Viola references "as a single piece of prior art"—**and then conceded on cross that this approach was "not proper."** Tr. 2/8AM 38:6-20, 95:25-96:8 (emphasis added). Defendants argue that the Federal Circuit approved such an approach in *Eolas*, Dkt. 1384 at 15, but they are wrong. The court addressed two Viola code bases in that appeal—"DX34" (from May 12, 1993) and "DX37" (from May 27, 1993)—and explicitly treated them as separate references for invalidity purposes, ultimately remanding "for proceedings to consider whether DX34 is prior art and, if so, whether it invalidates the '906 patent." *Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1333-35 (Fed. Cir. 2005).[11] Thus,

---

[11] Defendants also misleadingly suggest that this Court approved an "amalgam" approach to anticipation in *i4i*. Dkt. 1384 at 16. They are wrong. The Court based its relevant holding in *i4i* on the conclusion that different versions of a "Rita" program were separate references, and then simply noted that its holding would not change even counter-factually "assuming the amalgam of Rita references" could be considered one reference. 670 F. Supp. 2d at 586-87.

8

as Phillips conceded, the Viola code bases must "be considered one at a time on their own merit." Tr. 2/8AM 95:25-96:8. Defendants cannot point to any such testimony in the record.

### 2. Elements are missing even from an "amalgam" of Viola references.

Nothing in Defendants' response serves to fill the four Viola-related holes identified in Plaintiffs' opening brief. Dkt. 1367 at 8-14. With respect to **"embed text format specifies the location of at least a portion of an object,"** Defendants suggest that Silvey "explained how Viola" satisfied this limitation. Dkt. 1384 at 17. But as shown above, the law requires testimony comparing this claim element as construed to the particular reference at issue. Silvey was not qualified to provide, and did not attempt to provide, such testimony. Tr. 2/7PM 9:1-17; 10:17-11:7. With respect to **"type information to identify and locate,"** Defendants do not dispute that the only "type information" identified by Phillips—"Plot.V … after the VOBJF"—appears nowhere in the Alpha reference that they assert reflects Viola's final reduction to practice.[12] Dkt. 1384 at 17-20. With respect to **"distributed application,"** Defendants do not dispute that Phillips provided only an obviousness opinion. And with respect to **"HTML tags,"** Defendants do not even attempt to argue that "P tag" could satisfy the claim language. Dkt. 1384 at 21.[13]

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT A NEW TRIAL.

Defendants provide no substantive response to two of the three grounds offered by Plaintiffs in support of a new trial: the verdict is against the great weight of the evidence; and

---

[12] Defendants argue that the Federal Circuit in *Eolas* "rejected" the proposition that the Alpha code abandoned the only "type information" identified by Phillips. Dkt. 1384 at 24. They are wrong. In discussing the differences between DX34 and DX37, the Federal Circuit reasoned that "DX37, **which includes the same contested feature** as DX34, represents an improved version of Wei's invention." *Eolas*, 399 F.3d at 1333 (emphasis added). The point here, of course, is that the Alpha code **does not include the same contested feature** as the earlier code bases. Furthermore, nothing in Defendants' response suggests that the name of a file can be "type information."

[13] Defendants' effort to resuscitate their "public knowledge or use" position is somewhat surprising, given their concession to the Court that this is "a 102(g), 103 case … [w]e've never had a 102(b) case." Tr. 2/7PM 145:11-15; Dkt. 1367 at 15. But in any event, Defendants have no answer to a fundamental and intractable problem with their position: Phillips only opined that the "entire collection" of Viola code bases was anticipatory, and there is no evidence that this "entire collection" was ever publicly known or used as such. Dkt. 1367 at 15; Dkt. 1384 at 22.

relevant nonobviousness evidence was excluded. Dkt. 1367 at 28-30. Defendants' new emphasis on the MediaView and Mosaic obviousness arguments "at the heart of [their] case," Dkt. 1384 at 1, only highlights the lack of clear and convincing evidence supporting the verdict—Phillips' MediaView 2 opinion centered on an excerpt from a MediaView 3 document that is not in the record, and his Mosaic-combined-with-HTML+ opinion centered on the three words "I believe so." Tr. 2/8AM 78:25-79:3; DDEM162. Weighed against the detailed testimony of Plaintiffs' expert, along with the extensive and unrebutted objective evidence of nonobviousness submitted to the jury, Dkt. 1367 at 28-29, Defendants' evidence is plainly insufficient to establish invalidity. The fact that the jury was precluded from considering additional probative evidence of nonobviousness further confirms that either JMOL or a new trial is necessary in this case.

With respect to the third ground for a new trial—jury confusion—Defendants attempt to put a brave face on their decision to spend most of their trial time offering witnesses who could not help the jury with its fundamental task of comparing the construed claim elements to the prior art at issue. Dkt. 1384 at 27-29; Dkt 1367 at 25-28. But the jury was plainly confused: it could not reasonably have based its verdict on the three words "I believe so," nor on the externally-linking "'TIFF button' … code" that is not in evidence, nor on the Viola source code that it was unable to access. Defendants played a game of smoke and mirrors with the evidence,[14] and the jury lost its way. If the Court denies JMOL, it should grant a new trial.

---

[14] Surprisingly, Defendants suggest that their seriously misleading "type information" argument at closing was "proper" because it "identified [type information] for the Doodle.v application example"—**which the Court had precluded their expert from identifying at trial**. Dkt. 1384 at 29; Tr. 2/8AM 15:6-18:9. Apparently Defendants believe that, when an expert has been precluded from offering certain testimony to the jury at trial, it is proper for counsel to offer that testimony to the jury at closing. In any event, the "TYPE=Doodle" language counsel pointed to at closing came after an "INPUT" tag, not a "VOBJF" tag, DDEM3—and the INPUT tag relates to an internal operation. "TYPE=Doodle" never identifies an executable application external to a browser, which is why no witness, expert or otherwise, ever pointed to the "INPUT" tag—or anything coming after it—as satisfying any element of any asserted claim. Dkt. 1367 at 27.

|  |  |
|---|---|
| Dated: April 9, 2012. | **MCKOOL SMITH, P.C.**<br><br>*/s/ Mike McKool*<br>Mike McKool<br>Lead Attorney<br>Texas State Bar No. 13732100<br>mmckool@mckoolsmith.com<br>Douglas Cawley<br>Texas State Bar No. 04035500<br>dcawley@mckoolsmith.com<br>Holly Engelmann<br>Texas State Bar No. 24040865<br>hengelmann@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>300 Crescent Court, Suite 1500<br>Dallas, Texas 75201<br>Telephone: (214) 978-4000<br>Telecopier: (214) 978-4044<br><br>Kevin L. Burgess<br>Texas State Bar No. 24006927<br>kburgess@mckoolsmith.com<br>Josh W. Budwin<br>Texas State Bar No. 24050347<br>jbudwin@mckoolsmith.com<br>Gretchen K. Curran<br>Texas State Bar No. 24055979<br>gcurran@mckoolsmith.com<br>Matthew B. Rappaport<br>Texas State Bar No. 24070472<br>mrappaport@mckoolsmith.com<br>J.R. Johnson<br>Texas State Bar No. 24070000<br>jjohnson@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>300 West Sixth Street, Suite 1700<br>Austin, Texas 78701<br>Telephone: (512) 692-8700<br>Telecopier: (512) 692-8744 |

        Robert M. Parker
Texas State Bar No. 15498000
rmparker@pbatyler.com
Robert Christopher Bunt
Texas Bar No. 00787165
rcbunt@pbatyler.com
Andrew T. Gorham
Texas State Bar No. 24012715
tgorham@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

**ATTORNEYS FOR PLAINTIFFS
THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA AND EOLAS
TECHNOLOGIES INCORPORATED**

## CERTIFICATE OF SERVICE

Pursuant to Local Rule CV-5(a)(7), the undersigned certifies that the foregoing document was filed electronically on April 9, 2012.  As such, counsel for Plaintiffs has served this Motion in electronic form on all counsel who have consented to electronic service.

        */s/ Josh Budwin*
Josh Budwin