**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| Eolas Technologies Incorporated and The Regents Of The University Of California | )<br>)<br>) |
| *Plaintiffs and Counterdefendants*, | )<br>) |
| vs. | )  Civil Action No. 6:09-CV-446-LED<br>) |
| Adobe Systems Inc.; Amazon.com, Inc.; CDW Corp.; Citigroup Inc.; The Go Daddy Group, Inc.; Google Inc.; J.C. Penney Corporation, Inc.; Staples, Inc.; Yahoo! Inc.; and YouTube, LLC, | )  JURY TRIAL DEMANDED<br>)<br>)<br>)<br>) |
| *Defendants and Counterclaimants*. | )<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) THAT THE ASSERTED CLAIMS OF THE PATENTS-IN-SUIT ARE NOT INVALID OR IN THE ALTERNATIVE FOR A NEW TRIAL UNDER RULE 59**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    I.     Plaintiffs' Renewed Request for JMOL Should Be Denied ................................. 2

         A.     Plaintiffs' Motion Rests on Grounds Not Preserved Under Rule 50(a) ................................................................................................... 2

         B.     There is Substantial Evidence For the Jury To Find Anticipation By Viola ................................................................................................ 2

              1.     Plaintiffs' "Single Reference" Argument is Unavailing ............... 3

              2.     No Asserted Claim Limitations are Missing from Viola .............. 3

         C.     There is Substantial Evidence For the Jury To Find the Patents Obvious ........................................................................................... 5

              1.     Alleged "Secondary Considerations" Cannot Overcome the Jury's Verdict ................................................................. 5

              2.     There Is Substantial Evidence of Obviousness Based On MediaView .................................................................... 6

              3.     There is Substantial Evidence of Obviousness Based on Mosaic and HTML+ ................................................... 8

              4.     There is Substantial Evidence of Obviousness Based on Viola ....................................................................... 9

    II.     Plaintiffs' Request for New Trial Should Be Denied ........................................ 10

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Blackboard, Inc. v. Desire2Learn Inc.*,
 574 F.3d 1371 (Fed. Cir. 2009) ............................................................. 2

*Decorte v. Jordan*,
 497 F.3d 433 (5th Cir. 2007) ............................................................. 2, 5

*Honeywell Int'l, Inc. v. Nikon Corp.*,
 No. 04-1337-JJF, 2009 U.S. Dist. LEXIS 17115, (D. Del. Mar. 4, 2009) ........................... 5, 6

*W. Union Co. v. MoneyGram Payment Sys., Inc.*
 626 F.3d 1361 (Fed. Cir. 2010) ............................................................. 2

**Statutes**

Fed. R. Civ. P. Rule 50(a) ............................................................. 2

Fed. R. Civ. P. Rule 50(b) ............................................................. 2

**INTRODUCTION**

Ignoring the great deference that must be afforded to the jury's verdict, Plaintiffs improperly ask this Court to overturn the verdict by reinterpreting intensely-factual issues for which there is more than sufficient evidence to support the jury's verdict of invalidity based on an anticipation and/or an obviousness theory in view of any one of Viola, MediaVew, or Mosaic/HTML+.  Plaintiffs attempt to nitpick the testimony of Defendants' expert, Dr. Phillips, while ignoring all the evidence supporting that testimony.  Defendants' Response included a mountain of record evidence and testimony from Dr. Phillips and a parade of Internet pioneers that far surpassed what was necessary to support the jury's invalidity finding.

Plaintiffs resort to making false accusations that Defendants have "fabricated" evidence and engaged in "misdirection," "shell games," and "a game of smoke and mirrors with the evidence." Reply at 1,2,5,8,10.  Plaintiffs further mischaracterize Defendants' position on Viola by claiming that Defendants now admit that it is somehow "irrelevant." *Id.* at 8.  Defendants' actual statement was that *Plaintiffs'* arguments about Viola are irrelevant.  Dkt. 1384 at 13 ("F. Plaintiffs' Arguments Regarding Viola Are Incorrect and Irrelevant.").  Setting aside Plaintiffs' hyperbole, their Reply amounts to no more than a rehash of their futile attack on the fully supported factual findings underlying the jury's general verdict.  Plaintiffs' request for this Court to impermissibly reweigh the evidence and rejudge witness credibility must be rejected.

Plaintiffs also move for a new trial by reiterating their fact-bound arguments about the alleged deficiencies of the evidence and by claiming "jury confusion."  But Plaintiffs have no evidence of any jury confusion, and they admit that they failed to make any objection at trial to preserve error on the "TYPE=Doodle" issue about which they now complain.   And even if they had objected, they admit that it would have been harmless error in any event.

There is no basis to disturb the jury's verdict that all of the asserted claims are invalid.

Plaintiffs' renewed motion for JMOL and request for a new trial should be denied.

**ARGUMENT**

**I.     Plaintiffs' Renewed Request for JMOL Should Be Denied**

**A.     Plaintiffs' Motion Rests on Grounds Not Preserved Under Rule 50(a)**

Plaintiffs do not dispute that their Rule 50(a) motion consisted merely of "cover the waterfront" boilerplate that failed to provide notice of the particular evidentiary deficiencies upon which their renewed motion now rests.   While Plaintiffs disparage Defendants' argument as "near frivolous," Fifth Circuit law requires a party to go beyond Plaintiffs' bare-bones pre-verdict motion in order to meet the requirement of Rule 50(a) to "*specify … the law and facts*"[1] that would entitle the movant to the judgment.[2]   Putting the court and the opposing party on fair notice of the alleged evidentiary deficiencies is especially vital in this case, where the crux of Plaintiffs' Rule 50(b) motion is a belated attack on Defendants' expert testimony to try to show alleged deficiencies on nits that their own expert did not dispute at trial.[3]   Plaintiffs' blanket assertion in their 50(a) motion that *every* prior art reference fails to satisfy *every* asserted claim element provided no meaningful information and simply does not pass muster under Rule 50(a).

**B.     There is Substantial Evidence For the Jury To Find Anticipation By Viola**

Plaintiffs assert that Defendants have "change[d] direction in their response, and assert that the Viola arguments are now '[i]rrelevant.'"   Reply at 1.   Nothing could be further from the

---

[1] Emphasis added throughout unless indicated otherwise.

[2] *See, e.g., Decorte v. Jordan*, 497 F.3d 433, 438 (5th Cir. 2007) ("We caution that Rule 50(a) motions should be far more specific [than a "bare bones" recitation of insufficient evidence], as required by Rule 50(a)(2).").

[3] The two cases cited in the Reply do not hold that Rule 50(a) merely requires a "cursory motion."   Plaintiffs omit that in *Blackboard* the motion was sufficient only because "[t]he motion in this case was made shortly after an extended discussion of the evidence relating to anticipation and obviousness, and it is clear from the context that neither the court nor Blackboard's attorneys needed any more enlightenment about Desire2Learn's position on those issues." *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1380 (Fed. Cir. 2009).   Similarly, *Moneygram* stated that a cursory motion can preserve error "*so long as* it 'serves the purposes of Rule 50(a), *i.e.*, to alert the court to the party's legal position and to put the opposing party on notice of the moving party's position as to the insufficiency of the evidence.'" *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1367-68 (Fed. Cir. 2010).

truth.   Plaintiffs apparently refer to this heading in Defendants' Response: "F. *Plaintiffs' Arguments* Regarding Viola Are Incorrect and Irrelevant." Dkt. 1384 at 13.   The Response goes on to explain how *Plaintiffs* made "three inapposite arguments" about Viola. *Id.* at 19-20. Ironically, Plaintiffs provide very little *substantive* response to the dozen pages in Defendants' Response detailing the record evidence that shows anticipation based on Viola.   *Id.* at 13-25.

### 1.      Plaintiffs' "Single Reference" Argument is Unavailing

Plaintiffs' "single reference" argument fails because it rests on their incorrect assertion that "[t]here is no testimony in the record that any single Viola reference contains every limitation of any asserted claim." Reply at 8.   In addition to supporting anticipation based on the Alpha code base, Dr. Phillips's testimony alternatively supports anticipation based on other Viola code bases such as "DX-37."[4] Dkt. 1384 at 16-25.   The jury could reasonably have found anticipation by separately considering each of the several Viola code versions in evidence. *Id.*

Plaintiffs' argument also independently fails because the jury alternatively could have considered the Viola code from May and October 1993 as a "single reference" based on Dr. Phillips's testimony that this is how one of ordinary skill would have understood it. Dkt. 1384 at 15-17.   The record evidence shows that this code shares common architecture and operation and was continuously developed by one person, and none of the cases Plaintiffs cite precludes it from being considered as a single reference.   The case law instead highlights the fact-intensive nature of the inquiry, and the jury's presumed finding of anticipation is entitled to great deference.

### 2.      No Asserted Claim Limitations are Missing from Viola

Plaintiffs' Reply simply ignores the abundance of evidence that fills its alleged "four

---

[4] 2/8AM Tr. 116:24-120:16 ("Q. Well, sir, these files [DX-37] are the very code that you've opined anticipates the claims. A. Exactly.… Q. Now, we just discussed, sir, that during the first reexamination, the Examiner had the May 12 and May 27 code that you discussed in your report and here with the jury, correct? A. That's right. Q. …[A]ll of Viola code bases that you analyze in your report, all five, have the same architecture and operation; is that right?   A. That's right.").

Viola-related holes," which are addressed item-by-item in Defendants' Response at 17-22.   For example, on "embed text format specifies the location of at least a portion of the object," Plaintiffs do not dispute that Dr. Phillips explained how Viola satisfies this by using an embed text format, "VOBJF," in order "to find a variety of things" including the claimed object, *i.e.*, "the information that's going to be displayed right in the—the embedded portion of the browser window." Dkt. 1384 at 17 (citing 2/8AM Tr. 47:14-48:15).   It is also undisputed that Plaintiffs' own expert did not deny that Viola satisfies this claim element. *Id.*   And contrary to Plaintiffs' argument, Mr. Silvey's explanation about how "VOBJF" worked (as a fact witness skilled in the art) provides yet more support for Dr. Phillips's unrebutted expert opinion. Dkt. 1384 at 17 (citing 2/7PM Tr. 10:17-11:7, 77:15-24).   Plaintiffs simply ask this Court to impermissibly reweigh the evidence, which is one-sided in Defendants' favor in any event.

On "type information to identify and locate," the Reply concedes that Dr. Phillips identified "Plot.V" as the claimed "type information," but it contends that this was not part of the Viola "Alpha reference."   Reply at 9.   But as Mr. Silvey testified: "Q. Did the October 16th, 1993 Alpha release of the Viola code also contain Plot.V?   A. Yes." Dkt. 1384 at 19.   And Plaintiffs do not deny that other Viola versions contained Plot.V.   In fact, Plaintiffs' own expert explained how Viola used an embed text format, "VOBJF," with "Plot.V" to embed content in a document.   2/8PM Tr. 35:13-36:7.

On "distributed application," the claim construction merely requires that it be "*capable of being broken up and performed among two or more computers.*" Dkt. 914 at 22.   Dr. Phillips testified that Viola is based on "X Windows" technology, which "is, by definition, a distributed capability." Dkt. 1384 at 21 (citing 2/8AM Tr. 58:9-59:9).   Dr. Phillips's testimony, along with that of Messrs. Silvey, Bina, and Berners-Lee also about Viola's distributed capabilities, *id.*, is more than sufficient to support the jury's presumed finding on this element.

Finally, on "HTML tags," Plaintiffs make no attempt to rebut Defendants' overwhelming evidence of the use of HTML tags in Viola for displaying documents. Dkt. 1384 at 21-22. Plaintiffs' assertion that Defendants have not identified a "P tag" that meets the limitation is not only incorrect (*see* Dkt. 1384 at 21 (citing 2/8AM Tr. 57:10-23)) but is also inapposite.

**C.    There is Substantial Evidence For the Jury To Find the Patents Obvious**

**1.    Alleged "Secondary Considerations" Cannot Overcome the Jury's Verdict**

The weakness of Plaintiffs' validity case is underscored by their assertion that their alleged *secondary* considerations were the "most pertinent" and "probative" evidence.   Reply at 3.   Plaintiffs again request this Court to impermissibly reweigh the evidence.   The reviewing court must draw all reasonable inferences in Defendants' favor, "disregard[ing] all evidence favorable to the moving party that the jury is not required to believe."   *Decorte*, 497 F.3d at 437. The jury considered and rejected Plaintiffs' alleged secondary considerations, which "do not control the obviousness conclusion" in any event.   Dkt. 1384 at 11-12.[5]

Plaintiffs argument that this Court abused its discretion in refusing to admit settlements is also incorrect for the reasons detailed in the Response at 11-13, which the Reply largely fails to address.   Footnote 3 of the Reply makes a failed attempt to distinguish Defendants' cases by suggesting that a court can *never* use its discretion under Rule 403 to exclude a settlement from an obviousness inquiry, which is plainly incorrect.   For example, Plaintiffs attempt to distinguish *Honeywell* on a completely irrelevant ground—that summary judgment of anticipation was *later* found.   It is undisputed that *Honeywell* held that "the licenses should not be admitted as evidence of either commercial success or reasonable royalty" under Rule 403. *Honeywell Int'l, Inc. v. Nikon Corp.*, No. 04-1337-JJF, 2009 U.S. Dist. LEXIS 17115, at *7-9

---

[5] Plaintiffs' assertion that Defendants did not offer rebuttal evidence is incorrect.   The testimony of Messrs. Bina, Raggett, Berners-Lee, Silvey, Wei, and Phillips about the prior art all undercut Plaintiffs' unsupported allegations of "failure of others," "industry praise," and "teaching away."   Dr. Phillips also testified that he considered Plaintiffs' alleged secondary considerations and found them unpersuasive.   2/8AM Tr. 50:8-13.

(D. Del. Mar. 4, 2009).   This Court did not abuse its discretion in holding the same.

### 2.      There Is Substantial Evidence of Obviousness Based On MediaView

Ignoring the vast record evidence on MediaView that establishes obviousness, Plaintiffs' Reply instead (a) makes false accusations that the MediaView code evidence is a "fabrication," (b) accuses Defendants of a "shell game" for combining two MediaView examples to show obviousness, and (c) asks this Court to reweigh the MediaView evidence based on four alleged "holes," three of which Plaintiffs' expert never denied were satisfied by MediaView.

First, Plaintiffs' contention that "there is no MediaView source code in the record" is flatly wrong.   For example, JDX 184 and 7 contain source code for MediaView custom components written by Dr. Phillips such as the "3[D] Dataset Viewer" that he testified satisfies the "automatically invoking" limitation.   2/8AM Tr. 66:11-21, 72:16-74:5; Ex. A (JDX 184 source code excerpts); JDX 7 at 8-11 (source code).   Additionally, source code for "ViewCell" is shown in fig. 3 (and at 5) of JDX 7. Dkt. No. 1384 at 7.   And there are many examples of "ViewCell" and "TIFFButton" in both the executable code and the hypermedia document code contained in JDX 184.   Exs. B-C (JDX 184 code excerpts).   Dr. Phillips explained that demonstratives DDEM 158 and 161 illustrate how MediaView processes "ViewCell" and "TIFFbutton" code similar to that found in JDX 184, and in various examples in JDX 5, 7, and 121 (video demonstrations) such as Mathematica and the "algorithm animation."

Plaintiffs cannot dispute that this relevant code is in evidence.   Instead, they quibble over the semantics of whether this code is "source code"—which is completely irrelevant. Regardless, JDX 184 does contain the MediaView 2 executable code, source code for MediaView custom components, and code for various MediaView hypermedia documents used in the 1993 video (JDX 121), all of which prove obviousness.   2/8AM Tr. 66:11-21.

Second, Plaintiffs' accusations about a "shell game" are equally baseless.   Plaintiffs do

not dispute that two MediaView examples, 3D Dataset Viewer and Mathematica, satisfy the "automatically invoking" and "external to the file" elements, respectively.  Reply at 6.  At bottom, Plaintiffs erroneously contend that making an obvious tweak to the Mathematica example to eliminate a mouse click, as had already been done with 3D Dataset Viewer, constitutes a "shell game." *Id.*  Such a combination is a textbook example of obviousness.  Both features and examples are disclosed in JDX 6, and Dr. Phillips's testimony amply demonstrated that MediaView had this capability and it would have been obvious to do.   Dkt. 1384 at 8.[6]

Finally, Plaintiffs' reiteration of alleged "holes" in MediaView is futile in view of the voluminous record evidence detailed in Defendants' Response, most of which Plaintiffs simply ignore.  Dkt. 1384 at 4-10.  This evidence covers every alleged deficiency, the first three of which Plaintiffs' expert did not even dispute: (1) "ViewCell" specifies the location of the object[7]; (2) "TiffButton" is used to identify and locate an application[8]; (3) "TiffButton" is associated with the object[9]; and (4) an application is invoked in response to identifying "ViewCell."[10]   In all

---

[6]  The alleged invention of eliminating a mouse click is further obvious in view of Dr. Phillips' 1991 articles, which state that MediaView components could be asked to "play themselves or push their own buttons," and can "dynamically load [] information" where the "user doesn't have to start anything up." Dkt. 1384 at 8.

[7]  In Reply n.7, Plaintiffs mislead by using an ellipsis to omit a disclosure in JDX 7 that satisfies the disputed limitation: "View Cell … implements the methods needed for … *writing/reading multimedia components to and from files.*" Dkt. 1384 at 6 (quoting JDX 7 at 3-4 (italicized portion omitted by Plaintiffs)).  Then Plaintiffs assert that JDX 5 "do[es] not mention 'ViewCell'" even though it contains the same discussion of ViewCell that Plaintiffs omitted from JDX 7. *Id.* (quoting JDX 5 at 7).  Plaintiffs cannot credibly dispute that Dr. Phillips identified ViewCell as an "embed text format" that specifies the location of the multimedia objects, including by using the example from fig. 4 of JDX 5.  *Id.* (2/8AM Tr. 70:4-11 and 71:1-14).

[8]  The Reply omits that, after having identified "TiffButton" as the claimed "type information," Dr. Phillips went on to explain how the claimed "utilizing [the type information] step" was satisfied by linking to an external program such as Mathematica.  Dkt. 1384 at 6-7 (citing 2/8AM Tr. 72:1-15; JDX 5 at 3; DDEM 162).  Additionally, the MediaView prior art video, JDX 121, shows the Mathematica example he explained (fig. 2 of JDX 5 in DDEM 162) that actually used "TiffButton" to link to Mathematica, as well as the "algorithm animation" example in fig. 5 of JDX 7, which also illustrates TiffButton.  *Id.* at 6-7 (JDX 121).

[9]  By omitting the context supplied by the question, the Reply omits that Dr. Phillips confirmed that "the object has type information associated with it" in MediaView.  Dkt. 1384 at 7 (citing 2/8AM Tr. at 71:15-25).  The Reply also ignores that "MediaViewButton" is another name for "TiffButton," which is associated with objects by virtue of its ability to "play a sound" or "display an image" (e.g., "initiate algorithm animations" and "activate 'live' equations" via Mathematica).  Dkt. 1384 at 7 (citing JDX 7 at 7-8).

[10]  Plaintiffs do not dispute that ViewCell implements methods for "writing/reading multimedia components," and

events, Plaintiffs do not contend these are anything more than nits that would have been "a predictable use of known elements" already within the grasp of one of ordinary skill.

### 3.    There is Substantial Evidence of Obviousness Based on Mosaic and HTML+

Plaintiffs incorrectly contend that "Defendants' Mosaic argument, however, is supported by three words of conclusory testimony: 'I believe so.'" Reply at 1.   Plaintiffs omit Dr. Phillips's discussion of Mosaic's functionalities, including its ability to "embed static images," "examine audio streams and video streams," and render web pages that used "external viewers" with control panels for interacting with the streams.   Dkt. 1384 at 10 (citing 2/8AM Tr. 35:13-36:7).   Plaintiffs further omit his explanation of why it would have been obvious to combine Mosaic with HTML+ and Dr. Raggett's "embed" tag. *Id.* at 36:8-38:2.   Plaintiffs then ignore all of the testimony from Dr. Raggett and Mr. Bina detailing the relevant features of Mosaic, HTML+, the embed tag, and embedding interactive content in the prior art. Dkt. 1384 at 10-11. Plaintiffs' argument rests on the faulty assumption that all of this evidence from the inventors of the Mosaic and HTML+ prior art is somehow disqualified from consideration.

Importantly, Plaintiffs never deny that it would have been obvious to combine Mosaic and HTML+ and never identify a single limitation in the asserted claims that is missing from this prior art combination.   The record evidence shows that the difference between the asserted claims and the Mosaic prior art was minimal.[11]   Drawing all factual inferences in Defendants' favor, extensive expert testimony was not required for the jury to reasonably conclude that one of ordinary skill could have added Dr. Raggett's HTML+ to Mosaic to fill this tiny gap.

---

Dr. Phillips explained that these multimedia components (*i.e.*, the claimed objects) can include, for example, a "live equation" from Mathematica, which Plaintiffs admit is the claimed "executable application."   Dkt. 1384 at 7-8.

[11] Plaintiffs derived their alleged invention from Mosaic, and admitted it was created by adding "a few hundred" lines of code to existing Mosaic code.   2/6PM Tr. 131:1-4, 131:9-15.   More than 95% of the source code submitted with the patent application was prior art Mosaic code. *Id.*   In response to rejections based in part on Mosaic, Plaintiffs' only asserted distinctions were that Mosaic invoked interactive executable applications in a separate window upon the user's click rather than within a browser-controlled window.   *See, e.g.*, JDX 1 at 182, 258-59, 263-67, 361-62 (application); JDX 2 at 34-35 (first reexam); JDX 3 at 615 (second reexam).

### 4.     There is Substantial Evidence of Obviousness Based on Viola

Plaintiffs barely address obviousness based on Viola.  They merely reiterate that Dr. Phillips "treated all the versions as one reference" and point to their arguments about *anticipation*.  Reply at 7-8.  The "single reference" argument is irrelevant to obviousness because Plaintiffs' expert could not and did not dispute Dr. Phillips's testimony that it was obvious to combine the Viola versions together.  Dkt. 1384 at 25-26.[12]

Nor do any of Plaintiffs' four alleged deficiencies preclude obviousness based on Viola.  First, Plaintiffs' expert did not dispute that Viola satisfies the limitation "embed text format specifies the location of at least a portion of an object."  Dkt. 1384 at 17.[13]  Second, as explained above, Plaintiffs do not dispute that the "Plot.V" Dr. Phillips identified as satisfying the "type information" limitation is found in the May 1993 Viola code, and their own expert confirmed that Viola uses "Plot.V" to embed content.  Nor do Plaintiffs dispute that it would have been and *was* obvious to combine Alpha with "Vplot," as Messrs. Wei, Silvey, and Phillips testified.  Dkt. 1384 at 19-20.   Third, Plaintiffs' Reply effectively concedes that the "distributed application" limitation is obvious, as it merely states that "Phillips provided only an obviousness opinion."  Reply at 9.  Neither Plaintiffs nor their expert dispute that this limitation is obvious based on Viola's use of X Windows. Dkt. 1384 at 21.  Fourth, as also explained above, Plaintiffs cannot dispute the overwhelming evidence of "HTML tags" throughout Viola for displaying documents.  And Plaintiffs' expert could not deny that two of the five versions of Viola could "embed into an HTML document." 2/8PM Tr. 49:1-7.  In all events, Plaintiffs do not dispute that these alleged deficiencies would have been merely "a predictable use of known elements" within the grasp of one of ordinary skill.  Dkt. 1384 at 25.

---

[12] Plaintiffs' argument that Dr. Phillips did not testify that Viola could be combined with other prior art is also wrong.  Dkt. 1384 at 10 (citing 2/8AM Tr. 37:6-38:2 (combining Viola with other art like HTML+ was obvious)).

[13] *See also* Dr. Phillips's uncontroverted testimony quoted above in Section I(B)(2) (2/8AM Tr. 47:14-48:15).

## II.     Plaintiffs' Request for New Trial Should Be Denied

Plaintiffs' argument that the verdict is against the "great weight of the evidence" merely reiterates their failed arguments for JMOL.   There is a mountain of record evidence that conclusively proves invalidity on multiple prior art references for both anticipation and obviousness.   Similarly, Plaintiffs have no basis to contend that this Court abused its discretion in excluding settlements from the obviousness determination under Rule 403 for the reasons discussed above.   Plaintiffs' claim that Defendants' "provided no substantive response" on these issues is simply wrong, and there is no need to rehash the arguments here.

Plaintiffs' final argument, alleged jury confusion, finds no support in the record. Plaintiffs do not dispute that the testimony of each of the fact witnesses called by Defendants was relevant to (1) the scope and content of the prior art, (2) the level of ordinary skill, and (3) secondary considerations.   Plaintiffs cannot credibly complain that prior artists testified in a validity trial, nor did Plaintiffs object.   Second, Plaintiffs' accusation that Defendants "played a game of smoke and mirrors" based on the "TYPE=Doodle" evidence is both false and irrelevant. It is type information.   Dkt. 1384 at 20-21, 29; 2/7PM Tr. 166:2-8, 166:20-25.   In any event, Plaintiffs admit that they made no attempt to object or preserve any error on this issue, and even if it were error it would not have justified a new trial—*i.e.*, it would have been harmless. Dkt. 1384 at 28.   Again setting aside Plaintiffs' hyperbole, there is simply no evidence of "jury confusion, passion, or prejudice" in this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request Plaintiffs' motion be denied.

Dated:   April 20, 2012

*/s/ Edward Reines*
Edward Reines (Bar No.135960)
edward.reines@weil.com
Jared Bobrow (Bar No. 133712)
jared.bobrow@weil.com
Sonal N. Mehta (Bar No. 222086)
sonal.mehta@weil.com
Andrew L. Perito (Bar No. 269995)
andrew.perito@weil.com
Aaron Y. Huang (Bar No. 261903)
aaron.huang@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Doug W. McClellan (Bar No. 24027488)
doug.mcclellan@weil.com
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Jennifer H. Doan (Bar No. 088090050)
jdoan@haltomdoan.com
Joshua R. Thane (Bar No. 24060713)
jthane@haltomdoan.com
Shawn A. Latchford (Bar No. 24066603)
slatchford@haltomdoan.com
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800

Otis Carroll (Bar No. 3895700)
Deborah Race (Bar No. 11648700)
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway, Suite 500
Tyler, Texas 75703
Telephone: (903) 561-1600
Facsimile: (903) 581-1071
Email: fedserv@icklaw.com

Attorneys for Defendants
AMAZON.COM, INC. AND YAHOO! INC.

*/s/ Douglas E. Lumish* (with permission)
Douglas E. Lumish   (Bar No. 183863)

dlumish@kasowitz.com
Jeffrey G. Homrig (Bar No. 215890)
jhomrig@kasowitz.com
Joseph H. Lee (Bar No. 248046)
jlee@kasowitz.com
Parker C. Ankrum (Bar No. 261608)
pankrum@kasowitz.com
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
333 Twin Dolphin Drive
Suite 200
Redwood Shores, CA 94065
Telephone: 650-453-5170
Facsimile: 650-453-5171

Jonathan Keith Waldrop
jwaldrop@kasowitz.com
KASOWITZ BENSON TORRES &
FRIEDMAN LLP
1360 Peachtree Street NE, Suite 1150
Atlanta, GA 30309
Telephone: (404) 260-6133
Facsimile: (404) 393-0743

Michael E. Jones (Bar No. 10929400)
mikejones@potterminton.com
Allen F.Gardner (Bar No. 24043679)
allengardner@potterminton.com
POTTER MINTON P.C.
110 N College , Suite 500
PO Box 359
Tyler, TX 75710-0359
Telephone: (903) 597-8311
Facsimile: (903) 593.0846

Brandon Stroy (*pro hac vice*)
brandon.stroy@ropesgray.com
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

James R Batchelder (*pro hac vice*)
James.Batchelder@ropesgray.com
Han Xu (*pro hac vice*)
han.xu@ropesgray.com
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: (617) 235-4903
Facsimile: (617) 235-9873

Mark D. Rowland (Bar No. 157862)

mark.rowland@ropesgray.com
Rebecca R. Hermes (Bar No. 252837)
rebecca.hermes@ropesgray.com
Sasha Rao (Bar No. 244303)
sasha.rao@ropesgray.com
Lauren N. Robinson (Bar No. 255028)
lauren.robinson@ropesgray.com
ROPES & GRAY LLP
1900 University Ave., 6th Floor
East Palo Alto, CA 94303
Telephone: (650) 617-4000
Facsimile: (650) 617-4090

Attorneys for Defendants
GOOGLE INC. and YouTube LLC


*/s/ Christopher M. Joe*  (with permission)
Christopher M. Joe (Bar No. 00787770)
chris.joe@bjciplaw.com
Eric W. Buether (Bar No. 03316880)
eric.buether@bjciplaw.com
Brian A. Carpenter (Bar No. 03840600)
brian.carpenter@bjciplaw.com
Mark D. Perantie (Bar No. 24053647)
mark.perantie@bjciplaw.com
Niknaz F. Bukovcan
niky.bukovcan@bjciplaw.com
BUETHER JOE & CARPENTER, LLC
1700 Pacific Avenue, Suite 2390
Dallas, TX 75201
Telephone: (214) 466-1279
Facsimile (214) 635-1830

Attorneys for Defendant
J.C. PENNEY CORPORATION, INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic services on this the 20th day of April 2012.  Local Rule CV-5(a)(3)(A).

*/s/ Aaron Y. Huang*
Aaron Y. Huang