# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **EOLAS TECHNOLOGIES INCORPORATED and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,** | § § § § § § | |
| **Plaintiffs,** | § § | |
| **vs.** | § § | **CASE NO. 6:09-CV-446** |
| **ADOBE SYSTEMS, INC., AMAZON.COM INC., CDW CORPORATION, CITIGROUP INC., THE GO DADDY GROUP, INC., GOOGLE INC., J.C. PENNEY CORPORATION, INC., STAPLES, INC., YAHOO! INC., AND YOUTUBE, LLC.,** | § § § § § § § § § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Renewed Motion of Plaintiffs the Regents of the University of California and Eolas Technologies Incorporated for Judgment as a Matter of Law Under Rule 50(b) That the Asserted Claims of the Patents-In-Suit Are Not Invalid, or in the Alternative for a New Trial Under Rule 59 (Docket No. 1367). For the reasons stated below, Plaintiffs' motion is **DENIED**.

## BACKGROUND

On October 6, 2009, Eolas Technologies Incorporated ("Eolas") filed this action against multiple defendants[1] alleging infringement of U.S. Patent Nos. 5,838,906 ("the '906 Patent") and

---

[1] The original defendants included Adobe Systems Inc.; Amazon.com, Inc.; Apple Inc.; Argosy Publishing, Inc.; Blockbuster Inc.; CDW Corp.; Citigroup Inc.; eBay Inc.; Frito-Lay, Inc.; The Go Daddy Group, Inc.; Google Inc.; J.C. Penney Corporation, Inc.; JPMorgan Chase & Co.; New Frontier Media, Inc.; Office Depot, Inc.; Perot Systems

7,599,985 ("the '985 Patent"). The '906 Patent, entitled "Distributed Hypermedia Method for Automatically Invoking External Application Providing Interaction and Display of Embedded Objects Within a Hypermedia Document," issued on November 17, 1998, to Michael Doyle, David C. Marin, and Cheong S. Ang. The '985 Patent, entitled "Distributed Hypermedia Method and System for Automatically Invoking External Application Providing Interaction and Display of Embedded Objects Within a Hypermedia Document," issued to the same inventors on October 6, 2009. The '906 and '985 Patents are generally directed to a software system that is operable without user activation to access an object, present it in a browser display window, and then allow a user to manipulate the object.

Prior to the instant case, Eolas sued Microsoft in the Northern District of Illinois for infringement of the '906 Patent. The jury found that Microsoft infringed the patent and that it was not invalid. The Federal Circuit remanded for a new trial regarding certain invalidity defenses. *See Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1341 (Fed. Cir. 2005). Thereafter, the parties settled in 2007.

Eolas is the exclusive licensee of the patents-in-suit. The Regents of the University of California, the owner of the patents-in-suit, was added as a necessary co-plaintiff on September 22, 2011. On February 6, 2012, the case proceeded to trial on a staged basis—invalidity first, then separate infringement trials. After a four day invalidity-only trial, the jury—by general verdict—found the asserted claims of the patents-in-suit invalid. Eolas challenges the jury's verdict as unsupported by the evidence and alternatively requests a new trial.

---

Corp.; Playboy Enterprises International, Inc.; Rent-A-Center, Inc.; Staples, Inc.; Sun Microsystems Inc.; Texas Instruments Inc.; Yahoo! Inc.; and YouTube, LLC. Only Amazon.com, Inc.; Google Inc.; J.C. Penney Corporation, Inc.; Yahoo! Inc.; and YouTube, LLC (collectively "Defendants") remain in the case.

**APPLICABLE LAW**

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). The Fifth Circuit "uses the same standard to review the verdict that the district court used in first passing on the motion." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). Thus, a jury verdict must be upheld, and judgment as a matter of law may not be granted, unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Id.* at 700. The jury's verdict must be supported by "substantial evidence" in support of each element of the claims. *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).

A court reviews all evidence in the record and must draw all reasonable inferences in favor of the nonmoving party; however, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). The moving party is entitled to judgment as a matter of law, "only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable juror could return a contrary verdict." *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005).

**ANALYSIS**

Eolas challenges the jury's general verdict of invalidity, asserting that there is insufficient evidence of anticipation and insufficient evidence of obviousness. "A general jury verdict of invalidity should be upheld if there was sufficient evidence to support any of the alternative theories of invalidity." *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1339 (Fed. Cir.

3

2011). Eolas alternatively requests a new trial for three reasons: (1) the jury was confused and based its verdict on passion and prejudice rather than evidence; (2) the verdict was against the great weight of the evidence; and (3) the exclusion of license evidence from jury consideration was improper.

### Waiver

As an initial matter, Defendants argue that Eolas failed to preserve the arguments it now makes in its request for judgment as a matter of law. "If a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all of the evidence, that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal." *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 238 (5th Cir. 2001) (citing *Logal v. United States*, 195 F.3d 229, 231 (5th Cir. 1999)). However, the Court finds that Eolas properly raised its current arguments in its written 50(a) motion for judgment as a matter of law. *See* Docket No. 1338, at 4–6 (addressing anticipation by Viola); *id.* at 6–7 (addressing obviousness by combinations of Viola, MediaView, Mosaic, and HTML+). As such, Eolas's current 50(b) arguments were preserved.

### Invalidity by Anticipation

Eolas contends that there was insufficient evidence to support a finding of invalidity by anticipation. A patent claim is invalid as anticipated if the claimed "invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant . . . ." 35 U.S.C. § 102(a) (2006). A claim is also invalid as anticipated if the claimed "invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." 35 U.S.C. § 102(b)

(2006). Finally, a claim is invalid as anticipated if "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g) (2006). Anticipation requires the presence in the prior art of each and every limitation of the claimed invention. *Amgen, Inc. v. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1366 (Fed. Cir. 2009).

Defendants' anticipation case focused on the Viola web browser, written by Pei Wei. Viola stands for "visually interactive object-oriented language and application." Tr. Trial Afternoon Session 80:18–20, Feb. 7, 2012. Eolas first contends that Defendants' expert, Dr. Richard Phillips, improperly used a collection of Viola codebases to show anticipation rather than analyzing a single codebase. Eolas also argues that each Viola codebase in evidence does not anticipate for failure to satisfy four claim limitations. The four limitations at issue are: (1) embed text format specifies the location of at least a portion of an object; (2) type information to identify and locate; (3) distributed application; and (4) HTML tags.

*Viola as a Single Reference*

Several versions of the Viola source code were introduced into evidence; each version represents a snapshot of the code at a point in time. The three versions at issue are: (1) a snapshot from May 12, 1993, JDX 292 ("May 12th Code"); (2) a snapshot from May 27, 1993, JDX 293 ("May 27th Code"); and (3) a snapshot from October 16, 1993, JDX 290 ("Alpha Code"). These codebases span approximately five months and have substantial similarities. *See* Tr. Trial Morning Session 120, Feb. 8, 2012 (explaining that the Viola codebases have the same architecture and operation).

Eolas argues that Phillips improperly considered the three distinct Viola codebases as a single prior art reference during his anticipation analysis. To support its argument, Eolas cites the following snippet of Phillips's direct examination:

5

> Q. . . . . And for purposes of your testimony today, can we agree that the Viola system we're talking about is the Viola code as it was developed through, on October 16th of 1993?
> A. Yes.
> Q. Okay. So when we talk about Viola today, that's what we're talking about?
> A. Yes, that entire collection.
> Q. And that includes the Viola Alpha code base?
> A. It does include the Viola Alpha code base.
> Q. Okay. From the—from the vantage point of one of ordinary skill in the art, does it make sense to consider that collection of Viola code through October 16th of 1993 as a single piece of prior art?
> A. Sure. I think it does.

*Id.* at 38. Eolas contends that this testimony, coupled with the fact that Phillips did not explicitly perform an element-by-element anticipation analysis at trial for each of the three Viola codebases, necessitates a judgment that there was insufficient evidence in the record to support a finding of anticipation.

Shortly after making these statements, Phillips explained that it would have been obvious for one of skill in the art to use the different Viola codebases together. *Id.* at 39. This suggests that Phillips meant that multiple references can be used as invalidating prior art in an obviousness analysis. Regardless, Phillips later clarified that each codebase must be considered independently for an invalidity-by-anticipation analysis:

> Q. [For purposes of anticipation, i]t's not proper to pick from the different Viola code bases and stick them together, is it?
> A. No.
> Q. They have to be considered one at a time on their own merit?
> A. Yes.

*Id.* at 95–96. Thus, Phillips made it clear that for Viola to anticipate the asserted claims, at least one of the three codebase references must embody all of the claim limitations. Phillips also noted that his expert report analyzed the codebases individually. *See id.* at 101 (noting that the report discussed the May 12th Code and the May 27th Code); *id.* at 96 (stating that he considered five different codebases in his expert report).

Phillips's statements indicate that his testimony generally applied to all three codebases: "Q. Okay. So when we talk about Viola today, that's what we're talking about? A. Yes, that entire collection." *Id.* at 38. Further, he distinguished between the codebases when necessary during his invalidity analysis at trial. *See, e.g.*, *id.* at 106 (agreeing that the May 12th Code and May 27th Code do not use HTML to embed); *id.* at 107 (agreeing that the May 12th Code and May 27th Code do not use MIME TYPE); *id.* at 45 ("Viola Alpha also uses HTTP."). Wei also discussed differences between the codebases. *See* Tr. Trial Afternoon Session 136–39, Feb. 7, 2012 (explaining that the May 12th and May 27th Code were not able to use HTTP) ; *id.* at 164 (explaining that the Alpha Code was able to use HTTP). Thus, a reasonable juror could infer that, to the extent that Phillips testified generally about Viola, the testimony applied to all three codebases in evidence.

In sum, the Court finds that Phillips did not use the multiple codebases in evidence as a single reference for his anticipation invalidity analysis. Phillips's expert report addressed the codebases individually, and the testimony at trial addressed the codebases separately when necessary to highlight differences between them. Further, Phillips clarified for the jury that each codebase must be considered individually for invalidity by anticipation purposes. Thus, Phillips's testimony about Viola related to all three codebases in evidence unless further clarified. Phillips did not improperly combine references during his Viola anticipation analysis.

*Embed Text Format Limitation*

All of the asserted claims include an embed text format limitation. The limitation as stated in Claim 1 of the '985 Patent is representative: "where the embed text format specifies the location of at least a portion of an object external to the file." '985 Patent col. 17:13–15. Eolas argues that the Viola references fail to meet this limitation.

There was sufficient evidence for a reasonable juror to find that the all of the Viola references meet this limitation. Scott Silvey, one of skill in the art and the author of the VPlot application[2], testified that he worked extensively with Wei to build a demonstration of Viola and VPlot for Sun Microsystems engineers in May 1993. He further testified that the VOBJF tag, an embed text format in Viola, points to an "external program that is a Viola object or a Viola script or an external executable application." Tr. Trial Afternoon Session 11, Feb. 7, 2012. Wei explained that the VOBJF tag "[taught] the browser that this location in the page is where you can embed a viewer object." *Id.* at 77. Thus, the VOBJF tag identifies a location in the web page for a viewer object that can display the results or output of the Viola object, script, or executable application identified by the VOBJF tag. Phillips also testified that the VOBJF tag identifies the location of an object for display in the browser: "[F]ollowing [the VOBJF tag] is some information that allows a Viola browser to determine where an executable location can be found. It executes that small program and then discovers that there is a larger program, which is called VPlot. And VPlot then allows the user to interact with data that he sees on . . . the screen." Tr. Trial Morning Session 48, Feb. 8, 2012. The testimony of Phillips, supported by that of Silvey and Wei, reveals that the Viola references used a VOBJF tag (embed text format) that identified the location of external Viola object files, scripts, or applications for display within the browser. A reasonable juror could find this evidence sufficient to show that the all of the Viola references meet the "embed text format specifies the location" limitation.

*Type Information Limitation*

Claims 1 and 6 of the '906 Patent, and claims 1, 3, 10, 16, 18, 20, and 22 of the '985 Patent contain the "type information to identify and locate" limitation. This limitation requires

---

[2] VPlot was an application that displayed graphics in three-dimensional coordinate systems. Tr. Trial Morning Session 48–49, Feb. 8, 2012.

that the object identified by the embed text format have type information associated with it and that the browser use this type information "to identify and locate an executable application." '985 Patent col. 17:17–18.

Phillips testified that the type information limitation is met by the designation of a filename for the target Viola object file. Tr. Trial Morning Session 127, Feb. 8, 2012. After the VOBJF tag, a filename is provided for the Viola object file, which contains instructions for executing or displaying the object. *See* Tr. Trial Afternoon Session 35, Feb. 8, 2012 (Martin explaining that a filename is provided after the VOBJF tag); Tr. Trial Afternoon Session 33, Feb. 7, 2012 (Silvey explaining how the viola object file, Plot.V, is an external executable program that is run embedded in a web page when addressed by the VOBJF tag). Thus, there is evidence to support Phillips's assertion that the designation of a Viola object file conveys the type information necessary to identify and locate an executable application related to the object. The testimony from Phillips, Martin, and Silvey is sufficient for a reasonable juror to find that the type information limitation is met by all of the Viola references through the filename designation in conjunction with a VOBJF tag.

*Distributed Application Limitation*

Claims 36, 38, 40, and 42 of the '985 Patent contain a distributed application limitation: "wherein the executable application is part of a distributed application." '985 Patent col. 21:47–48. The Court construed the term "distributed application" as "an application that is capable of being broken up and performed among two or more computers." Docket No. 914, at 22. Eolas contends that there was no evidence that the Viola references met the distributed application limitation.

Both Plot.v and VPlot were identified as executable applications that interacted with Viola. *See* Tr. Trial Afternoon Session 33, Feb. 7, 2012 (identifying Plot.v as an external Viola

executable); Tr. Trial Morning Session 48, Feb. 8, 2012 (identifying VPlot as an executable application that interacts with Viola). The Viola references, Viola object files (e.g., Plot.v), and VPlot are all based on the X Window System, and Phillips testified that "X Windows is, by definition, a distributed capability." Tr. Trial Morning Session 59, Feb. 8, 2012. Tim Berners-Lee also testified that X Windows "allows you to run a program in one place and have it display in another place." Tr. Trial Morning Session 50, Feb. 7, 2012. Finally, Silvey testified that Viola and the VPlot application were based on X Windows and thus had inherent distributed capabilities. *See* Tr. Trial Afternoon Session 22, Feb. 7, 2012 (explaining that Viola and VPlot had the capability of running on a local computer or remotely over sockets and pipes). The evidence shows that Viola, Plot.v, and VPlot were based on the X Window System, which had inherent distributed capabilities. There was testimony that VPlot was demonstrated to the Sun engineers in May 1993 and at the World Wide Web Wizards Workshop in July 1993. *See id.* at 7–15 (discussing the Sun demonstration); *id.* at 19 (discussing the Wizards Workshop demonstration). Further, Plot.v was included in all three Viola codebases in evidence. Thus, there was sufficient evidence for a reasonable juror to find that all three of the Viola codebases met the distributed application limitation.

*HTML Tags Limitation*

Claims 3, 18, 22, 38, and 42 of the '985 Patent contain an HTML tags limitation. Claim 3 is representative, stating: "The method of claim 2 where the text formats are HTML tags." '985 Patent col. 17: 29–30. Claim 2, in turn, states: "The method of claim 1 where: the information to enable comprises text formats." *Id.* col. 17:27–28. Finally, the relevant portion of claim 1 states: "receiving, at the client workstation from the network server over the network environment, at least one file containing *information to enable* a browser application to display at least a portion of a distributed hypermedia document within a browser-controlled window . . . ." *Id.* col. 17:1–5

(emphasis added). Thus, the HTML tags must "enable a browser application to display at least a portion of a distributed hypermedia document." Eolas contends that the evidence presented at trial does not support this limitation.

Wei testified that all three Viola codebases in evidence were able to parse HTML documents. *See* Tr. Trial Afternoon Session 167, Feb. 7, 2012. Phillips testified that "Viola can understand and execute HTML tags." Tr. Trial Morning Session 57, Feb. 8, 2012. Silvey and Bina also testified that Viola interpreted HTML. *See* Tr. Trial Afternoon Session 52, Feb. 7, 2012 (Silvey stating that Viola parsed HTML pages); Tr. Trial Afternoon Session 180–81, Feb. 6, 2012 (Bina describing how Viola fetched and displayed HTML documents via HTTP). This evidence provides a sufficient basis for a reasonable juror to find that the HTML limitation was met by the all of the Viola references.

*Conclusion on Anticipation*

For these reasons, the evidence at trial was sufficient for a reasonable juror to find that the all three Viola references anticipated the asserted claims of the '906 and '985 Patents.

### Invalidity by Obviousness

Eolas contends that there was insufficient evidence to support a finding that the asserted claims are obvious. Eolas also argues that an obviousness finding by the jury cannot be upheld because the jury was unable to consider certain objective indicia of nonobviousness—namely, settlement and license agreements pertaining to the patents-in-suit that were excluded as overly prejudicial.

Obviousness is a question of law based on underlying findings of fact. *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009). Obviousness is based on several factual inquiries: "(1) the scope and content of the prior art; (2) the differences between the prior art and the claims at

issue; (3) the level of ordinary skill in the art at the time the invention was made; and (4)
objective evidence of nonobviousness, if any." *Id.*

*Sufficiency of the Evidence*

Defendants and Eolas each presented expert testimony regarding obviousness. *See, e.g.*,
Tr. Trial Morning Session 128, Feb. 8, 2012 (Phillips summarizing his opinion that the asserted
claims are obvious); Tr. Trial Afternoon Session 74, Feb. 8, 2012 (Martin summarizing his
opinion that the asserted claims are not obvious). Further, Defendants presented multiple fact
witnesses concerning the state of the art during the critical time period.

Bina, a co-developer of the Mosaic browser and cofounder of Netscape Communications,
testified regarding Mosaic, Viola, X Windows, and demonstrations at the World Wide Web
Wizards Workshop. *See* Tr. Trial Afternoon Session 179–87, Feb. 6, 2012 (regarding Mosaic and
Viola); *id.* at 195–96 (regarding X Windows); *id.* at 196–202 (regarding Viola demonstrations at
the World Wide Web Wizards Workshop in Boston). Tim Berners-Lee testified regarding the
evolution of the World Wide Web and early web browsers. *See* Tr. Trial Morning Session 44–59.
Dave Raggett, the inventor of the HTML+ EMBED tag, testified regarding the EMBED tag and
how it could work with existing browsers such as Mosaic and Viola. *See id.* at 99–111. Silvey,
the coauthor of the Viola VPlot demonstrations, testified regarding those demonstrations and the
functionality they entailed. *See id.* at 143–48; Tr. Trial Afternoon Session 7–17, Feb. 7, 2012.
Wei, the inventor of Viola, testified regarding the Viola browser. *See* Tr. Trial Afternoon Session
69–97, Feb. 7, 2012. Karl Jacob, a Sun Microsystems engineer, testified about Viola
demonstrations. *See id.* at 173–78. Based on the testimony of Phillips and these witnesses, there
was evidence to support an obviousness determination in light of Viola, Mosaic, and the HTML+
EMBED tag.

Phillips also testified extensively about the MediaView system that he invented. *See* Tr. Trial Morning Session 29–33, 62–78, Feb. 8, 2012. He testified that the system met all elements of the asserted claims except the HTML tag limitation. *Id.* at 74–75. He stated that it was obvious to combine MediaView with browser technology such as the CERN browser or Mosaic, thus rendering the asserted claims invalid as obvious. *Id.* Further, Dan Sadowski testified regarding a public demonstration of the MediaView 2.1 reference. *See* Tr. Trial Afternoon Session 182–84, Feb. 7, 2012. Accordingly, there was evidence to support an obviousness determination in light of MediaView, Mosaic, and the CERN browser.

These witnesses presented evidence relevant to the obviousness determination, and each was cross-examined by Eolas.[3] The jury heard all of this testimony relevant to whether the asserted claims are obvious, weighed it, and found the asserted claims invalid. The Court finds that the evidence of record is sufficient for a reasonable juror to find that the asserted claims are invalid as obvious in light of Viola or MediaView combined with Mosaic and the HTML+ EMBED tag.

*Excluded Evidence*

At trial, Eolas sought to introduce several settlement and license agreements that stemmed from the instant litigation and the previous *Microsoft* litigation. Before trial, the Court granted Eolas's motion in limine excluding (1) any argument, evidence, testimony or reference to Eolas's damages or infringement claims; and (2) any argument, evidence, testimony, or reference to Eolas's business success or failure. *See* Docket No. 1298. Further, the parties agreed—to the extent possible—not to reference the *Microsoft* litigation during the trial. *See* Tr. Pretrial Motions 25–28, Feb. 6, 2012; Tr. Trial Afternoon Session 10–11, Feb. 6, 2012.

---

[3] Jacobs testified by video, and each party designated questions and answers to be included in the video shown to the jury.

Eolas argued that the settlement and license agreements were relevant as secondary indicia of nonobviousness. *See* Tr. Trial Morning Session 7, Feb. 8, 2012. Defendants argued that allowing the agreements would violate Eolas's motion in limine, which was granted by the Court and which the Defendants had operated under during the presentation of their case. They would violate Eolas's motion in limine, first, because the agreements would constitute evidence about the success or failure of Eolas's licensing business; second, the agreements would necessarily implicate Eolas's infringement claims because many of the agreements regarded parties to the instant dispute; and, finally, permitting the settlement and license agreements would create a sideshow regarding the outcome and import of the *Microsoft* litigation. After hearing the parties' arguments and reviewing the disputed licenses, the Court determined that "the probative value of [the agreements] is outweighed by the prejudicial effect that it would have . . . within the context of the case." Tr. Trial Afternoon Session 15, Feb. 8, 2012.

The Court determined that the licenses were not admissible. Eolas now argues that their exclusion precluded the jury from considering important secondary indicia of nonobviousness, which the Federal Circuit has ruled is a necessary part of the obviousness calculus. *See Mintz v. Dietz & Watson, Inc.*, No. 2010-1341, 2012 U.S. App. LEXIS 10884, at *12–13 (Fed. Cir. May 30, 2012); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667 (Fed. Cir. 2000). However, the jury heard and considered evidence relating to secondary considerations of nonobviousness. *See* Tr. Trial Afternoon Session 60–68, Feb. 8, 2012 (Martin testifying about the failure of others); *id.* at 69–73 (Martin testifying about industry praise); *id.* at 63 (Martin testifying about teaching away). Further, the jury instructions listed several secondary considerations that should be considered in making the obviousness determination. *See* Docket No. 1351, at 16–17. Just because secondary indicia of nonobviousness are one element of the obviousness determination does not mean that

all evidence related to secondary considerations is necessarily admissible. Here, the Court determined that the probative value of these recent litigation settlements did not outweigh their potential prejudicial impact on the trial, especially in light of the granting of Eolas's earlier motion in limine. Even though some evidence pertaining to one secondary consideration was barred, the jury heard and considered other evidence relating to all other secondary considerations of nonobviousness. Accordingly, the exclusion of the settlement and license agreements is not sufficient to preclude the obviousness finding by the jury.

*Conclusion on Obviousness*

The evidence at trial was sufficient for a reasonable juror to find that Viola or MediaView, Mosaic, and the HTML+ EMBED tag rendered the asserted claims obvious. Further, the exclusion of recent litigation-based settlement and license agreements was appropriate due to their likely prejudicial effect on the proceedings. Finally, the jury did consider and hear evidence pertaining to other secondary indicia of nonobviousness. For these reasons, the Court finds that the jury's general verdict of invalidity is supported by an evidentiary basis that the asserted claims are obvious.

### New Trial

Eolas alternatively seeks a new trial. Under the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.3d 610, 612–13 (5th Cir. 1985).

Eolas argues that it is entitled to a new trial for three reasons: (1) the jury was confused and based its verdict on passion and prejudice rather than on the relevant evidence; (2) there is no clear and convincing proof of invalidity; or (3) the exclusion of the settlement and license agreements precluded consideration of nonobviousness evidence. The Court has already, in essence, addressed the latter two arguments and finds them unpersuasive. Regarding jury confusion and prejudice, there is no indication that the jury based its verdict on anything other than the evidence presented at trial. As the Court noted when concluding the trial, counsel for both sides conducted themselves in a professional manner throughout the proceedings. The jury was able to weigh the evidence and credibility of the witnesses before arriving at its verdict. A new trial is not warranted.

## CONCLUSION

For these reasons, Renewed Motion of Plaintiffs the Regents of the University of California and Eolas Technologies Incorporated for Judgment as a Matter of Law Under Rule 50(b) that the Asserted Claims of the Patents-In-Suit Are Not Invalid, or in the Alternative for a New Trial Under Rule 59 (Docket No. 1367) is **DENIED**.


**So ORDERED and SIGNED this 19th day of July, 2012.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**