IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EOLAS TECHNOLOGIES INCORPORATED and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, <br><br>　　Plaintiffs, <br><br>vs. <br><br>ADOBE SYSTEMS, INC., AMAZON.COM INC., CDW CORPORATION, CITIGROUP INC., THE GO DADDY GROUP, INC., GOOGLE INC., J.C. PENNEY CORPORATION, INC., STAPLES, INC., YAHOO! INC., AND YOUTUBE, LLC., <br><br>　　Defendants. | § § § § § § § § § § § § § § § § § § § | CASE NO. 6:09-CV-446 |

### ORDER ON BILL OF COSTS

Before the Court is the parties' Joint Memorandum Regarding Defendants' Bills of Costs [Agreed and Disputed] (Docket No. 1404). Eolas Technologies Incorporated and The Regents of the University of California (collectively "Eolas") object to several of Defendants' proposed costs.

### APPLICABLE LAW

Pursuant to Federal Rule of Civil Procedure 54(d), costs are to be awarded to the prevailing party as a matter of course, unless the court directs otherwise. However, the provisions of 28 U.S.C. § 1920 limit a court's discretion in taxing costs against the unsuccessful litigant. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). Although the prevailing party is entitled to its costs, the prevailing party must still demonstrate that its

costs are recoverable under Fifth Circuit precedent, and the prevailing party should not burden the Court with costs that are clearly not recoverable under the law.

The statute permits the following recoverable costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A district court is permitted to decline to award costs listed in the statute, but may not award costs omitted from the statute. *Crawford*, 482 U.S. at 441–42.

## ANALYSIS

Eolas objects to the costs of: (1) video depositions; (2) electronic discovery costs including document collection, processing, hosting, scanning, and conversion; (3) photocopies; (4) CD and DVD copies; (4) graphics professional support at trial; and (5) demonstratives and exhibits for trial.

*Video Deposition Costs*

The parties dispute whether costs for video depositions should be allowed. Eolas first argues that this Court's standing order on costs specifically precludes an award of costs for video depositions. Eolas further argues that the 2008 amendment to § 1920 only allows for costs of either printed *or* electronically recorded transcripts—not both.

In 2008, Congress amended § 1920(2) to allow "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Judicial Administration and

Technical Amendments Act of 2008, Pub. L. No. 110-406, 122 Stat. 4291, 4299. The previous version of the statute allowed "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." The Fifth Circuit strictly construed the pre-2008 version of the statute to not allow costs for video depositions. *See Gaddis v. United States*, 381 F.3d 444, 476 (5th Cir. 2004) (citing *Mota v. Univ. of Tex. Hous. Health Science Ctr.*, 261 F.3d 512, 529–30 (5th Cir. 2001)). However, it has since implicitly recognized that the 2008 amendment likely changes whether costs for video depositions are permitted. *See S&D Trading Academy, LLC v. AAFIS, Inc.*, 336 Fed. Appx. 443, 450–52 (5th Cir. 2009) (unpublished) (applying the pre-2008 statute to uphold a denial of video deposition costs while recognizing that the result may differ under the amended version of the statute).

Even though the Fifth Circuit has not explicitly interpreted § 1920(2) since the 2008 amendment, a direct reading of the statute suggests that it allows for costs related to video depositions, i.e., "electronically recorded transcripts." Eolas is correct that this Court's standing order, interpreting Fifth Circuit law, clarified that costs for video depositions were not allowed. However, the standing order issued before the 2008 amendment, citing both an old version of the statute and Fifth Circuit case law interpreting that version of the statute. Because the statute on which the standing order is based has changed, the guidance provided by the standing order requires revision. The Court finds that § 1920(2) now permits taxing costs for video depositions "necessarily obtained for use in the case."[1] Further, "printed or electronically recorded transcripts" does not mean that costs may be taxed for only one of the two recited types of transcripts. Absent a qualifying "either," "or" is typically interpreted in the inclusive manner.

---

[1] An updated standing order shall be issued contemporaneously with this order clarifying the Court's interpretation of § 1920, as amended, and Fifth Circuit case law interpreting that section.

3

Thus, § 1920(2) permits costs to be taxed for both printed and electronically recorded transcripts so long as they are "necessarily obtained for use in the case."

Here, both parties captured depositions electronically, and each side designated the depositions of multiple witnesses for potential use at trial. Both parties used some of these transcriptions during trial. In a large patent case such as this, it is common for parties to capture depositions electronically so that they may be used as part of the trial presentation. These cases involve complex technical issues and the needs at trial are often not fully known until the eve of trial. The printed and electronically recorded transcripts were necessarily obtained for use in this case, and Defendants are entitled to costs of both printed and electronically recorded depositions.

*Electronic Discovery Costs*

The parties dispute to what extent § 1920(4) permits taxation of costs related to electronic discovery. This subsection of the statute was also amended in 2008, replacing "copies of papers" with "the costs of making copies of any materials . . ." where the copies are "necessarily obtained for use in the case." Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, 122 Stat. 4291, 4299. Thus, the taxable costs of making copies are no longer limited to just paper copies. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 165 (3d Cir. 2012) (discussing the report of the committee that recommended the 2008 amendments). The parties dispute whether the statute reaches several types of costs that may be generally classified as electronic discovery costs: (1) document scanning; (2) document collection; (3) document processing; (4) document hosting; and (5) conversion to TIFF.

*Document Scanning*

Document scanning is essentially copying paper documents to electronic form. Thus, the costs of scanning documents are permitted under § 1920(4).

*Document Collection, Processing, and Hosting*

Defendants seek to tax in excess of $2 million for document collection, processing[2], and hosting.[3] These activities are not recoverable costs under § 1920(4). Though the statute has been broadened to allow for copying materials as opposed to just papers, it is not so broad as to cover general electronic discovery costs that precede copying or scanning of materials. The Fifth Circuit has not yet spoken directly to these issues under the amended statute; however, the Third Circuit provided a persuasive analysis in *Race Tires*. There, the court compared electronic discovery activities to their pre-digital counterparts:

> First, the paper files had to be located. The files then had to be collected, or a document reviewer had to travel to where the files were located. The documents . . . were then reviewed to determine those that may have been relevant. The files designated as potentially relevant had to be screened for privileged or otherwise protected material. Ultimately, a large volume of documents would have been processed to produce a smaller set of relevant documents. None of the steps that preceded the actual act of making copies in the pre-digital era would have been considered taxable.

*Race Tires*, 674 F.3d at 169. The statute allows for taxing the costs of making copies, not all of the steps leading up to the process of copying. Thus, costs for document collection, processing, and hosting are not permitted under § 1920(4).

*Electronic Document Conversion*

The parties dispute whether file conversion—specifically, converting files in native format to TIFF format—is taxable under § 1920(4). Generally, file conversion is copying a file of one type to a file of another type. The parties agreed that electronically stored information

---

[2] Defendants itemized Digital Bates Labeling in some instances, which the Court includes in the category of Document Processing.

[3] There is significant disparity among the defendants regarding collection, production, and hosting costs, with Google/YouTube seeking approximately $1.6 million; Amazon $110,000; J.C. Penney $50,000; and Yahoo! $250,000. Google/YouTube had the largest production of the defendants, totaling approximately 475GB of data. Eolas produced 675GB of data and incurred approximately $95,000 in storage and hosting costs. Aside from not being covered by § 1920, this disparity in costs suggests that document collection, production, and hosting are generally ill-defined categories.

(ESI) could be produced in either native or TIFF format. Producing documents in native format avoids the extra costs associated with converting the native documents to TIFF. However, producing documents in native format exposes the producing party to the risk of revealing potentially privileged or non-relevant metadata associated with the native document. Thus, many parties opt to produce documents in TIFF format to avoid inadvertent production of such metadata.[4] Here, Defendants chose to convert many of their documents to TIFF format for production. Per the parties' agreement, this was allowed, but not necessary. Thus, the costs for conversion were not "*necessarily* obtained for use in the case" and are not taxable under § 1920.[5]

*Photocopies*

Defendants seek to tax costs for printing and copying services. Eolas objects that Defendants have failed to provide the necessary level of detail to indicate what was copied or printed and why it was necessary for the case. Most of the documented copying charges merely indicate that photocopies were made. *See, e.g.*, Docket No. 1403 attach. 12, at 82 ("06/01/2011 L190 E101 Photocopy charges, 326 pages 19.56"). However, some entries indicate the material being copied. *See id.* ("06/09/2011 L190 E102 Outside printing - Kwik Kopy - Complete Trial Transcript (3455) (split) 62.33"). Given the complexity of the instant case, the photocopy charges are not unreasonable. However, Defendants have provided scant detail regarding many of the copying charges. Accordingly, Defendants may tax costs for 50% of the general copying charges and 100% of the detailed copying charges.

---

[4] A committee comprised of attorneys who practice in this district recently helped draft a model ESI order governing the discovery and production of ESI. *See* Order Regarding E-Discovery in Patent Cases, Local Civil Rules app. P. The default rule in that order is that documents shall be produced in TIFF format. This provision suggests that counsel generally prefer documents to be produced in TIFF format. The parties in this case agreed to produce ESI in either native or TIFF format prior to publication of the model ESI order.

[5] Had the parties agreed to produce in TIFF format only, the result might be different. *See Race Tires*, 674 F.3d at 167 ("We agree that scanning and conversion of native files to the agreed-upon format for production of ESI constitute 'making copies of materials.'").

*CD and DVD Copies*

Costs for burning CDs and DVDs shall be taxed in the same manner as photocopy costs: 50% for general entries and 100% for specific entries.

*Graphics Professional Support*

Defendants seek over $95,000.00 in costs for audio-video support before and during trial. The submitted invoices cover over 410 hours of work done from January 25 through February 11, 2012, amounting to approximately 100 hours per day of trial. The Court recognizes that professional support for audio and video services during trial expedites the presentation of complex material to jurors. However, the requested amount is excessive. Here, $32,000.00 in costs for a multimedia professional were reasonable and necessary for trial.

*Demonstratives and Exhibits for Trial*

Demonstratives and exhibits for trial fall within the category of exemplification and may be taxed in the same manner as photocopy costs: 50% for general entries and 100% for specific entries.

## CONCLUSION

The Court **ORDERS** Defendants to resubmit an agreed Bill of Costs to the clerk in light of the guidance given herein. The parties shall meet and confer extensively to avoid presenting additional costs disputes to the Court.

**So ORDERED and SIGNED this 19th day of July, 2012.**



_____
LEONARD DAVIS
UNITED STATES DISTRICT JUDGE